1
2
3
4

LATHAM & WATKINS LLP
NICHOLAS J. BOYLE*
Nicholas.boyle@lw.com
555 Eleventh Street, NW
Washington, D.C. 20004
Tel: 202.637.2200
Fax: 202.637.2201

REDACTED VERSION OF
DOCUMENT PROPOSED TO
BE FILED UNDER SEAL

5
6
7
8

MATTHEW W. WALCH*
matthew.walch@lw.com
330 North Wabash Avenue
Chicago, IL 60611
Tel: 1.312.876.7603
Fax: 312.993.9767
*Pro Hac Vice

9
10
11
12

JOSEPH D. AXELRAD (SBN 274580)
joseph.axelrad@lw.com
355 South Grand Avenue, Suite 100
Los Angeles, CA 90071
Tel: 213.485.1234
Fax: 213.891.8763

13

*Attorneys for CoStar Group, Inc.*

14

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA  WESTERN DIVISION**

15
16
17
18
19
20
21
22
23
24
25
26
27
28

MOVE, INC., a Delaware corporation; MOVE SALES, INC., a Delaware corporation; REALSELECT, INC., a Delaware corporation,

Plaintiff,

vs.

COSTAR GROUP, INC., a Delaware corporation; JAMES KAMINSKY an individual; and DOES 1 through 10, inclusive

Defendants.

CASE NO. 2:24-cv-05607-GW-BFMx.

**COSTAR GROUP, INC.'S OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION**

Judge: George H. Wu
Date: September 23, 2024
Time: 8:30 a.m.
Courtroom: 9D

1

# **TABLE OF CONTENTS**

2    INTRODUCTION ............................................................................................... 1

3    BACKGROUND .................................................................................................. 4

4        A.    Move and CoStar ................................................................................ 4

5        B.    Move Terminated Kaminsky ............................................................. 4

6        C.    Kaminsky Applied for a Job at CoStar ............................................. 5

7        D.    Kaminsky's Role at CoStar is Unrelated to his Work at
8              Move ................................................................................................... 7

9        E.    Kaminsky did not use Move's Information at CoStar ...................... 7

10       F.    Move Did Not Take Prompt Action ................................................... 9

11       G.    CoStar's Remedial Actions ............................................................. 10

12   LEGAL STANDARD ....................................................................................... 10

13   ARGUMENT ..................................................................................................... 11

14       A.    Move is Unlikely to Succeed on the Merits .................................... 11

15             1.    Move Cannot Establish Trade Secret
                     Misappropriation .................................................................... 11

16             2.    Move is Unlikely to Succeed on its CFAA Claim .................. 17

17       B.    Move Faces No Imminent or Irreparable Harm .............................. 17

18             1.    Move's Allegations of Harm are Speculative ......................... 17

19             2.    CoStar's Actions Negated Any Potential for Harm ............... 19

20             3.    Move's Delay Undermines Immediate Harm ......................... 20

21             4.    Move's Alleged Economic Losses are Reparable ................... 20

22       C.    The Balance of Hardships Weighs Against the Grant of
23             Move's Motion, which is not in the Public Interest ........................ 20

     CONCLUSION ................................................................................................... 21
24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

### CASES

*AEG Holdco LLC v. Vazquez*,
  2021 WL 4859975 (C.D. Cal. Sept. 22, 2021)......................................21

*Agency Sols. Com, LLC v. TriZetto Grp.*,
  819 F. Supp. 2d 1001 (E.D. Cal. 2011) ............................................11

*Alert Enter., Inc. v. Rana*,
  2023 WL 2541353 (N.D. Cal. 2023)....................................................16

*Alliance for the Wild Rockies v. Pena*
  865 F.3d 1211 (9th Cir. 2017).............................................................10

*AssuredPartners of Oregon, LLC v. Reese*,
  2022 WL 2188191 (D. Oregon 2022) .................................................15

*Beluca Ventures LLC v. Einride Aktiebolag*,
  660 F. Supp. 3d 898 (N.D. Cal. 2003)................................................12

*Calence, LLC v. Dimension Data Holdings, PLC*,
  222 F. App'x 563 (9th Cir. 2007)................................................. 19, 20

*Chartwell Staffing Servs v. Atlantic Solutions Grp.*,
  2019 WL 2177262 (C.D. Cal. May 20, 2019)....................................12

*Cisco Systems, Inc. v. Chung*,
  462 F. Supp. 3d 1024 (N.D. Cal. 2020) .............................................16

*Concord Music Group, Inc. v. STAX PTY.*,
  2023 WL 2977495 (C.D. Cal. 2023) ...................................................11

*Dotster, Inc. v. ICANN*,
  296 F. Supp. 2d 1159 (C.D. Cal. 2003)..............................................18

*Edwards Lifesciences Corp. v. Launey*,
  2023 WL 4680774 (C.D. Cal. June 12, 2023).....................................19

*Galderma Labs., L.P. v. Revance Therapeutics, Inc.*,
  2024 WL 3008860 (C.D. Cal. 2024).............................................16, 17

*Garcia v. Google, Inc.*,
   786 F.3d 733 (9th Cir. 2015).........................................................................11

*Gemisys Corp. v. Phoenix Am., Inc.*,
   186 F.R.D. 551 (N.D. Cal.1999) .................................................................14

*Genasys Inc. v. Vector Acoustics*,
   2022 WL 16577872 (S.D. Cal. Nov. 1, 2022) ..........................................12

*GTAT Corp. v. Fero*,
   2017 WL 2303973 (D. Mont. May 25, 2017) ..........................................21

*Harvest Small Bus. Fin. V. Mitnick*,
   2024 WL 694372 (C.D. Cal. Jan. 23, 2024).............................................14

*Henry Schein, Inc. v. Cook*,
   191 F. Supp. 3d 1072 (N.D. Cal. 2016) ....................................................19

*Herb Reed Enterprises, LLC v. Florida Entertainment Management, Inc.*,
   736 F.3d 1239 (9th Cir. 2013)...................................................................18

*hiQ Labs, Inc. v. LinkedIn Corp.*,
   31 F.4th 1180 (9th Cir. 2022)....................................................................17

*In re Ingle Co.*,
   116 F.3d 1485 (9th Cir. 1997)...................................................................14

*In re Providian Credit Card Cases*,
   96 Cal. App. 4th 292 (2002)......................................................................14

*KCG Americas LLC v. Zhengquan Zhang*,
   2017 WL 8294011 (N.D. Cal. Apr. 10, 2017) .........................................17

