JENNER & BLOCK LLP
Brent Caslin (SBN 198682)
bcaslin@jenner.com
David R. Singer (SBN 204699)
dsinger@jenner.com
Elizabeth Baldridge (SBN 313390)
ebaldridge@jenner.com
515 South Flower Street, Suite 3300
Los Angeles, CA  90071-2246
Telephone:  +1 213 239 5100
Facsimile:  +1 213 239 5199

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# WESTERN DIVISION

| | |
|---|---|
| MOVE, INC., a Delaware corporation; MOVE SALES, INC., a Delaware corporation; REALSELECT, INC., a Delaware corporation,<br><br>Plaintiffs,<br><br>v.<br><br>COSTAR GROUP, INC., a Delaware corporation; JAMES KAMINSKY, an individual; and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No. 2:24-cv-05607-GW-BFM<br><br>**SUPPLEMENTAL DECLARATION OF ANDY CRAIN IN SUPPORT OF REPLY TO PLAINTIFFS' AMENDED MOTION FOR PRELIMINARY INJUNCTION** |

# DECLARATION OF ANDY CRAIN

I, Andy Crain, declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the following is true and correct:

1. I am Managing Director at Berkeley Research Group ("BRG"), a global consulting firm providing forensic support to litigation and investigations, among other services. I have submitted previous declarations in this matter, including recently in support of Plaintiffs Move, Inc., Move Sales, Inc., and RealSelect, Inc. (collectively, "Move") August 27, 2024 motion for preliminary injunction against Defendants CoStar Group, Inc. ("CoStar") and James Kaminsky.

2. I am aware that CoStar and Mr. Kaminsky submitted various materials in opposition to Move's motion, including: a declaration from Mr. Kaminsky[1] about (among other things) his actions related to Move files, and a declaration from Mr. Kevin Negangard[2] which describes certain steps performed by Alvarez & Marsal ("A&M"), CoStar and Mr. Kaminsky's forensic vendor. Having reviewed such materials, I offer my observations in this brief supplemental declaration.

3. I note that BRG has not received any of the evidence described in the Negangard Declaration relating to A&M's forensic investigation. Accordingly, I do not have any ability to examine any of that evidence related to the actions performed using Mr. Kaminsky's personal or CoStar devices that are reflected on Move's electronic storage audit logs. This applies equally to my being unable to examine these data sources to otherwise validate the findings described in the Negangard Declaration; I am only able to respond to Mr. Negangard's descriptions of the workflow and results.

4. Based on my review of his declaration, Mr. Kaminsky appears to generally acknowledge performing the actions described in Move's electronic

---

[1] Further Declaration of James Kaminsky In Opposition to Plaintiffs' Amended Motion for Preliminary Injunction ("Kaminsky Decl.").

[2] Declaration of Kevin Negangard In Support of Defendants' Opposition to Motion for Preliminary Injunction ("Negangard Decl.").

storage logs, with the one exception that he disputes that the log's January 23, 2024 "download" event for the file "N&I Audience and Revenue for PMDLT" file was in fact a download to his computer.[3] Rather, Mr. Kaminsky disputes that the action actually "downloaded" the file but instead represented a printing event.[4]

5. In my experience, a printing event initiated directly from Google Drive (Move's electronic storage platform) is logged in the Google Drive audit logs as exactly that: that a user "printed" a file. This is in contrast to a printing event of a file downloaded from Google Drive and then printed from a local computer application; Google Drive would record the download event, but the subsequent printing is not within Google Drive's visibility, and thus is not logged. Based on my review of Move's audit logs, no printing events appeared for Mr. Kaminsky at any time. The Negangard Declaration appears to corroborate that this file was printed around this time,[5] but based on the information provided in that declaration, coupled with the absence of a printing event in the Move audit logs, I am unable to ascertain whether the printing occurred via the browser or of a locally-stored file.

6. In addition, Mr. Kaminsky indicates that the events in the Move audit log on May 31, 2024 represent a series of openings in "rapid succession in a limited period" wherein the files' content "could not have been absorbed in that short timeframe."[6] I am familiar with the operation of Google Drive and the events that get recorded in Google Drive audit logging. Specifically related to this, Google Drive records when a document is "viewed," but does not record when a document is "closed"—that is, when a document is no longer being viewed or visible to the user. Mr. Kaminsky appears to assert that simply because a string of "view" events appear in close proximity to one another that the prior "viewing" of a file has concluded when the next "viewing" begins.

