UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 24-5607-GW-BFMx | Date | September 23, 2024 |
|---|---|---|---|
| Title | *Move, Inc., et al. v. CoStar Group, Inc., et al.* | | |

Present: The Honorable **GEORGE H. WU, UNITED STATES DISTRICT JUDGE**

| Javier Gonzalez | None Present | |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| None Present | None Present |

**PROCEEDINGS:** IN CHAMBERS - TENTATIVE RULINGS ON PLAINTIFFS' MOTION FOR (1) PRELIMINARY INJUNCTION AND (2) LIMITED EXPEDITED DISCOVERY [12]

Attached hereto is the Court's Tentative Ruling on Plaintiffs' Motion [12] set for hearing on September 23, 2024 at 8:30 a.m.

:

Initials of Preparer    JG

***Move, Inc., et al. v. CoStar Grp., Inc., et al.***, Case No. 2:24-cv-05607-GW-(BFMx)
Tentative Ruling on Motion for Preliminary Injunction

On July 2, 2024, Move, Inc., Move Sales, Inc., and RealSelect, Inc. (collectively, "Move") filed this lawsuit against CoStar Group, Inc. ("CoStar") and James Kaminsky ("Kaminsky"). *See* Docket No. 1. Move filed an initial motion for preliminary injunction on July 15, 2024, simultaneously seeking limited expedited discovery. *See* Docket No. 12. On July 23, 2024, CoStar moved, *ex parte*, for expedited discovery and a continuance of the preliminary injunction hearing, and Kaminsky joined in that request. *See* Docket Nos. 21, 26. On July 29, 2024, the Court granted CoStar's *ex parte* request and continued Move's motion to a hearing date of September 23, 2024. *See* Docket No. 38.

The operative complaint in the action is the First Amended Complaint ("FAC") Move filed after its initial preliminary injunction motion on August 16, 2024. *See* Docket No. 54. The FAC contains six claims for relief: 1) trade secret misappropriation under the Defendant Trade Secrets Act, 18 U.S.C. § 1836 ("DTSA"); 2) trade secret misappropriation under the Uniform Trade Secrets Act, Cal. Civ. Code § 3426 et seq. ("CUTSA"); 3) violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030 ("CFAA"); 4) violation of the Comprehensive Computer Data Access and Fraud Act, Cal. Pen. Code § 502; 5) breach of contract; and 6) promissory fraud. After it filed the FAC, Move filed an amended motion for preliminary injunction, *see* Docket No. 60, making its initial motion for a preliminary injunction (and expedited discovery) moot.

Distilled to its essence, the action concerns allegations[1] that Kaminsky, a former employee of Move and current employee of Move's direct competitor, CoStar, maintained access to certain Move documents – including documents that Move asserts constitute or contain trade secrets – following his departure from Move and continued to access certain Move documents after he began working for CoStar (among other things breaching his employment contracts with Move and violating federal and state anti-computer fraud laws).

---

[1] In assessing a motion seeking a preliminary injunction, the Court relies on evidence, not allegations. *See, e.g.*, *Ctr. for Auto Safety v. Chrysler Grp., LLC*, 809 F.3d 1092, 1099 (9th Cir. 2016); *Herb Reed Enters., LLC v. Fla. Entm't Mgmt., Inc.*, 736 F.3d 1239, 1249-51 (9th Cir. 2013); *cf. Murthy v. Missouri*, 144 S.Ct. 1972, 1986 (2024). This discussion of Move's allegations is purely for scene-setting purposes.

1

*See* FAC ¶¶ 1, 7-9, 11. Move and CoStar operate, respectively, Realtor.com and Homes.com. *See id.* ¶¶ 2, 4. While with Move, Kaminsky was the former head of Realtor.com's News & Insights Group, responsible for the "News & Insights" content platform that is featured prominently on the Realtor.com website. *See id.* ¶¶ 5-6. News & Insights "creates and publishes quality content, working with groups across the Realtor.com business and with others in the media to report and comment on real estate and related topics," drives traffic to Realtor.com, "creates significant authority for the brand," and "is key to building Move's and Realtor.com's brand awareness, goodwill, and loyalty." *Id.* ¶ 5.