*Kimbell v. Republic of Austria*,
   2017 WL 10573983 (C.D. Cal. July 7, 2017) ..........................................20

*Lam Res. Corp. v. Deshmukh*,
   157 F. App'x 26 (9th Cir. 2005).................................................................18

*Language Line Servs., Inc. v. Language Servs. Associates, Inc.*,
   944 F. Supp. 2d 775 (N.D. Cal. 2013).......................................................16

*Lydo Enters. v. City of Las Vegas*,
   745 F.2d 1211 (9th Cir.1984)....................................................................20

COSTAR GROUP, INC.'S RESPONSE TO PLAINTIFF'S AMENDED MOTION FOR PRELIMINARY INJUNCTION

*Mattel v. MGA Enter., Inc.*,
   782 F. Supp. 2d 911 (C.D. Cal. 2011) ................................................................. 14

*Monster Energy Co. v. Integrated Supply Network, LLC*,
   2021 WL 2986355 (C.D. Cal. Mar. 10, 2021) ............................................. 19, 20

*Nat'l Steel Car, Ltd. v. Canadian Pac. R.R., Ltd.*,
   357 F.3d 1319 (Fed. Cir. 2004) ........................................................................... 10

*Oakland Tribune, Inc. v. Chronicle Pub. Co.*,
   762 F.2d 1374 (9th Cir.1985) ............................................................................... 20

*Perrin Bernard Supowitz, LLC v. Morales*,
   2023 WL 1415572 (C.D. Cal. Jan. 31, 2023), *aff'd,* 2024 WL
   411714 (9th Cir. Feb. 5, 2024) ............................................................................ 11

*SkinMedica. v. Histogen*,
   869 F. Supp. 2d 1176 (S.D. Cal. 2012) ............................................................... 12

*Solar City Corp. v. Pure Solar Co.*,
   2016 WL 11019989 (N.D. Cal. 2016) .................................................................. 16

*Turo Inc. v. City of Los Angeles*,
   847 F.App'x 442 (9th Cir. 2021) .......................................................................... 17

*Van Buren v. United States*,
   593 U.S. 374 (2021) .............................................................................................. 17

*WeRide Corp. v. Kun Huang*,
   379 F. Supp. 3d 834 (N.D. Cal. 2019) ................................................................. 19

*Whyte v. Schlage Lock Company*,
   101 Cal.App.4th 1443 (Div. 3 Cal. 2002) ........................................................... 18

*Winter v. Natural Res. Def. Council, Inc.*,
   555 U.S. 7 (2008) ................................................................................................. 10

*Zurich American Ins. v. Bowman*,
   2010 WL 5239239 (D. Nevada 2010) .................................................................. 17

**STATUTES**

18 U.S.C.A. § 1839 ...................................................................................................... 11

18 U.S.C. § 1839(3) ..................................................................................................... 12

COSTAR GROUP, INC.'S RESPONSE TO PLAINTIFF'S
AMENDED MOTION FOR PRELIMINARY INJUNCTION

Cal. Civ. Code

§ 3426.1 .......................................................................................... 11

§ 3426.1(d) ...................................................................................... 12

### OTHER AUTHORITIES

Mike DelPrete *Portal War '24: Traffic is a Non-Zero Sum Game*;
    (May 16, 2025),
    https://www.mikedp.com/articles/2024/5/16/portal-war-24-traffic-
    is-a-non-zero-sum-game ..................................................................... 4

# **INTRODUCTION**

The Amended Motion for Preliminary Injunction ("Motion") filed by Move fares no better than its initial motion for such relief.  Move abandons its fictional narrative that it will be harmed because CoStar is building a rival news division using Move trade secrets provided by former Move employee Jim Kaminsky. Faced with the threat of Rule 11 sanctions and record evidence undermining that tall tale, Move pivots to an even weaker (equally meritless) theory.  According to Move, this Court should now enter the "drastic and extraordinary" remedy of a preliminary injunction against CoStar because: (1) Kaminsky minimally accessed five unsecure documents related to Move's "News and Insights" business after he was laid off by Move (without using them other than to contact friends and colleagues); and (2) his news division job at Move is the equivalent of his job at CoStar editing descriptions of New York condos and, thus, CoStar should be presumed to also have access to these documents solely because it is his employer. Move further claims that, based on those assertions alone, it will suffer irreparable harm because CoStar will inevitably use those documents to improve its "search engine optimization" ("SEO") strategy and drive traffic to Homes.com.  It makes this claim even though Defendants' forensic expert confirmed that Kaminsky never had the documents in his CoStar account and they were not sent to anyone at CoStar; Move cannot identify any change CoStar has made to its business or damage it has suffered as a result of Kaminsky's access to the five Move documents; and CoStar's Homes.com outperformed Realtor.com for months prior to Kaminsky joining CoStar.  The Court should reject Move's absurd back-up theory and deny its Motion for at least three reasons.

*First*, Move cannot establish it is likely to succeed on the merits of its claims against CoStar.  The unrebutted evidence demonstrates that CoStar does not have, has not received, and has never accessed or used the documents at issue.  Those documents do not constitute trade secrets and were not treated by Move as such.

1    They consist primarily of stale descriptions of news stories Move already published.

2    ████████████████████████████████████████████████████████

3    ████████████████████████████████████████    And as the head of cyber

4    security at Move's parent, News Corp, testified, ███████████████████

5    ████████████████████████████████████████████████████████

6    ████████████████████████████████████████████████████████

7    ██████████████████████████    Even if Kaminsky circumvented Move security

8    measures to access these documents (Move admits ██████████), Move could not show

9    he did so on behalf of CoStar or that CoStar knew about such access. Had Move

10   opted to take the expedited discovery it initially requested and then abandoned, it

11   would have confirmed all of this and more. As Kaminsky has been saying since he

12   was first informed of Move's claims against him, he merely accessed the documents

13   at issue (i) in January and February to aid in his job search after Move laid him off,

14   (ii) in March and April to enable him to contact certain former Move colleagues after

15   he started with CoStar, and (iii) briefly between May 31st and June 3rd when he was

16   browsing files in connection with a personal tax issue. More importantly, as both

17   CoStar and Kaminsky have made clear, the expedited discovery Move refused to

18   take would have confirmed that Kaminsky did not provide CoStar *any* of the five

19   documents at issue or any information therein, and that those documents were not

20   used to support CoStar's business. Expedited discovery would also have

21   underscored what Kaminsky told several colleagues at Move, including two

22   managers, months ago: he is not working on, assigning, or editing news, rather, his

23   work involves editing articles regarding New York condos. Instead, Move buried

24   its head in the sand—and refused to take the discovery any legitimate trade secret

25   plaintiff would have taken—because the facts contradicted the case it was

26   publicizing in the media.