---

[3] See Kaminsky Decl. ¶ 28.
[4] Id.
[5] Negangard Decl. ¶ 6(F).
[6] Kaminsky Decl. ¶ 52.

7. However, I do not see a location in the Move storage logs which tracks the amount of time the file has been open or its content displayed to the user. Rather, Google Drive simply records when a file was opened (recorded as a "viewed" action). When viewing documents in Google Drive, the 'default' behavior in my experience is that, when a user double-clicks a document, that document opens in a separate browser 'tab.' The original Google Drive tab showing the listing of files remains available to the user to double-click open a second document (into a third tab, for example), without closing the first document. It is thus possible to have multiple documents open simultaneously, for an indeterminate amount of time subsequent to the initial "viewing."

8. Even notwithstanding that the Move audit logs are consistent with opening multiple files simultaneously, in my experience it takes only a few seconds for a user to copy and paste all or part of a file's content into another document.

9. Related to the Negangard Declaration, I understand that A&M preserved and performed a limited examination of, among other sources, five computers for Mr. Kaminsky: one personal MacBook Pro and four CoStar issued computers (two Dell computers and two Apple computers). I further understand that A&M analyzed these computers to search for "ten file names (without any file extensions) and hash values provided by Plaintiffs"[7] relating to ten specific files, including several documents which had been stored in Move's electronic document storage system Google Drive.

10. Hash value searches are common and serve a valuable purpose within the forensic industry. They also have their limitations: they will only locate an exact match of the complete contents of a file. Adding a single space to a file will cause the hash value to change or, for Microsoft Office file types, resaving the document without *any* content changes can produce a new hash value (due to alterations to

---

[7] *See* Negangard Decl. ¶¶ 6(D), 13(D).

3
SUPPLEMENTAL DECLARATION OF ANDY CRAIN

embedded metadata). As a result, forensic examiners often perform a triplicate of searches for the best results:

    a. A filename search (which may locate a file whose content has changed but its name has not);

    b. A hash value search (which may locate a file whose content has *not* changed but its name has); and

    c. A term search for one or more key words or key phrases selected from each of the documents sought to be located (which may locate full or partial content matches that had been copied into new files).

The last of these searches can become complicated and burdensome with a large corpus of identified files but it is typically very manageable to select 2-3 search phrases from each file when the document population is small like that here (only ten files).

    11. I understand from the Negangard Declaration that A&M did not search for keywords or key phrases from the ten identified files. Doing so would have provided better visibility than simply a filename and hash value search, because it would have examined, for example, whether the files were converted to a different format or if part of the file content was copied-and-pasted into another document (and/or if any content was copied and then changed other than in the selected key phrase).

    12. The Negangard Declaration also states that, as to the five computers examined, A&M's search "did not locate any records of activity related to the download or transfer of" the ten identified files.[8] The Negangard Declaration further describes that "cached cop[ies]" of six of the identified files were located in an email repository and that a page from of one of the Google Documents called "N&I Audience and Revenue for PMDLT" was located in cached printer records.[9] Other

---

[8] *See* Negangard Decl. ¶¶ 6(G), 13(E).
[9] *Id.* ¶¶ 6(E)-(F).

4
SUPPLEMENTAL DECLARATION OF ANDY CRAIN

than for the six "cached" files in Mr. Kaminsky's locally-stored email, I note that this examination by M&A specifically does not describe any evidence of opening or accessing these files such as via internet browser artifacts, or whether any other documents were open at the same time as the files were being accessed according to Move's log files. For files known to have been accessed from a Google Drive account, I would have expected a detailed examination of internet history or file editing around the known access times to have been a primary focus of a forensic investigation.

13. Furthermore, the Negangard Declaration does not provide the reader any ability to assess the potential 'blind spots' in A&M's forensic investigation. For example, there is no information given about whether or not the internet browser history, including download history, had been deleted – Mr. Kaminsky himself describes that he would "periodically delete[ his] browser history as good computer hygiene" at Move.[10] There is also no discussion in the Negangard Declaration of any deletion analysis performed by A&M. Both of these, among other forensic analyses, are important for a reader to be able to put in context A&M's findings as to whether the files had been downloaded, transferred, locally stored, or deleted.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: September 11, 2024       By:       *Andy Crain* (signature)
                                            Andy Crain

---

[10] Kaminsky Decl. ¶ 16.