According to Move, at CoStar Kaminsky is

> Managing a team of writers. He holds himself out as a "Content Strategist," "Senior Editorial Director," "Team Leader," and "Brand Builder." According to his LinkedIn profile, Mr. Kaminsky's employer is "CoStar," and his title is "Editor, Homes.com." Mr. Kaminsky manages and supervises a team of ten other employees at CoStar working to build up new digital content to attract website traffic in competition with Realtor.com.

*Id.* ¶ 6. Kaminsky's accessing and viewing of Move's material is, according to Move, "plainly within the scope of his employment by CoStar as a content editor for Homes.com" and "was an outgrowth of his employment with CoStar," going "to the heart of an important business objective at CoStar and his role at CoStar." *Id.* ¶ 10.

### The Test for a Preliminary Injunction

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008); *see also Fraihat v. U.S. Immigration & Customs Enf't*, 16 F.4th 613, 635 (9th Cir. 2021) ("A preliminary injunction is 'an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion.'") (quoting *Lopez v. Brewer*, 680 F.3d 1068, 1072 (9th Cir. 2012)). Under *Winter*, to obtain injunctive relief Move must show that it is "likely to succeed on the merits, that [it] is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in [its] favor, and that an injunction is in the public interest." *Winter*, 555 U.S. at 20; *see also Vivid Entm't, LLC v. Fielding*, 774 F.3d 566, 577 (9th Cir. 2014).

Although Move does not appear to rely on it, in the wake of *Winter*, the Ninth Circuit also still employs a lesser, "sliding-scale" approach. Under that latter construct,

"serious questions going to the merits and a balance of hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Arc of Cal. v. Douglas*, 757 F.3d 975, 983 (9th Cir. 2014) (omitting internal quotation marks) (quoting *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011)); *see also Betschart v. Oregon*, 103 F.4th 607, 619 (9th Cir. 2024) ("'Under our sliding scale approach, the elements of the preliminary injunction test are balanced, so that a stronger showing of one element may offset a weaker showing of another.'") (quoting *Hernandez v. Sessions*, 872 F.3d 976, 990 (9th Cir. 2017)) (omitting internal quotation marks); *Where Do We Go Berkeley v. Cal. Dep't of Transp.*, 32 F.4th 852, 859 (9th Cir. 2022) ("[W]hen plaintiffs establish that the balance of hardships tips sharply in their favor, there is a likelihood of irreparable injury, and the injunction is in the public interest, they need only show 'serious questions' on the merits."). "Serious questions are issues that 'cannot be resolved one way or the other at the hearing on the injunction because they require more deliberative investigation.'" *Assurance Wireless USA, L.P. v. Reynolds*, 100 F.4th 1024, 1031 (9th Cir. 2024) (quoting *Manrique v. Kolc*, 65 F.4th 1037, 1041 (9th Cir. 2023)). "[P]arties do not show serious questions when they raise a 'merely plausible claim,' nor can a district court 'forgo legal analysis just because it has not identified precedent that places the question beyond debate.'" *Id.* (quoting *Where Do We Go Berkeley*, 32 F.4th at 863). "This 'less demanding' merits standard requires serious factual questions that need to be resolved in the case." *Id.* (quoting *Alliance for the Wild Rockies*, 68 F.4th at 497).

"In each case, courts 'must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief.'" *Winter*, 555 U.S. at 24 (quoting *Amoco Prod. Co. v. Gambell*, 480 U.S 531, 542 (1987)).

Here, the Court will begin – and end – its analysis with the question of whether Move has demonstrated that it is *likely* to suffer irreparable harm in the absence of its requested preliminary injunction.