27        *Second*, Move cannot demonstrate that it will suffer irreparable harm. Neither

28   CoStar nor Kaminsky used the supposed trade secret documents at issue, as

confirmed by forensic experts and the testimony of Kaminsky's co-workers and supervisors, and there is no risk they will do so. This is unsurprising because, again, CoStar does not possess the documents and Kaminsky's job at CoStar has no bearing on the content or SEO strategy on which Move's new motion focuses. This is unsurprising because, again, Kaminsky's job at CoStar has no bearing on the content or SEO strategy on which Move's Motion focuses. Moreover, Kaminsky is on leave until at least the earliest of when this meritless litigation ends or January 1, 2025, making Move news story plans from the first half of 2024 even less relevant than they already were. Underscoring the lack of harm, Move did not treat the perceived "threat" of disclosure with any urgency. Move sat on its hands after discovering Kaminsky still had access to its unsecured documents. It did not contact him. It did not overhaul its security systems. It waited for a month to file suit and six weeks to seek an injunction. And even then, it claimed harm based on a manufactured theory of use on which it refused to take discovery and then abandoned.

*Third*, the balance of hardships and the public interest counsel against the entry of an injunction. At a fundamental level, there is nothing to enjoin: neither CoStar nor Kaminsky have used or are using Move's documents. Further, Kaminsky confirmed that his contracts with both Move and CoStar prohibit him from using such documents. An injunction in this case is therefore unnecessary and would only reward Move for filing and publicizing a suit built on falsehoods about CoStar. CoStar would certainly face a hardship based on the inevitable publicity that would accompany an injunction, amplified by Move's continuing PR campaign around this lawsuit (a campaign that has already resulted in Move issuing, and then retracting, a false press statement about this Court's views of the case expressed during the first hearing). On the other hand, Move faces no hardship beyond being denied this unwarranted PR opportunity. Finally, there is no public interest in signaling to companies that they can successfully and publicly enjoin a rival that has hired one

of its former employees, despite the rival not possessing any of the documents at issue and there being zero evidence of their use.

There is no mystery why Move is seeking to enjoin CoStar from using documents it has not used: Move's Realtor.com is losing market share to CoStar's Homes.com.   Indeed, as confirmed by Kaminsky's testimony, Move's CEO considers CoStar an "existential threat."  Rather than compete on the merits, Move is weaponizing litigation to wage a PR campaign against a rival that is accelerating past Move in the marketplace.  That Move's desperate times have given rise to such desperate measures does not warrant injunctive relief.  For all of the foregoing reasons, the Court should deny Move's Motion.

## BACKGROUND

### A.    Move and CoStar

Move operates Realtor.com, the "official website" of the National Association of Realtors, which sells leads to real estate agents.  CoStar owns Homes.com, a competing website which sells advertising and on which consumers can shop for a new property.  As a result of a recent billion dollar marketing campaign, traffic to Homes.com has vaulted past traffic to  Realtor.com.[1]  After holding itself out for years as second only to Zillow, Move views the rise of Homes.com as a threat.  Thus, Move is waging an all-out media war against CoStar.  Indeed, in the months pre-dating this lawsuit, Move's CEO made various public inflammatory statements about CoStar, including that "CoStar is the wolf in sheep's clothing" and that—despite evidence to the contrary—CoStar's recent billion dollar marketing campaign "has been somewhat of a flop."  Move has similarly used this lawsuit as part of its effort to undermine CoStar in the press.

### B.    Move Terminated Kaminsky

---

[1] Mike DelPrete *Portal War '24: Traffic is a Non-Zero Sum Game*; (May 16, 2025), https://www.mikedp.com/articles/2024/5/16/portal-war-24-traffic-is-a-non-zero-sum-game ("Homes.com appears to have solidified its place as the #2 portal in the U.S. market.").

In June 2015, Move hired Kaminsky to build a news division for Realtor.com. Kaminsky Dec. ¶ 3.  Kaminsky assembled and ran a team that generated news articles with a focus on real estate, and published those articles on Realtor.com's News & Insights page, a free standing site.  *Id.*  The articles covered topics like celebrity homes, mortgage interest rates, and "how-to" home buyer advice.  *Id.* ¶ 5. Kaminsky reported to Move's Vice-President of Communications and was not involved in long-term strategic planning outside of the news division.  *Id.* ¶ 4.  On January 10, 2024, Move notified Kaminsky that his job was being eliminated, with his last working day on January 12.  *Id.* ¶ 6.

In those two days, Kaminsky downloaded from his Move computer financial, personal and medical information.  *Id.* ¶ 9.  These materials included paystubs, performance reviews, medical assessments, and credit card information.  *Id.* ¶¶ 9,11. Before returning his laptop, Kaminsky erased the majority of his emails and e-files in an effort to remove personal information.  *Id.* ¶ 15.  Move had not told Kaminsky he was forbidden from deleting materials on his laptop, and Move has identified no policies prohibiting such conduct.  *Id.* ¶ 17; Koutsantonis Dep. at 48:3-25; 49:10-50:13.  Kaminsky also understood that any work documents he may have on his computer were saved on Move's servers, should they be needed.  Kaminsky Dec. at ¶ 15.

### C.    Kaminsky Applied for a Job at CoStar

Because he had not applied for a job in over a decade, Kaminsky had no current resume or LinkedIn profile.  Kaminsky Dec. ¶ 19.  In order to aid his ability to prepare such documents and his job search, Kaminsky gave himself what he considered to be temporary access, via his Gmail account, to certain documents on Move's Google platform regarding his work there.  *Id.* ¶ 20.  Many were outdated and many were written or overseen by Kaminsky himself.  Kaminsky gave himself such access transparently, by inviting himself to view these documents using the email jim.kaminsky@gmail.com and by emailing a document detailing information

1    about his team members from Move's system to that address.