**<u>Irreparable Harm</u>**

The type of irreparable harm that must face a successful preliminary injunction movant is *imminent* irreparable harm. *See Alliance for the Wild Rockies v. Petrick*, 68 F.4th

475, 490 (9th Cir. 2023). "'[A] plaintiff must demonstrate immediate threatened injury as a prerequisite to preliminary injunctive relief.'" *Boardman v. Pac. Seafood Grp.*, 822 F.3d 1011, 1022 (9th Cir. 2016) (quoting *Caribbean Marine Servs. Co., Inc. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988); *see also Earth Island Inst. v. Carlton*, 626 F.3d 462, 474 (9th Cir. 2010) (approving of district court's analysis where it "analyzed both whether it was *likely* or merely *possible* that the alleged harm would take place" and "[p]oint[ed] out that a showing of a mere possibility of irreparable harm is not sufficient under *Winter*"). "'Speculative injury does not constitute irreparable injury sufficient to warrant granting a preliminary injunction.'" *Doe v. San Diego Unified Sch. Dist.*, 19 F.4th 1173, 1181 n.7 (9th Cir. 2021) (quoting *Caribbean Marine Servs.*, 844 F.2d at 674).

As CoStar and Kaminsky note in their Opposition briefs, despite the fact that Move sought expedited discovery along with its original motion for a preliminary injunction and the fact that the Court *allowed* expedited discovery preceding the hearing on this motion, Move took no discovery. The Court leads its analysis with that fact because it is pertinent to several of the points the Court confronts below.

Move's irreparable harm effort in its opening brief is limited to three paragraphs, choosing instead to focus its efforts on the question of whether it is likely to succeed on the merits. Move first notes therein that "[l]oss of the economic value of accumulated data" and loss of market position and disclosure of trade secrets" can constitute irreparable harm. It then asserts that it is not speculative harm when a defendant, who is currently employed by a competitor, could use or disclose protected material at any time, citing *Edwards Lifesciences Corp. v. Launey*, No. 8:23-cv-00304-WLH-ADSx, 2023 WL 4680774, at *5 (C.D. Cal. June 12, 2023). Move also asserts that Kaminsky has already stipulated to irreparable harm, citing an Employee Invention Assignment and Confidentiality Agreement ("Confidentiality Agreement") Kaminsky signed on around June 4, 2015, *see* Declaration of Kat Koutsantonis in Support of Plaintiffs' Motion for Preliminary Injunction ("Koutsantonis Decl."), Docket No. 60-7, Exh. A, and notes that CoStar itself has recently argued to a court that "the loss of trade secrets *can* cause severe and irreparable harm." Docket No. 60, at 20:10-13 (emphasis added). Briefly, as to that last point, the Court does not consider any party to this lawsuit to have disputed that a loss of trade secrets *can* cause irreparable harm, depending on the surrounding circumstances.

4

Among other things, in response to Move's opening brief CoStar argues that its forensic expert "confirmed that Kaminsky never had the documents [in question on this motion] in his CoStar account and they were not sent to anyone at CoStar,"[2] and that Move "cannot identify any change CoStar has made to its business or damage it has suffered as a result of Kaminsky's access to the five Move documents." Docket No. 77-1, at 1:18-21. It also asserts that there is no risk Kaminsky or CoStar will use the documents at issue, both because, again, CoStar does not possess the documents and because Kaminsky's job with CoStar – from which he is on leave through January 1, 2025 or when this litigation ends, whichever is earliest, *compare Polypeptide Labs., Inc. v. Zell*, No. 2:19-cv-08820 GW (Ex), Docket No. 30, at pg. 3 of 5-6 & n.1 (C.D. Cal. Nov. 21, 2019) – "has no bearing on the content or [search engine optimization ("SEO")] strategy" the motion discusses. Docket No. 77-1, at 2:27-3:4; *see also* Docket No. 60, at 2:16-28, 3:7-10, 3:18-19, 12:4-12, 12:20-27, 13:2-5, 15:10-13, 15:18-20, 16:21-22. CoStar asserts that Kaminsky's job "is limited to writing about history, architectural detail, and lifestyle within New York City condos," and that he has not worked with, talked to, or shared information with CoStar's SEO department. Docket No. 77-1, at 7:12-20. Kaminsky's Opposition makes the same point.[3] Kaminsky also emphasizes that sharing information of the sort at issue on this motion would violate both his Confidentiality Agreement with Move and his employment agreement with CoStar. Of course, it is Move's theory that Kaminsky has *already* violated his Confidentiality Agreement (along with another agreement) with Move.