2         Kaminsky's ability to grant himself access via his personal email and send

3    documents to that account was consistent with Move's practice.  Move's Google

4    Docs platform is not kept secure because, in the words of Move's parent's head of

5    cyber security, █████████████████████████████████████████████████████████

6    ██████████████████████████████████████████ Pence Dep. at 96:24-

7    97:2.  Consistent with Move's practice, Kaminsky sent to and/or granted his personal

8    email access to three of the five documents[2] at issue in the course of updating his

9    resume.  Specifically:

10    • On January 12, 2024, Kaminsky emailed himself employment summaries for

11        certain of his Move team members so he could compare compensation offers

12        he might receive.  Kaminsky Dec. ¶ 25. The documents contained ████████

13        ██████████████████████████████████████ Neuberger Dep. 42:25–43:3.

14    • On January 23, February 20, and February 26, Kaminsky accessed a May

15        2023  document he jointly prepared entitled "N&I Audience and Revenue for

16        PMDLT" to help him draft his LinkedIn profile and resume.[3]

17    • On January 29, 2024, Kaminsky accessed the "JAN 2023 – 2024 EDITORIAL

18        BUDGET" document in connection with updating his job search materials.

19        This document contains ██████████████████████████████████████████████

20        ████████████████████████████████████████████████████████████████████

21        ██████████████

22         As part of Kaminsky's job search, he responded to CoStar's posting for an

23    _____

24    [2] A detailed description of these documents and Kaminsky's motivations for
     accessing them is in the Declaration of Jim Kaminsky at Paragraphs 82-120.  This
25    testimony rebuts Move's narrative regarding the alleged trade secret nature of these
     documents.

26    [3] While Move alleges that Kaminsky downloaded the Audience PowerPoint in
     January and may have access to it, Kaminsky explained, and Defendants' forensic
27    investigation confirmed, that Kaminsky did not download it and no longer has access
     to it.  Kaminsky Dec. ¶ 28b.  He printed a single page that detailed certain of his
28    accomplishments from 2022 to support his efforts to build his resume.  *Id.*  He
     decided not to use the metrics on that page and threw it away long ago.  *Id.*

"Editor, Residential Real Estate – Condos" position.   Noe Dec. ¶ 4.   After interviewing him, CoStar hired Kaminsky in March.   CoStar did not solicit Kaminsky, or hire him for a role related to news, content strategy, or SEO.  Rather, Kaminsky was hired to manage a small team of writers generating descriptions of New York condos.  Noe Dec. ¶ 5.  Kaminsky did not reveal any confidential Move information to CoStar during his interviews, nor did CoStar solicit such information. Kaminsky Dec. ¶ 33.  Move's CMO confirmed that ████████████████████ ████████████  Neuberger Dep. 78:7-8.

### D.     Kaminsky's Role at CoStar is Unrelated to his Work at Move

Kaminsky joined CoStar on March 11 and signed Terms and Conditions mandating he not disclose to CoStar or use for its benefit "any trade secret or confidential information [he] may possess." Corelli Dec., Ex. 2.  Consistent with CoStar's intent when it hired him, Kaminsky's job at CoStar is limited to writing about history, architectural detail, and lifestyle within New York City condos.  Noe Dec. ¶ 5; Kaminsky Dec. ¶ 40.  CoStar decided to develop this content and built the team in 2023; Kaminsky had no role in  selecting this content, hiring his team, or setting their compensation.  Noe Dec. ¶ 16.  Moreover, CoStar has a news division separate from Kaminsky's team, with which Kaminsky does not work.  *Id.* at ¶¶ 19-20.   Kaminsky has also not worked—nor talked to or shared information—with CoStar's SEO department, which focuses on driving traffic to Homes.com.  *Id.* Kaminsky confirmed through testimony that his job at CoStar is not news- or Internet-traffic based, and to his knowledge he has not even seen statistics about traffic to Homes.com, and does not focus on such traffic.  *Id* at ¶ 40.  Kaminsky has no strategic role or input at CoStar beyond the New York condo content he oversees. *Id.* at ¶¶ 19-20.  Move knew of Kaminsky's narrow role at CoStar before initially suing, because Kaminsky readily disclosed this information to Move managers and employees after joining CoStar.  *See* Kaminsky Dec. ¶ 46.

### E.     Kaminsky did not use Move's Information at CoStar

From the time Kaminsky began working at CoStar on March 11 until May 30, Kaminsky accessed only one Move internal document:  a staff contact list. Kaminsky developed this list while at Move and accessed it after his employment to facilitate social contact with former colleagues.  Kaminsky Dec. ¶ 48.  Then, on May 31, Kaminsky was working to resolve a tax issue.  In doing so, he viewed Move documents he emailed himself before leaving Move.  *Id.*  ¶ 51.  While doing this, he learned that Move had not deactivated the Google links he had given himself access to in January.   At this time and out of sheer curiosity, he accessed 33 of the documents located at those links in rapid succession (30 of which Move does not allege are trade secrets in its Motion).  Specifically:

- Kaminsky accessed for a few minutes the Audience PowerPoint once more to see what it was.

- Kaminsky briefly accessed a presentation entitled "N&I/News Corp Partnerships and Amplifications for Growth" which he prepared and presented ███████████ .  He accessed this document in a span of 25 minutes in which he also accessed 16 other documents.

- Kaminsky briefly accessed the "Comms + Econ + N&I Project Call" document, which is an ████████████████████████████████ ████████████████████████████████████████████ ████████████████████████████████████████████ ██████████.[4]  Kaminsky Dec. ¶¶ 51, 53(c).

None of these documents were relevant to Kaminsky's work at CoStar and he did not attempt to identify or learn anything from those documents to support such work.  Kaminsky Dec. ¶ 51.  More importantly, Kaminsky never used any of the documents (or information in them) to support his work at CoStar or shared them with anyone at CoStar.  *Id.* ¶ 56.  In fact, no one at CoStar even knew Kaminsky had

---

[4] Kaminsky accessed this document again on June 3 based merely on curiosity.

access to or had accessed these documents.  Kaminsky Dec. ¶ 51.  Move does not argue otherwise.

### F.    Move Did Not Take Prompt Action

Move learned on June 3, 2024 that Kaminsky accessed its purported trade secrets.  Mot. at 7; █████████████████████████████████████████████████████
██████ But Move took no immediate action.  It didn't contact Kaminsky.  It didn't seek emergency relief in court.  ███████████████████████████████████
█████████████████████████████████████████████████████████████████
█████████████████████████████████████████████████████████████████
███████████████████████  Move sued Kaminsky and CoStar alleging they used its trade secrets to build a news business to rival Move's.  (Dkt. 1, ¶¶ 24, 31.)  Move had no basis for these allegations.