CoStar has summarized Move's thinking as "speculating that *perhaps* stale documents about its news articles and their viewership, which CoStar does not possess,

---

[2] Move acknowledges that Kaminsky had already been working for CoStar for over three months before Move even filed this lawsuit. *See* Complaint, Docket No. 1, ¶ 16.

[3] Move asserts in its Reply brief that Kaminsky's "role at CoStar unquestionably involves leading a team that creates and edits content for an online residential real estate listing service, which is precisely what he was doing at Move," and that the alleged trade secrets would help Kaminsky know what keywords to use in writing articles, what is "being picked up by a share voice tracker," "what categories to write in," and "what channels to use." Docket No. 84-1, at 12:1-13. Even if Move is entirely correct in all of these regards, this approach fails to appreciate that leading a single team would not appear to give – at least there is no evidence of it giving – Kaminsky a role in crafting CoStar's *overall* strategy in these regards. If he has no such role, what is the threat of CoStar irreparably harming Move simply by virtue of Kaminsky having the ability to apply these principles in his own job, or even across his entire – limited – content team?

*might* in the future *somehow* help CoStar's already successful SEO division (which sworn testimony shows Kaminsky has no ties to), despite that the only record evidence demonstrates otherwise." Docket No. 77-1, at 10:1-5.[4] CoStar sums up the theory as relying on an "inevitable disclosure" doctrine – that is, even if Kaminsky has not revealed Move's trade secrets to CoStar *yet*, he might do so at any time.

In the Reply brief, Move denies that it is attempting to rely on an "inevitable disclosure" theory because, among other reasons, in its understanding that theory is limited to being part of an attempt to preclude a former employee from going to work for a competitor, something Move does not seek here, and also applies to employ a *presumption* about misappropriation, as opposed to a situation where there is actual *evidence* of misappropriation (the case here, at least as to Kaminsky). Whether or not Move has properly cabined the "inevitable disclosure" doctrine, the Court would agree with CoStar and Kaminsky that Move has not made a satisfactory showing of likely, imminent, irreparable harm.

If Move is relying on a loss of "market position" because of Kaminsky's access to the documents at issue, Kaminsky asserts that Move has no *evidence* of such a harm. Certainly Move has not cited the Court to any. The same is true with respect to any theory concerning loss of "economic value of accumulated data," also mentioned in Move's opening brief. Move's motion simply argues that Defendants' access to some of the materials at issue in this case[5] "could wipe out Move's competitive edge in using its News & Insights platform to drive significant traffic to Realtor.com and revenue to Move" and then immediately follows that up by referring to this as a "market position." Docket No. 60, at 20:6-9. Even assuming that this is an identifiable/measurable market position, the Court again assesses it as entirely speculative at this point, a conclusion that is not aided

---

[4] In its Reply brief, Move briefly appears to attempt a rhetorical sleight-of-hand by attempting to recharacterize CoStar's and Kaminsky's arguments concerning the lack of an imminent, irreparable harm showing into an argument about *mootness* that CoStar and Kaminsky have *not* made. *See* Docket No. 84-1, at 17:4-11, 18:22-19:1. Because neither CoStar nor Kaminsky have made mootness an issue on this motion and there is no reason for the Court to independently suspect that it is a concern, there is no cause for the Court to consider that topic.

[5] Move admits that only five documents/files are at issue on this preliminary injunction motion. *See* Docket No. 60, at 3:28-6:20.

6

by Move's refusal to engage in discovery prior to the hearing on this motion.