Even at that time, Move did not seek an injunction.  Six weeks passed before it sought one on July 15.  (Dkt. 12.).  Although Move (ironically) faults CoStar for defending against these false allegations in the media, CoStar had no choice but to publicly declare that that it did not use Move's documents, and that Move's allegations had no basis (a statement confirmed through Move's own amendment). Outside of the media, CoStar sent Move a Rule 11 letter indicating that CoStar would seek sanctions as a result of Move's false allegations, and sought expedited discovery to demonstrate that there was no basis for Move's fantastical theory.

Pinned back, Move changed tactics.  First, despite requesting such discovery in its initial Motion, Move opposed CoStar's request for expedited discovery.  Then, after the Court granted CoStar's request, Move refused to seek *any* discovery.  No wonder: It would be counterproductive to obtain yet more facts belying its conspiracy theory.  Then, underscoring that Move had no basis for its claims all along, Move backtracked by filing an amended complaint on August 16, followed by the amended Motion on August 28.  Those filings no longer allege that Defendants are using its trade secrets and abandon the story that CoStar and

Kaminsky are developing a rival news division.  Instead, Move concocts an even weaker theory, speculating that *perhaps* stale documents about its news articles and their viewership, which CoStar does not possess, *might* in the future *somehow* help CoStar's already successful SEO division (which sworn testimony shows Kaminsky has no ties to), despite that the only record evidence demonstrates otherwise.

## G.    CoStar's Remedial Actions

Although there is no evidence that it possesses, used, or might use any of the alleged trade secrets underlying Move's motion, CoStar took remedial actions to negate any possibility of harm—let alone imminent harm—to Move, including by sending out legal holds, preserving data, and placing Kaminsky on leave.  CoStar did so even though Kaminsky's role at CoStar has nothing to do with his position at Move and there is zero evidence, nor could there be, that Kaminsky has any involvement in news or SEO strategy, or that any Move documents have been shared with anyone at CoStar.  Costar has also obtained, at its own expense, a forensic firm to conduct an investigation.  This firm confirmed what CoStar has said all along: Kaminsky did not have any of the Move documents at issue on his systems at CoStar, and did not provide them to anyone at CoStar.  Negangard Dec. ¶¶ 9-13.

## LEGAL STANDARD

A preliminary injunction is a "drastic and extraordinary remedy that is not to be routinely granted." *Nat'l Steel Car, Ltd. v. Canadian Pac. R.R., Ltd*., 357 F.3d 1319, 1324 (Fed. Cir. 2004).  Plaintiffs can obtain a preliminary injunction if they establish four factors: (1) likeliness to succeed on the merits, (2) likeliness to suffer irreparable harm in the absence of preliminary relief, (3) the balance of equities tips in their favor, and (4) an injunction is in the public interest.  *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20–22 (2008).  All four of the *Winter* factors must be met to obtain a preliminary injunction.  *Alliance for the Wild Rockies v. Pena* 865 F.3d 1211, 1223 (9th Cir. 2017).  A failure to establish any is fatal and must result in denial.  *Id.*   Move has the burden of demonstrating these factors with a "clear

showing" of "evidence," which "requires factual support beyond the allegations of the complaint." *Concord Music Group, Inc. v. STAX PTY.*, 2023 WL 2977495, at *2 (C.D. Cal. 2023).

## ARGUMENT

### A. Move is Unlikely to Succeed on the Merits

Move cannot prove its claims against CoStar are likely to succeed on the merits. Move asserts two sets of such claims: (1) trade secret misappropriation claims under the federal Defend Trade Secrets Act ("DTSA") and California Uniform Trade Secrets Act ("CUTSA"), and (2) a claim under the Computer Fraud and Abuse Act ("CFAA"). As likelihood of success is a threshold issue, Move's motion can and should be denied on this ground alone. *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015).

#### 1.    Move Cannot Establish Trade Secret Misappropriation

##### a.    *The Documents at Issue are not Trade Secrets*

The DTSA and CUTSA mirror one another and are analyzed together. *Perrin Bernard Supowitz, LLC v. Morales*, 2023 WL 1415572, at *5 (C.D. Cal. Jan. 31, 2023), *aff'd,* 2024 WL 411714 (9th Cir. Feb. 5, 2024); 18 U.S.C.A. § 1839; Cal. Civ. Code § 3426.1. Move cannot prevail under either. First, Move mush show that the documents at issue are trade secrets. *Agency Sols. Com, LLC v. TriZetto Grp.,* 819 F. Supp. 2d 1001, 1015 (E.D. Cal. 2011). As Kaminsky details in his declaration, the content at issue is largely stale "publication schedules" and "information" about "popular content" for the Realtor.com website, Mot. at 12, all of which is publicly available or readily ascertainable at this juncture. These materials are not "formulas" for Move's "success." Mot. at 15. They are from 2023 and the first half of 2024 and contain no article ideas beyond August 2024. *Cf. Perrin Bernard Supowitz, LLC v.* Morales, 2023 WL 1415572, at *13-14 (C.D. Cal. Jan. 31, 2023) (declining to enjoin employees from using outdated information). The only other category of information—relating to Move's employee titles and compensation—is available on

1    LinkedIn and websites like Glassdoor.  Move has not established how any alleged

2    trade secret is "sufficiently valuable and secret to afford an actual or potential

3    economic advantage over others." *See Genasys Inc. v. Vector Acoustics,* 2022 WL

4    16577872, at *9 (S.D. Cal. Nov. 1, 2022).[5]

5                    b.     ***Move Did not Protect its Alleged Trade Secrets***

6           Not only are the documents underlying Move's motion not trade secrets, they

7    were not protected by Move as such.  "Axiomatically, a trade secret must be a secret

8    to merit legal protection."  *SkinMedica. v. Histogen,* 869 F. Supp. 2d 1176, 1193

9    (S.D. Cal. 2012); Cal. Civ. Code § 3426.1(d) ("trade secret" must be the "subject of

10   efforts that are reasonable under the circumstances to maintain its secrecy"); *accord*

11   18 U.S.C. § 1839(3).  The 30(b)(6) testimony of Howard Pence, the Vice President

12   of Global Cyber Defense at Move's parent company, News Corp, establishes that

13   the documents at issue were far from "secret."  For example, as confirmed by Move's

14   testimony and CoStar's forensic expert:

15   •   ████████████████████████████████████████████

16       ████████████████████████████████████████████

17       ████████████████████████████████████████████

18       ████████████████████████████████████████████

19       ████████████████████████████████████████████

20       ████████████████████████████████████████████

21       ████████████████████████████████████████████

22       ████████████████████████████████████████████

23       ████████████████████████████████████████████

24

25   _____

26   [5] Move's cases involve information defined with much greater specificity and which
     was not partially available in published form.  *Beluca Ventures LLC v. Einride
27   Aktiebolag*, 660 F. Supp. 3d 898, 908-909 (N.D. Cal. 2003) ("elements of technology
     stack that gave [company] a competitive advantage"); *Chartwell Staffing Servs  v.
28   Atlantic Solutions Grp.,* 2019 WL 2177262, at *6 (C.D. Cal. May 20, 2019)
     ("detailed compilation of all Chartwell's customers, combined with specific
     information" about customer preferences).