The only other point in Move's opening brief that the Court has not, by this juncture in the analysis, already addressed is Move's reliance on the decision issued in *Edwards Lifesciences*. In that case, the *plaintiffs* had submitted a third-party forensic report that contradicted the defendant's assertion that he no longer possessed any confidential trade secrets on his personal devices, and the plaintiffs' counsel had likewise discovered some evidence to this effect. *See Edwards Lifesciences*, 2023 WL 4680774, at *5. The court concluded that there was a "strong threat of irreparable injury before trial" because the defendant "could use or disclose the confidential materials on his personal device at any time," and noted that, because the defendant was "currently employed by a competitor" of the plaintiff, "this threat is not merely speculative." *Id.*

At least two points are worth noting here. First, again, Move did not engage in any discovery in advance of this motion. Move is therefore unable to point to any evidence it uncovered via a forensic examination of Kaminsky's computers, past or present. It did not bother to dig into the reasons Kaminsky might have accessed the material after leaving Move, and/or while working for CoStar. It did not bother to investigate whether Kaminsky in fact had transferred any of the files or, if he did so, to where/whom.

Still, Move *has* directed the Court, in the Reply brief (*i.e.*, not giving Kaminsky or CoStar any opportunity for a response), to certain asserted inconsistencies in Kaminsky's accounts of his behavior. *See* Docket No. 84-1, at 2:26-3:5, 17:19-18:4, 19:15-19. But, in this Court's view, those purported inconsistencies do not impact the *likelihood* of disclosure to CoStar of information that will *likely* cause Move *irreparable* harm.[6] Again, despite being given the opportunity, Move did not engage in any discovery regarding Kaminsky's conduct, seemingly a surefire opportunity to dive deep into Kaminsky's activities and plans, whatever Move feared that they might be.

Second, this Court has a significant doubt that the "strong threat of irreparable

---

[6] How does the "portion" of the Audience & Revenue Strategy file Kaminsky printed, *see* Declaration of Kevin Negangard in Support of Defendants' Opposition to Motion for Preliminary Injunction, Docket No. 75-5, ¶ 6(f) & Exh. A, itself reflect/include trade secrets? What is the evidence indicating Kaminsky and/or CoStar are likely to use the "confidential employee files" that remain in Kaminsky's Gmail? Why does what Kaminsky claims he *deleted* say anything about an imminent plan to use or disclose *any* material? The Court's lack of clarity on these points is not *the Court's* problem; it is Move's.

injury before trial" standard – which *Edwards Lifesciences* drew from a 1990 Ninth Circuit decision, *Diamontiney v. Borg*, 918 F.2d 793 (9th Cir. 1990), which itself relied upon a pre-*Winter* "*possibility* of irreparable injury" standard, *id.* at 795 (emphasis added) – properly reflects the current standard for preliminary injunctive relief.[7]  *Winter* requires that a plaintiff demonstrate it is *likely* to suffer irreparable harm.  Even if the "strong threat" standard recited in *Diamontiney* is equal to or exceeds a "likely" requirement, concluding that it is satisfied merely because a former employee now works for a competitor would appear to ignore that Ninth Circuit precedent requires that such harm be *imminent*.

In short, the Court is not persuaded by the analysis presented in *Edwards Lifesciences* or that its reasoning is particularly-applicable to the situation here given the lack of evidence relevant to imminent, irreparable, harm submitted by, and lack of explanation provided by, Move.

In contrast with the effort on this topic in the opening brief, Move's Reply brief spends almost five pages on the topic of irreparable harm.  Most of that effort calls into question the believability of Kaminsky's and CoStar's assertions that there is no reason for, or plan to, make any use of the materials Kaminsky maintains/maintained access to after leaving Move, or responds to CoStar's assertions about a perceived "inevitable disclosure" theory.  There are also brief callbacks to arguments presented in Move's opening brief.  This includes another reference to Move's position that Kaminsky already agreed/stipulated to irreparable harm.

Move's reliance on the Confidentiality Agreement Kaminsky signed does not actually confront the language in that agreement.  Perhaps that is why the space devoted to this argument in both of Move's briefs amounts to a sum-total of two sentences.  *See* Docket No. 60, at 20:10-11; Docket No. 84-1, at 15:22-23.  That agreement, in pertinent part, provides that Kaminsky