7 Exs. A & B to Holbert Dec., Dkt. 59-1h; Ex. A to Gruenberg Dec., Dkt. 59-3; Ex.
A to Neuberger Dec., Dkt. 59-5; Ex. A to Zimbert Dec., Dkt. 59-6.

1        ██████████████████████████████████████████████████

2        The above practices are contrary to industry standards for protecting trade

3 secrets, Oza Dec. ¶¶ 18-23, 30-46, and are inconsistent with "reasonable efforts to

4 maintain secrecy." *See In re Ingle Co.*, 116 F.3d 1485 (9th Cir. 1997) (considering

5 factors including creating limited access databases and limiting access to the

6 information to key personnel); *In re Providian Credit Card Cases*, 96 Cal. App. 4th

7 292, 304 (2002) ("[A]mong the factors repeatedly noted are restricting access and

8 physical segregation of the information").

9        ████████████████████████████████████████████████

10       ██████████████████████████████████████████████████

11       ██████████████████████████████████████████████████

12       ██████████████████████████████████████████  *see Harvest*

13 *Small Bus. Fin. V. Mitnick*, 2024 WL 694372, at *2, *7 (C.D. Cal. Jan. 23, 2024)

14 (plaintiff did not protect information despite *existence of* "two password and user

15 ID-protected systems, limiting employees' access to [the] data, encrypting the data,

16 requiring two-factor authentication to access the data, and separately storing the data

17 on its own server that is password protected and limited").  Nor can Move justify its

18 failure to secure its Google platform, by citing its "confidentiality agreements"

19 which vaguely designate as confidential ███████████████████████████

20 ██████████████████████████████  *See* Ex. A to Konstantounis Dec., Dkt. 59-4, at

21 8.  These "vague descriptions of exactly what it is that constitutes a trade secret

22 renders the confidentiality agreement largely meaningless." *Mattel v. MGA Enter.,*

23 *Inc.*, 782 F. Supp. 2d 911, 959-60 (C.D. Cal. 2011).

24       Move's decision to allow ████████████████  to its supposed trade secret

25 documents, *see generally* Oza Dec., demonstrates that it cannot succeed on the

26 merits of its trade secret claims.  *Gemisys Corp. v. Phoenix Am., Inc.*, 186 F.R.D.

27 551, 559 (N.D. Cal.1999).

28        c.    ***Defendants have not used Move Trade Secrets***

1    Even if all of the information Kaminsky accessed was Move trade secret
2    information (it was not), CoStar does not possess and has not used *any* of the
3    information at issue.  Move's CMO admitted ████████████████████████
4    ████████████████████████  Neuberger Dep. 52:22-24, 53:3-4, 66:9-10, 76:7-
5    8, 77:12-13. Kaminsky's CoStar supervisors and colleagues testified that they have
6    not asked for or received from Kaminsky any Move confidential information.  *See*
7    Madlener Dec.; Snider Dec.; Goldenda Dec.; Hendrickson Dec., O'Connor Dec.;
8    Rosenberg Dec.; Dobija-Nootens Dec.; Wilson Dec.; Noe Dec.; Davis Dec.
9    Kaminsky similarly confirmed as much.  Finally, a forensic firm engaged by
10    Defendants searched for the file names and hash values of the five documents at
11    issue in Kaminsky's personal and CoStar devices and accounts and confirmed they
12    are not there (other than employee summaries which Kaminsky confirmed he has
13    not used or accessed since leaving Move).  *See* Negangard Dec. ¶¶ 9-13.  And
14    Move's 30(b)(6) designee admitted that ████████████████████████
15    ████████████████████████████████  Neuberger
16    Dep. 55:8-12.  Such failure to prove that any of the documents or information at
17    issue was shared with or used by CoStar is fatal to Move's Motion.  *See*
18    *AssuredPartners of Oregon, LLC v. Reese*, 2022 WL 2188191, at *5-6 (D. Oregon
19    2022) (denying PI where former employee accessed confidential information after
20    departure, but did not share information at new company).

21                    d.  ***Respondeat Superior Does not Apply***

22    In order to sidestep the fact that it has no evidence of CoStar accessing or
23    using the documents at issue, Move argues that CoStar is "vicariously liable" for
24    Kaminsky's "misappropriation" of those five documents under *respondeat superior*.
25    Mot. at 21.  Not so.  Move's theory hinges on Kaminsky's employment
26    encompassing SEO or content strategy, but—as noted above, the scope of his
27    employment covers neither and, in any event, Kaminsky was not acting in the "scope

28

1  of his employment" when he accessed the five documents at issue. Move's
2  conjecture is contradicted by the only evidence before the court.

3      The record shows CoStar did not ask Kaminsky to provide it with any Move
4  documents and CoStar had no knowledge that Kaminsky had such access until Move
5  filed this lawsuit. Indeed, by Move's own admission, all of these documents were
6  downloaded or accessed before he began working at CoStar, and only three were
7  accessed after that point—and only for *seconds or minutes. See Alert Enter., Inc. v.*
8  *Rana*, 2023 WL 2541353, at *3 (N.D. Cal. 2023) ("How can a person be acting
9  within the scope of his employment with an entity for whom he is not yet
10  employed?").