---

[7] The "strong threat" standard was recited in *Winter*'s *dissent*.  *See* 555 U.S. at 52 (Ginsburg, J., dissenting). *Diamontiney* has only been cited once by a published Ninth Circuit decision post-*Winter*, and that was in support of the non-controversial position that a plaintiff "does not need to show *past injury*" by the defendant "to establish standing or to succeed on the merits of its preliminary injunction motion."  *Shell Offshore, Inc. v. Greenpeace, Inc.*, 709 F.3d 1281, 1288 (9th Cir. 2013) (emphasis added).  Only a single unpublished district court decision has cited the admittedly-recent 2023 *Edwards Lifesciences* decision, but not for the proposition advanced here.  *See Rebecca Bamberger Works, LLC v. Bamberger*, No. 24-CV-706 JLS (DDL), 2024 WL 2805323, at *9, 18 (S.D. Cal. May 31, 2024).

>understand[s] that in the event of a breach or threatened breach of this Agreement by me, the Company *may* suffer irreparable harm and will therefore be entitled, in addition to all other remedies it may have, to immediate injunctions or other appropriate orders to restrain any such breach without showing or proving any actual damage to Company.

Koutsantonis Decl., Exh. A, ¶ 15 (emphasis added); *see also* Docket No. 60, at 7:15-17 (Move's characterization of the agreement as reflecting that Kaminsky had agreed that, in the event of a breach, Move "could" suffer irreparable harm). Recognizing that Move *may* suffer irreparable harm in such a situation, and that *if it did* Move would be "entitled" to injunctive relief, does not amount to Kaminsky having "already stipulated to irreparable harm." Docket No. 60, at 20:10-11. Instead, it clearly contemplates that Move would still have to demonstrate that it did, or that it *will*, suffer irreparable harm. That is the whole point of this Court's current analysis.

Lacking evidence of its own (because of a failure to take advantage of an opportunity for discovery, despite *its* initial request for such an opportunity), Move otherwise only questions the veracity of Kaminsky in multiple regards. But Move's failure to take advantage of the opportunity for discovery has allowed it to either a) consider only what it believes it already knows about Kaminsky's conduct before this lawsuit was filed (none of which involves actual disclosure of anything to CoStar) to form the basis for what Move believes/speculates Kaminsky *might* do with CoStar going forward, *see, e.g.*, Docket No. 84-1, at 16:22-27, 18:5-16, or b) criticize Kaminsky for correcting the record regarding certain actions he took months earlier when the forensic report conducted by the defense discovered certain information that was inconsistent with Kaminsky's initial account in a few respects that Move has not shown to be anything other than minor/trivial (*see* Footnote 6, *supra*), *see, e.g.*, Docket No. 84-1, at 17:12-18. Move has not actually *tested* its suppositions or its doubts about Kaminsky's "believab[ility]" by engaging in discovery.

Move's other efforts that appear to be an attempt to get around the fact that it has not developed actual evidence to support the required threat of imminent, irreparable harm are equally unconvincing.

For instance, apart from the assertion that Kaminsky "could" use or disclose to CoStar "at any time" the five files/documents at issue on this motion, Move only adds that one of the five files/documents "was not among the documents [Kaminsky] deleted from his Move laptop, which shows he likely downloaded it to a different computer." Docket

9

No. 60, at 20:17-21.  Move does not explain why this is the "likely" conclusion (and did not explore, through discovery, what other "mystery computer," *id.* at 16:26-27, might contain a download of the file/document).

Move also cannot bolster its argument that the "threat of use or disclosure" is "particularly acute" here because CoStar's leadership "sees nothing wrong with" Kaminsky's conduct.  *See* Docket No. 60, at 20:21-23.  Kaminsky's conduct thus far has not been shown to involve *use or disclosure*.  In other words, Move is matching up a CoStar reaction to Kaminsky conduct that is not of the type (use or disclosure) that Move – speculatively, at this point – fears in its attempt to justify preliminary injunctive relief.

A similar argument that a preliminary injunction must issue because defendants "cannot be trusted to police themselves," Docket No. 60, at 1:11-13, or because a court "should not trust the fox to guard the henhouse," Docket No. 84-1, at 16:20-21, would run headlong into the principles that speculation is insufficient and imminence is required, supported by evidence.