11      To the extent Move argues that CoStar should be vicariously liable because
12  (unknown to CoStar) Kaminsky accessed three documents in his free time after
13  completing his work for CoStar, no law or facts support that conclusion. Move's
14  cases are readily distinguishable. In *Cisco*, a defendant received a competitor's trade
15  secret information directly benefiting his employment. *Cisco Systems, Inc. v.*
16  *Chung*, 462 F. Supp. 3d 1024, 1034 (N.D. Cal. 2020). Here, the documents at issue
17  have no relevance to Kaminsky's CoStar job. Move's other cases are no more
18  relevant, and none stand for the proposition that allegations of *respondeat superior*
19  can stand in the face of unrebutted evidence. *See Solar City Corp. v. Pure Solar Co.*,
20  2016 WL 11019989, at *5 (N.D. Cal. 2016) (defendant's employee acting within
21  scope of employment when he used plaintiff's confidential information to provide
22  leads for defendant-company); *Language Line Servs., Inc. v. Language Servs.*
23  *Associates, Inc.*, 944 F. Supp. 2d 775, 778, 783 (N.D. Cal. 2013) (employer could
24  be liable under *respondeat superior* where employee was circulating leads taken
25  from prior employer); *Galderma Labs., L.P. v. Revance Therapeutics, Inc.*, 2024
26  WL 3008860, at *4 (C.D. Cal. 2024) (employer could be liable when defendant's
27  employee disclosed trade secrets at sales meeting).

28

1    Given the undisputed facts, there is no likelihood Move could succeed on its

2    theory of vicarious liability.    *Galderma Lab'ys,* 2024 WL 3008860, at *4

3    ("Ordinarily, the determination whether an employee has acted within the scope of

4    employment presents a question of fact; it becomes a question of law, however, when

5    the facts are undisputed and no conflicting inferences are possible.").[8]

### 2.    Move is Unlikely to Succeed on its CFAA Claim

7    Move's CFAA claim involves the narrow issue of Kaminsky's post-

8    employment access to Move's Google Drive.  Mot. at 17–18.  But Move, by its own

9    admission, has removed Kaminsky's access to Move's alleged "protected

10   computer."  Am. Compl ¶ 40.   And Move has never claimed CoStar independently

11   accessed any protected computer.  There is no basis for the entry of injunctive relief

12   under the CFAA against CoStar.  *See Van Buren v. United States,* 593 U.S. 374, 382-

13   83 (2021); *accord Zurich American Ins. v. Bowman*, 2010 WL 5239239 at *2 (D.

14   Nevada 2010) (CFAA claim "does not warrant injunctive relief" because "claim

15   only addresses conduct that has allegedly occurred in the past"); *hiQ Labs, Inc. v.*

16   *LinkedIn Corp.*, 31 F.4th 1180 (9th Cir. 2022) ("CFAA is best understood as an anti-

17   intrusion statute and not as a 'misappropriation statute.").  Moreover, Move is not

18   likely to succeed on the claim because Move does not make the required allegation

19   of "technological harm."  *See hiQ Labs,* 31 F.4th 1180 at 1195.

### B. Move Faces No Imminent or Irreparable Harm

21   "Irreparable harm is arguably the single most important prerequisite for the

22   issuance of a preliminary injunction." *KCG Americas LLC v. Zhengquan Zhang*,

23   2017 WL 8294011, at *2 (N.D. Cal. Apr. 10, 2017).  The failure to show such harm

24   dooms Move's Motion. *Turo Inc. v. City of Los Angeles*, 847 F.App'x 442, 444 (9th

25   Cir. 2021).

### 1.    Move's Allegations of Harm are Speculative

---

[8] Move's allegation that CoStar ratified Kaminsky's alleged conduct is also baseless.
CoStar has not "fail[ed] to investigate or respond to the charges." Mot. at 15–16.

1    Harm is not irreparable unless it is actual and imminent, not remote or

2    speculative. *Dotster, Inc. v. ICANN*, 296 F. Supp. 2d 1159, 1162 (C.D. Cal. 2003).

3    A movant must adduce evidence of such harm and may not rely on "unsupported

4    and conclusory statements regarding harm [the plaintiff] might suffer." *Herb Reed*

5    *Enterprises*, 736 F.3d at 1250.

6    Move's theory of harm is premised on the long-rejected doctrine of

7    "inevitable disclosure." Move claims that Defendants "could use or disclose the

8    confidential materials…at any time" because Kaminsky knows the information and

9    can supposedly use it at CoStar. Mot. at 19. As a legal matter, California courts and

10   courts in this Circuit "complete[ly]" "reject" this theory. *Whyte v. Schlage Lock*

11   *Company*, 101 Cal.App.4th 1443, 1463 (Div. 3 Cal. 2002); *Lam Res. Corp. v.*

12   *Deshmukh*, 157 F. App'x 26, 28 (9th Cir. 2005) ("[B]ecause California does not

13   recognize the inevitable disclosure doctrine, the preliminary injunction…must be

14   vacated.").

15   As a factual matter, this theory fails given Kaminsky's role at CoStar. Move's

16   new angle is that Kaminsky could impact CoStar's approach to "content" and "SEO"

17   as a result of the Move documents he briefly accessed. This is rank speculation—

18   there is zero evidence CoStar is using or would use any information Kaminsky

19   viewed to change CoStar's content or improve its SEO. Indeed, Kaminsky has no

20   role relating to content or SEO strategy at CoStar. CoStar's head of SEO further

21   confirmed that he did not even know who Kaminsky was and his team have not seen

22   (or used) any information allegedly taken from Move. Kuwahara Dec. ¶¶ 5-6.

23   Move's 30(b)(6) designee regarding its allegations of harm also testified ████████

24   ███████████████████████████████████████████████████████████

25   ████████████████████████ Neuberger Dep. 107:3-7.[9]

26   ────────────────────

27   [9] Move's claims it suffered irreparable harm because Kaminsky deleted certain files
     makes no sense; his deletion has nothing to do with the purported misappropriation

28   and all of the deleted Move files were  and are available on Move's server.
     Kaminsky Dec. ¶¶ 15, 131.