In sum, CoStar asserts that Move has no *evidence* of any connection between Kaminsky and CoStar's SEO efforts, and the available evidence indicates that CoStar does not have, and has not used, any of the materials in question.  Move gives the Court no reason based in evidence – not speculation – to question these assertions.  Although Move might have – as Kaminsky puts it – "a worry and a concern" about a potential at-some-point-in-time-in-the-future use of some of the information that might be contained in its alleged trade secrets at issue in this litigation, *see* Docket No. 73, at 12:12-17, that does not suffice for purposes of demonstrating irreparable harm.  Under these circumstances, the Court does not believe that Move has demonstrated the threat of immediate injury that is necessary to issue the extraordinary remedy of a preliminary injunction.  *See, e.g.*, *Boardman v. Pac. Seafood Grp.*, 822 F.3d 1011, 1022 (9th Cir. 2016) ("This Court has ruled that '[s]peculative injury does not constitute irreparable injury sufficient to warrant granting a preliminary injunction.  A plaintiff must do more than merely allege imminent harm sufficient to establish standing; a plaintiff must demonstrate immediate threatened injury as a prerequisite to preliminary injunctive relief.'") (quoting *Caribbean Marine Servs.*, 844 F.2d at 674).  Move will be able to test its hypotheses and fears through discovery (and would have been able to already, to at least a certain degree, had it elected

10

to do so).

Move also makes a final, new[8], argument in the Reply brief, asserting that courts have concluded that evidence of misappropriation creates a "presumption of irreparable harm" in trade secret cases, citing a single district court decision in support of the point. That decision does not accurately reflect the state of the law. The Court can no longer presume irreparable harm, or apply categorical rules, simply because a plaintiff has demonstrated a likelihood of prevailing on a trade secrets claim. *See eBay v. MercExchange, L.L.C.*, 547 U.S. 388, 393-94 (2006); *Winter*, 555 U.S. at 20; *Flexible Lifeline Sys., Inc. v. Precision Lift, Inc.*, 654 F.3d 989, 997-1000 (9th Cir. 2011); *Edwards Vacuum, LLC v. Hoffman Instrumentation Supply, Inc.*, 538 F.Supp.3d 1132, 1145 (D. Or. 2021); *Cutera, Inc. v. Lutronic Aesthetics, Inc.*, 444 F.Supp.3d 1198, 1208 (E.D. Cal. 2020); *V'Guara Inc. v. Dec*, 925 F.Supp.2d 1120, 1126 (D. Nev. 2013); *Credit Bureau Connection, Inc. v. Pardini*, 726 F.Supp.2d 1107, 1122-23 (E.D. Cal. 2010).

For at least the foregoing reasons, the Court is not persuaded that Move has demonstrated, with evidence, likely, and imminent, irreparable harm, even if it can demonstrate *past* misappropriation at least on Kaminsky's part. As such, the Court has no need to consider the defendants' alternative arguments that Move's alleged slow movement in seeking injunctive relief further demonstrates the absence of any imminent irreparable harm or that the information contained in the alleged trade secrets is "stale" or "outdated," and therefore not at any risk of CoStar's future use. Moreover, given the Court's conclusion on the irreparable harm element required for issuance of injunctive relief, it has no need to engage in analysis of the other three elements *Winter* and/or the Ninth Circuit's "sliding scale" test require. *See, e.g.*, *Aargon Agency, Inc. v. O'Laughlin*, 70 F.4th 1224, 1240 (9th Cir. 2023) ("Because plaintiffs fail to show any likelihood of success on any of their claims, we have no need to address any of the remaining factors."); *hiQ Labs, Inc. v. LinkedIn Corp.*, 31 F.4th 1180, 1188 (9th Cir. 2022) ("All four elements must be satisfied."). Move has not made the "clear showing" that it should be awarded the

---

[8] Even if the Court were – contrary to the reasoning expressed *infra* – potentially persuaded by such an argument, presenting a new argument in a Reply brief is not a way a movant should expect to prevail on a motion. *See, e.g.*, *Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007) ("The district court need not consider arguments raised for the first time in a reply brief.").

"extraordinary" and "drastic" remedy of a preliminary injunction.

Move's motion is denied.