1    Move's cases underscore its failure to establish irreparable harm here. For

2    example, in *Edwards*, the Court found a threat of such harm because the defendant

3    took documents specifically to use them in his job at a rival company, and

4    misrepresented that the trade secrets had been deleted. 2023 WL 4680774 at *5. In

5    *WeRide Corp. v. Kun Huang*, plaintiff presented direct evidence of defendant *using*

6    the alleged trade secrets. *See* 379 F. Supp. 3d 834, 844 (N.D. Cal. 2019). And in

7    *Henry Schein, Inc. v. Cook*, the Court found irreparable harm based on the

8    Defendants' recruiting actions using the trade secrets. 191 F. Supp. 3d 1072, 1075

9    (N.D. Cal. 2016). The unrebutted record shows that CoStar has never used Move's

10   documents, nor even possessed them. Move's assertion that CoStar has "access" to

11   its materials and *may* use them is counter-factual speculation that fails to establish

12   irreparable harm. *Calence, LLC v. Dimension Data Holdings, PLC*, 222 F. App'x

13   563, 566 (9th Cir. 2007) (courts need not "presume irreparable harm because of

14   alleged trade secret loss").[10]

15          **2.    CoStar's Actions Negated Any Potential for Harm**

16          In light of CoStar's voluntary remedial actions, Move cannot show that it

17   imminently faces any harm, let alone irreparable harm. *Monster Energy Co. v.*

18   *Integrated Supply Network, LLC*, 2021 WL 2986355, at *3 (C.D. Cal. Mar. 10, 2021)

19   (defendant's remedial actions were "sufficient for the Court to find that Plaintiff is

20   no longer at risk of irreparable harm"). Since learning of Move's allegations, CoStar

21   preserved all relevant information, reminded Kaminsky and employees working

22   with him that they are not to use Move information, engaged a forensic expert, and

23   placed Kaminsky on leave. These remediation efforts negate any likelihood that

24   _____

25   [10] Move also focuses on statements from CoStar's general counsel and CEO, arguing
     that CoStar's leadership "boasted it has no intention of policing Kaminsky's conduct
26   and sees nothing wrong with it." Mot. at 20. This is a mischaracterization of those
     statements and a baseless attempt at misdirection. CoStar investigated and
27   confirmed it does not have and has not used the documents underlying Move's
     motion. The statements reflect Move's false assertions of use, and the overall
28   weakness of Move's case. Expedited discovery has only confirmed the baselessness
     of Move's claims about CoStar.

1   Move will suffer irreparable harm.  *Monster Energy*¸ 2021 WL 2986355 at \*3

2   (defendant's remedial actions were "sufficient for the Court to find that Plaintiff is

3   no longer at risk of irreparable harm").

4               **3.     Move's Delay Undermines Immediate Harm**

5          Plaintiff's delay in seeking return of its trade secrets, in filing a complaint,

6   and in seeking injunctive relief further undercuts any claim of immediate irreparable

7   harm.  *Oakland Tribune, Inc. v. Chronicle Pub. Co*., 762 F.2d 1374, 1377 (9th

8   Cir.1985); *Lydo Enters. v. City of Las Vegas*, 745 F.2d 1211, 1213-14 (9th Cir.1984)

9   ("delay in seeking a preliminary injunction is a factor to be considered").   Move not

10  only delayed, it did not act as if it had any significant concern that its trade secrets

11  were compromised, and instead declined to take remedial measures. Pence Dep.

12  81:21–82:3 ("other than removing [Kaminsky's] access," Move took **no steps to**

13  **mitigate** the alleged breach).  Instead, Move continues ██████████████████

14  ████████████████████████████████████████████████████████████

15  ████████████████████████████████ Pence Dep. 150:10–19. ████████

16  ████████████████████████████████████████████████████████████

17  ████████████████████████████████████████████████████████████

18  ████████████████████    *id.* 81:21–82:23; *see* Oza Dec. ¶¶ 8, 18-23, 30-46.

19              **4.     Move's Alleged Economic Losses are Reparable**

20         As a matter of law, the type of harm Move alleges—loss of market position

21  and (unidentified) customers—is not irreparable.  Even if Move could establish that

22  CoStar used its trade secrets, such harm is compensable by money damages.  *See*

23  *Kimbell v. Republic of Austria*, 2017 WL 10573983, at \*2 (C.D. Cal. July 7, 2017)

24  ("Economic losses do not constitute "irreparable harm" because monetary damages

25  can be recovered following success on the merits."); *Calence, LLC v. Dimension*

26  *Data Holdings, PLC*, 222 F. App'x 563, 566 (9th Cir. 2007) (affirming denial of PI

27  where "allegedly lost revenues … can be remedied through money damages").

28  **C. The Balance of Hardships Weighs Against the Grant of Move's Motion,**

1    **which is not in the Public Interest**

2       CoStar has never had access to any of Move's purported trade secrets. Move's

3  business is not threatened in any way. Under these circumstances, the balance of

4  hardships weighs in favor of CoStar, or at the very least is neutral. *AEG Holdco*

5  *LLC v. Vazquez*, 2021 WL 4859975 (C.D. Cal. Sept. 22, 2021) (balance of equities

6  tipped in favor of defendant where "Plaintiff's evidentiary record does not show it

7  faces serious harm absent an injunction"). Move cannot identify *any* additional

8  benefit that would be gained from the grant of this Motion, other than obtaining a

9  "win" to publicize and use against CoStar.

10      The public interest also favors CoStar. The public has an "interest in

11  competition" and the benefits of a competitive marketplace. *GTAT Corp. v. Fero*,

12  2017 WL 2303973, at *6 (D. Mont. May 25, 2017) (balance of equities weighed

13  against former employer). That interest is not served by granting a baseless

14  injunction against a competitor who has done nothing wrong—rather, it is served by

15  denying Move's request for an unnecessary injunction and a public relations win.

16  Such an injunction would also undermine competition and employee mobility,

17  which is also adverse to the public interest.

18                          **<u>CONCLUSION</u>**

19      For the foregoing reasons, Move's Motion should be denied.

20  Dated: September 4, 2024           Respectfully submitted,
21

22                                     **LATHAM & WATKINS LLP**
23
                                       By */s/ Matthew W. Walch*
24                                     Nicholas J. Boyle
                                       Matthew W. Walch
25                                     Joseph D. Axelrad

26                                     *Attorneys for Defendant*
                                       CoStar Group, Inc.
27

28

COSTAR GROUP, INC.'S RESPONSE TO PLAINTIFF'S
                                       AMENDED MOTION FOR PRELIMINARY INJUNCTION

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## <u>CERTIFICATE OF COMPLIANCE</u>

The undersigned, counsel of record for Defendant CoStar Group, Inc.,

certifies that this brief contains 6,981 words, which complies with the word limit of

L.R. 11-6.1.


Dated:  September 4, 2024        By:  */s/ Matthew W. Walch*
                                       Matthew W. Walch

COSTAR GROUP, INC.'S RESPONSE TO PLAINTIFF'S
AMENDED MOTION FOR PRELIMINARY INJUNCTION