JENNER & BLOCK LLP
Brent Caslin (SBN 198682)
bcaslin@jenner.com
David R. Singer (SBN 204699)
dsinger@jenner.com
Carolyn Small (SBN 304938)
csmall@jenner.com
Elizabeth Baldridge (SBN 313390)
ebaldridge@jenner.com
515 South Flower Street, Suite 3300
Los Angeles, CA  90071-2246
Telephone: +1 213 239 5100
Facsimile:  +1 213 239 5199
*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

# WESTERN DIVISION

| | |
|---|---|
| MOVE, INC., a Delaware corporation; MOVE SALES, INC., a Delaware corporation; REALSELECT, INC., a Delaware corporation, <br><br> Plaintiffs, <br><br> v. <br><br> COSTAR GROUP, INC., a Delaware corporation; JAMES KAMINSKY, an individual; and DOES 1 through 10, inclusive, <br><br> Defendants. | Case No. 2:24-cv-05607-GW-BFM <br><br> **PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS** <br><br><br> District Judge: George H. Wu <br><br> Date: October 28, 2024 <br> Time: 8:30 AM <br> Courtroom: 9D <br><br> FAC Filed: August 16, 2024 <br> Trial Date: None Set |

# TABLE OF CONTENTS

INTRODUCTION ........................................................1

FACTUAL BACKGROUND...............................................1

I.    Move Operates the Realtor.com Website Using an Industry-Leading
      Content Strategy. ...............................................1

II.   CoStar Competes With Realtor.com For Website Traffic..........................2

      A.    CoStar Hires Mr. Kaminsky To Manage Content. ...........................2

      B.    Move Discovers Mr. Kaminsky's Conduct and Investigates..............4

LEGAL STANDARD ....................................................5

ARGUMENT ...........................................................5

III.  Move's FAC States a Viable CFAA Claim...............................................5

      A.    Move's Allegations Are Sufficiently Detailed to Provide
            Defendants with Notice of Its CFAA Claim.....................................6

      B.    Move Pleads Sufficient Facts to Show Loss Under the CFAA.........10

IV.   Move States a Claim for Violation of the CDAFA.................................13

      A.    Move's CDAFA Allegations Are Sufficiently Detailed..................13

      B.    Move's CDAFA Claim Is Not Preempted. ...................................15

      C.    The FAC Pleads Sufficient Facts Establishing CDAFA
            Damages.........................................................17

V.    The FAC Pleads Sufficient Facts to Establish CoStar's Vicarious
      Liability for Mr. Kaminsky's Actions. ...........................................18

VI.   Move Should Be Granted Leave to Amend if the Court Sees any Basis
      for Dismissal.....................................................21

CONCLUSION .........................................................22

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Ahn v. Geo Grp., Inc.*,
No. 1:22-CV-00586-CDB, 2023 WL 2993303 (E.D. Cal. Apr. 18, 2023)......................................................................................................21

*Alvarez v. Hill*,
518 F.3d 1152 (9th Cir. 2008)......................................................................7

*Apple Inc. v. NSO Grp. Tech. Ltd.*
No. 21-CV-9078-JD, 2024 WL 251448, (N.D. Cal. Jan. 23, 2024)...............11

*Ashcroft v. Iqbal*,
556 U.S. 662, 678 (2009) .............................................................................5

*AtPac, Inc. v. Aptitude Sols, Inc.*,
730 F. Supp. 2d 1174 (E.D. Cal. 2010)......................................................12

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544, 570 (2007) .............................................................................5

*Biden v. Ziegler*,
No. 2:23-CV-07593-HDV (KSX), 2024 WL 3498786 (C.D. Cal. June 20, 2024) ............................................................................... 10, 17

*Cisco Systems v. Chung*,
462 F. Supp. 3d 1024 (N.D. Cal. 2020) ............................................... 18, 20

*Cottle v. Plaid Inc.*,
536 F. Supp. 3d 461 (N.D. Cal. 2021) .......................................................17

*Duste v. Chevron Prods. Co.*,
738 F. Supp. 2d 1027 (N.D. Cal. 2010) .....................................................18

*Ellis v. Worldwide Capital Holdings, Inc.*,
No. EDCV141427JGBKKX, 2014 WL 12576789 (C.D. Cal. Nov. 26, 2014)........................................................................................ 7, 8, 10

*Erhart v. BofI Holding, Inc.*,
612 F. Supp. 3d 1062 (S.D. Cal. 2020) ......................................................11

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

*Esparza v. Kohl's, Inc.*,
    No. 23-CV-01988-AJB-KSC, 2024 WL 1152732 (S.D. Cal. Mar.
    18, 2024).................................................................................. 18

*Facebook, Inc. v. Holper*,
    No. 20-CV-06023-JCS, 2022 WL 17167958 (N.D. Cal. Sept. 27,
    2022), No. C 20-06023 WHA, 2022 WL 17169836 (N.D. Cal.
    Nov. 22, 2022)......................................................................... 10

*Fayer v. Vaughn*,
    649 F.3d 1061 (9th Cir. 2011)...................................................5

*Fidlar Techs. v. LPS Real Est. Data Sols., Inc.*,
    82 F. Supp. 3d 844 (C.D. Ill. 2015)............................................7

*Frasco v. Flo Health, Inc.*,
    No. 21-CV-00757-JD, 2024 WL 4280933 (N.D. Cal. Sept. 23,
    2024)..............................................................................13, 16, 18

*Fraser v. Mint Mobile LLC*,
    No. 22-CV-00138, 2022 WL 2391000 (N.D. Cal. July 1, 2022).................... 12

*Heieck v. Fed. Signal Corp.*,
    No. SACV1802118AGKESX, 2019 WL 6873869 (C.D. Cal. Nov.
    4, 2019) .................................................................................. 15

*hiQ Labs, Inc. v. LinkedIn Corp.*,
    No. 17-CV-03301-EMC, 2021 WL 1531172 (N.D. Cal. Apr. 19,
    2021)....................................................................................... 15

*JEB Group, Inc. v. San Jose III*,
    No. CV 19-04230-CJC(AGRX), 2020 WL 2790012 (C.D. Cal.
    Mar. 31, 2020)......................................................................... 15

*Johnson v. City of Shelby, Miss.*,
    574 U.S. 10 (2014) (per curiam)..................................... 7, 9, 10

*Language Line Servs., Inc. v. Language Servs. Assocs., Inc.*,
    944 F. Supp. 2d 775 (N.D. Cal. 2013)...................................... 18

*Lopez v. Smith*,
    203 F.3d 1122 (9th Cir. 2000) (*en banc*)................................... 20

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

*LVRC Holdings LLC v. Brekka*,
   581 F.3d 1127 (9th Cir. 2009).............................................................5

*Manzarek v. St. Paul Fire & Marine Ins. Co.*,
   519 F.3d 1025 (9th Cir. 2008)........................................................ 5, 21

*Meta Platforms, Inc. v. BrandTotal Ltd.*,
   605 F. Supp. 3d 1218 (N.D. Cal. 2022) ..................................... 12

*Monolithic Power Sys., Inc. v. Dong*,
   No. 20-CV-06752-JSW, 2021 WL 4522291 (N.D. Cal. June 22,
   2021)...........................................................................................8

*Moss v. U.S. Secret Serv.*,
   572 F.3d 962, 972 (9th Cir. 2009)........................................... 21

*Multiven v. Cisco*,
   725 F. Supp. 2d 887 (N.D. Cal. 2010) ................................... 6, 12

*NetApp, Inc. v. Nimble Storage, Inc.*,
   41 F. Supp. 3d 816 (N.D. Cal. 2014)....................................... 6

*NetApp, Inc. v. Nimble Storage, Inc.*,
   No. 5:13-CV-05058-LHKHRL, 2015 WL 400251 (N.D. Cal. Jan.
   29, 2015)....................................................................................12

*NovelPoster v. Javitch Canfield Grp.*,
   140 F. Supp. 3d 954 (N.D. Cal. 2014)..................................... 17

*Pasternak v. Cal. Nat'l Bank*,
   No. CV 04-09596, 2005 WL 8154964 (C.D. Cal. Mar. 16, 2005) ................ 19

*People v. Valencia*,
   3 Cal. 5th 347 (2017)................................................................16

*R.R. Donnelley & Sons Company v. Pappas*,
   No. 2:21-cv-00753, 2021 WL 3488502 (E.D. Cal. 2021)............................ 16

*Rebecca Bamberger Works, LLC v. Bamberger*,
   No. 24-CV-706 JLS (DDL), 2024 WL 2805323 (S.D. Cal. May 31,
   2024).........................................................................................17

*Regents of the Univ. of Cal. v. Aisen*,
   No. 15-CV-1766-BEN (BLM), 2016 WL 4097072 (S.D. Cal. Apr.
   18, 2016).............................................................................. 15, 16

iv

*Rizzo v. Insurance Co. of State of Pennsylvania*,
  969 F. Supp. 2d 1180 (C.D. Cal. 2013)......................................................19

*Rojo v. Kia Motors Corp.*,
  No. EDCV 19-2171-GW-SHKX, 2020 WL 2568301 (C.D. Cal.
  Mar. 27, 2020)..........................................................................................21

*Rubic v. Wells Fargo, N.A.*,
  No. 3:13-CV-01982-AC, 2014 WL 7877291 (D. Or. Nov. 24,
  2014), repo*rt and recommendation adopted as modified sub nom.
  Rubic v. Wells Fargo, Nat'l Ass'n.*, No. 3:13-CV-01982-AC, 2015
  WL 632235 (D. Or. Feb. 13, 2015)...........................................................7

*Sagana v. Tenorio*,
  384 F.3d 731 (9th Cir. 2004).................................................................7, 9

*SBM Site Servs., LLC v. Garrett*,
  No. 10–cv–00385, 2012 WL 628619 (D. Colo. Feb. 27, 2012).....................18

*Self Directed Placement Corp. v. Control Data Corp.*,
  908 F.2d 462 (9th Cir. 1990)....................................................................7

*Shurgard Storage Centers, Inc. v. Safeguard Self-Storage*, 119 F.
  Supp. 2d 1121 (W.D. Wash. 2000) ....................................................11, 13

*SolarCity Corp. v. Pure Solar Co.*,
  No. CV1601814BRODTBX, 2016 WL 11019989 (C.D. Cal. Dec.
  27, 2016).................................................................................10, 11, 18, 19

*Solid 21, Inc. v. Breitling USA, Inc.*,
  512 Fed. Appx. 685 (9th Cir. 2013).........................................................19

*Song v. Drenberg*,
  No. 18-CV-06283-LHK, 2019 WL 1998944 (N.D. Cal. May 6,
  2019)....................................................................................................9, 10

*SunPower Corp. v. SolarCity Corp.*,
  No. 12-CV-00694-LHK, 2012 WL 6160472 (N.D. Cal. Dec. 11,
  2012)...................................................................................................20, 21

*Synopsys, Inc. v. Ubiquiti Networks, Inc.*,
  313 F. Supp. 3d 1056 (N.D. Cal. 2018) ...................................................15

*Tan v. Superior Court of San Mateo Cnty.*,
    76 Cal. App. 5th 130 (2022) ....................................................... 16

*Theofel v. Farey-Jones*,
    359 F.3d 1066, 1078 n. 5 (9th Cir. 2004) ....................................7

*Therapeutic Research Faculty v. NBTY, Inc.*,
    488 F. Supp. 2d 991 (E.D. Cal. 2007) ................................. 11, 13

*United States v. Christensen*,
    828 F.3d 763 (9th Cir. 2016) ..................................................... 15

*United States v. Van Buren*,
    593 U.S. 374 (2021) ................................................................... 12

*X Corp. v. Ctr. For Countering Digital Hate*,
    No. 23-CV-03836-CRB, 2024 WL 1246318 (N.D. Cal. Mar. 25, 2024) ......................................................................................... 12

**Statutes**

18 U.S.C. § 1030 ...............................................................*passim*

18 U.S.C. § 1032(a)(2)(C) .......................................................... 5

Cal. Pen. Code § 502(e)(1) ....................................................... 16

Cal. Penal Code § 502(c) ..............................................13, 14, 15

**Other Authorities**

Federal Rule of Civil Procedure 8(a)(2) ..................................... 6

Federal Rule of Civil Procedure 9(b) ......................................... 6

Federal Rule of Civil Procedure 12(b)(6) ................................. 19

Federal Rule of Civil Procedure 15............................................ 20

PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

# INTRODUCTION

Move and CoStar operate competing online residential real estate listing platforms. They compete for website traffic, and they each use various types of content to attract users. James Kaminsky was a content creator at Move until January 2024. In February, CoStar hired Mr. Kaminsky to lead a team of competing content creators. Before starting his job at Costar, and continuing while he was CoStar's employee, Mr. Kaminsky deceptively, and repeatedly, accessed Move's computers to obtain confidential and trade secret documents and information. Additionally, after Move terminated his employment but just before Mr. Kaminsky received his offer to work for CoStar, he deleted hundreds of work-related files from a Move computer and wiped its browser history.

Mr. Kaminsky's attack on Move's protected computer systems, both as an individual and a CoStar employee, caused significant harm—and certainly more than $5,000 in damages. Move spent substantial time and resources investigating the nature and scope of the breach, taking steps to secure its computer systems and engaging a forensic expert to assist. Move and its expert were ultimately unable to recover the trove of electronic files Mr. Kaminsky destroyed. Based on these facts, Move's First Amended Complaint ("FAC") easily states viable claims for violations of the Computer Fraud and Abuse Act ("CFAA") and the Comprehensive Computer Data Access and Fraud Act ("CDAFA").

The Court should deny Defendants' motion to dismiss.

# FACTUAL BACKGROUND

## I.    Move Operates the Realtor.com Website Using an Industry-Leading Content Strategy.

Move operates the residential real estate listings service located at Realtor.com. FAC ¶¶ 2, 23–24. Part of Move's strategy, which drives significant site traffic, involves creating and offering compelling content, including its popular "News & Insights" platform. *Id.* ¶¶ 5, 27.

Move's content creation team works with other departments within the company to harness "years of business know-how and understanding of what consumers and third-party sites are interested in" to advance its strategy. *Id.* at ¶ 30. Move maintains files containing business information, strategy, tactics, metrics and other data describing how Move conceives, curates, creates, distributes, and monetizes its website content across the internet. *Id.* ¶¶ 41–46. These files also contain strategies and tactics for search engine optimization and leveraging the power of collaboration among Move's News & Insights content creation team, Economics teams, and Communications teams. *Id.* ¶¶ 40-42, 45–46. In short, Move's documents contain a "detailed blueprint of confidential and proprietary" information. *Id.* ¶¶ 40–50.

## II. CoStar Competes with Realtor.com For Website Traffic.

CoStar acquired Homes.com in April 2021 and is on an aggressive mission to grow traffic to its site. *Id.* ¶¶ 4, 33–34. CoStar is investing over a billion dollars to drive user traffic, including an investment in content. *Id.* ¶ 35. Among other things, CoStar creates content and articles about properties, cities, neighborhoods, and other "insights" on a variety of topics. *Id.* ¶¶ 36–37, 38, 56.

### A. CoStar Hires Mr. Kaminsky To Manage Content.

Mr. Kaminsky previously oversaw content creation for Realtor.com and led its News & Insights team.[1] *Id.* ¶¶ 6, 17. He regularly accessed Move files containing valuable information about strategy, formula, and tactics for creating, curating, distributing, and leveraging content to maximize website traffic—work that is the culmination of decades of experience. *Id.* ¶¶ 2, 40, 49. Mr. Kaminsky signed a confidentiality agreement providing in part that Mr. Kaminsky would "not take with

---

[1] CoStar's characterization of Move's News & Insights content as Move's "news division" minimizes the breadth of content Move creates and distributes online. *See* CoStar Br. in Supp. Mot. to Dismiss ("CoStar Br."), ECF No. 96 at 3. Move's content strategy includes far more than "news" stories.

[him] any documents or materials or copies thereof" containing Move's confidential or trade secret information. *Id.* ¶ 52.

On or about January 10, 2024, Move notified Mr. Kaminsky his last working day with the company would be January 12, 2024 and his employment would end on January 19, 2024. *Id.* ¶ 53. Mr. Kaminsky signed a separation agreement that provided to him a severance package (the "Separation Agreement"). *Id.* ¶¶ 54–55. He "represent[ed] and warrant[ed]" in writing that he had returned or would return to Move as soon as reasonably practicable, "all tangible property or intangible property or data" belonging to Move "of any type whatsoever." *Id.* ¶ 55. Mr. Kaminsky further promised that he would "continue to be bound by the terms of the Confidentiality Agreement" and confirmed that he had "delivered to [Move] all documents and data of any nature" containing or pertaining to confidential or trade secret information, and that he had "not retained any such documents or data or any reproduction thereof." *Id.*

In or before March 2024, Mr. Kaminsky began working for Move's competitor CoStar as Editor for Homes.com. *Id.* ¶ 56. In violation of his Confidentiality Agreement, Mr. Kaminsky did not notify Move of his new employment at CoStar. *Id.* ¶¶ 52, 56. CoStar hired Mr. Kaminsky to "oversee[] the development and execution of a dynamic new category of luxury housing coverage" for Homes.com, and his role included "[m]anaging and editing a team of 10 full-time architecture and style writers to create unique reported content." *Id.* ¶ 56. CoStar's self-serving characterizations of Mr. Kaminsky as a "relatively junior employee," *id.* ¶ 38, belie Mr. Kaminsky's own descriptions of his role as a "Content Strategist," "Senior Editorial Director," "Team Leader" and "Brand Builder" on his LinkedIn work profile.[2] *Id.* ¶ 56.

---

[2] CoStar relies on out-of-context quotes from Move's FAC to disingenuously assert that Plaintiffs alleged Mr. Kaminsky was a "relatively junior employee." CoStar Br. at 3:16. But the quote is used to illustrate *CoStar's* series of inconsistent statements

**B.    Move Discovers Mr. Kaminsky's Conduct and Investigates.**

In June 2024—while Mr. Kaminsky was employed as a content creator for CoStar—Move discovered Mr. Kaminsky had exfiltrated Move's confidential and trade secret material. *Id.* ¶ 57.  It turns out that, during his last days of employment at Move, Mr. Kaminsky granted access to his Gmail address for a large number of Move electronic files, including documents containing trade secret material. *Id.* ¶ 59.  In addition, on January 12, 2024, Mr. Kaminsky sent to his Gmail employment summaries for members of Move's News & Insights team.  *Id.* ¶ 57.

On February 19, 2024—after his employment with Move, and his right to access its computers, ended—Mr. Kaminsky logged into his password-protected Move-issued laptop and deleted nearly a thousand electronic files and his entire browsing history. *Id.* ¶ 58; *see also id.* ¶ 50.  The files Mr. Kaminsky deleted "appear from their file names to be business files related to plans, strategy, and employees of Move." *Id.* ¶ 58.

Mr. Kaminsky admits he accessed and viewed Move documents stored on Move's cloud-based platform numerous times in the months to follow, including while he was employed as a content creator at CoStar. *Id.* ¶¶ 60, 84.  Access logs indicate Mr. Kaminsky accessed Move's documents no less than *37 times* after he began working for CoStar. *Id.* ¶ 60.

On June 2, 2024, a Move employee discovered Mr. Kaminsky in one of Move's confidential documents. *Id.* ¶¶ 9, 60.  Move cut off his unauthorized access and engaged a forensics expert to investigate. *See*, *e.g.*, *id.* ¶¶ 9, 57–58, 60.  The investigation addressed Mr. Kaminsky's deletion of electronic data and involved determining which documents Mr. Kaminsky accessed, how many times he accessed them, and what actions he took when accessing them. *Id.* ¶¶ 58, 60.

---

about the precise nature of Mr. Kaminsky's role at CoStar.  *See* FAC ¶ 38.  Indeed, Move goes on to allege that CoStar's own General Counsel recently described Mr. Kaminsky as a mid-level manager.  *Id.*

Mr. Kaminsky's deletion of electronic files from Move's computer and his and CoStar's repeated unauthorized access to Move's electronic documents substantially damaged Move in excess of $5,000. *Id.* ¶ 86.

## LEGAL STANDARD

"A motion to dismiss will only be granted if the complaint fails to allege 'enough facts to state a claim to relief that is plausible on its face.'" *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).   A claim is facially plausible when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).   The plausibility standard simply "asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft*, 556 U.S. at 678.   In reviewing a motion to dismiss, a court is confined to the "allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1030–31 (9th Cir. 2008).   A court must accept the "factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Id.*

## ARGUMENT

### III.   Move's FAC States a Viable CFAA Claim.

Move's allegations easily meet the requirements to plead a claim for violation of the CFAA, 18 U.S.C. § 1030.   The CFAA is a computer system protection statute designed in part to target individuals like Mr. Kaminsky who "access[] computers to steal information." *See LVRC Holdings LLC v. Brekka*, 581 F.3d 1127, 1130 (9th Cir. 2009).   The statute prohibits various conduct, including:

- Intentionally accessing a computer without authorization or exceeding authorized access, and thereby obtaining information from any protected computer, 18 U.S.C. § 1032(a)(2)(C);

- Knowingly and with intent to defraud, accessing a protected computer without authorization, *id.* § 1030(a)(4); and

- Intentionally accessing a protected computer without authorization, and as a result of such conduct, recklessly causing damage, or causing damage and loss, *id.* §§ 1030(a)(5)(B), (C).

The statute creates a private right of action for persons injured by such conduct if the conduct causes loss "aggregating at least $5,000 in value" during a one-year period. *Id.* § 1030(g).

The FAC's detailed factual allegations are more than sufficient to plausibly state a CFAA claim. The allegations provide Defendants with ample notice of the basis of the claim, and adequately plead damages and loss.

**A.    Move's Allegations Are Sufficiently Detailed to Provide Defendants with Notice of Its CFAA Claim.**

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief."[3] Fed. R. Civ. P. 8(a)(2). "Courts have recognized that the main purpose of the complaint is to provide notice to the defendant of what plaintiff's claim is and the grounds upon which the claim rests." *Self Directed Placement Corp. v. Control Data Corp.*, 908 F.2d 462, 466 (9th Cir. 1990).

In the Ninth Circuit, a plaintiff need not plead specific legal theories or name

---

[3] Rule 9(b) does not govern the pleading standard here, even as to Move's Section 1030(a)(4) claim against Defendants. "For purposes of the CFAA, [t]he term 'defraud' . . . simply means wrongdoing and does not require proof of common law fraud." *Multiven v. Cisco*, 725 F. Supp. 2d 887, 892 (N.D. Cal. 2010). As CoStar's own authority acknowledges, CFAA claims under Section 1030(a)(4) are required to "be pleaded with specificity only when fraudulent conduct is specifically alleged as the basis for the wrongdoing." *NetApp, Inc. v. Nimble Storage, Inc.*, 41 F. Supp. 3d 816, 834 (N.D. Cal. 2014). In any event, Mr. Kaminsky's fraudulent conduct is pled with specificity. FAC ¶¶ 101-106.

specific statutes in a complaint "so long as the other side receives notice as to what is at issue in the case." *See Sagana v. Tenorio*, 384 F.3d 731, 737 (9th Cir. 2004) ("We long ago rejected the argument that a specific statute must be named, describing it as an attempt to evoke wholly out-moded technical pleading rules." (internal quotations omitted)); *see also Alvarez v. Hill*, 518 F.3d 1152, 1157 (9th Cir. 2008) ("A complaint need not identify the statutory or constitutional source of the claim raised in order to survive a motion to dismiss").   The "basic objective of the [Federal Rules of Civil Procedure] is to avoid civil cases turning on technicalities," and the requisite standard is about the "*factual* allegations a complaint must contain to survive a motion to dismiss" rather than a failure to invoke a particular statutory provision.  *See Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 12 (2014) (per curiam) (emphasis in original); *see also Rubic v. Wells Fargo, N.A.*, No. 3:13-CV-01982-AC, 2014 WL 7877291, at *7 (D. Or. Nov. 24, 2014), repo*rt and recommendation adopted as modified sub nom. Rubic v. Wells Fargo, Nat'l Ass'n.*, No. 3:13-CV-01982-AC, 2015 WL 632235 (D. Or. Feb. 13, 2015) (relying on *Johnson* to reject an argument that a claim should be dismissed because it did not allege which subpart of a statute was violated).

District courts have declined to dismiss a complaint for failure to plead subsections of the CFAA, or have otherwise reached the merits of a CFAA claim, when the factual allegations in the complaint are sufficient to make clear which subsections of the statute are at issue. *See Ellis v. Worldwide Capital Holdings, Inc.*, No. EDCV141427JGBKKX, 2014 WL 12576789, at *4 (C.D. Cal. Nov. 26, 2014); *Fidlar Techs. v. LPS Real Est. Data Sols., Inc.*, 82 F. Supp.3d 844 (C.D. Ill. 2015) (*"[A] party does not forfeit claims under various subsections of § 1030 simply by not pleading those subsections explicitly.*" (emphasis added) (citing *Theofel v. Farey–Jones*, 359 F.3d 1066, 1078 n. 5 (9th Cir. 2004)), *aff'd*, 810 F.3d 1075 (7th Cir. 2016); *see also Monolithic Power Sys., Inc. v. Dong*, No. 20-CV-06752-JSW, 2021 WL 4522291, at *4 n.5 (N.D. Cal. June 22, 2021) (*"[Plaintiff] did not specif[y]*

7

*which subsections of 1030(a)(2) Defendants allegedly violated.    From the facts alleged it is clear that subsections (A) and (B) are not applicable."*).    In *Ellis*, for instance, the court recognized that the counterclaimants provided "fairly detailed factual allegations concerning [counterclaim defendant's] wrongdoing" including allegations that the counterclaim defendant used his computer access to read and copy private emails, failed to return physical and intellectual property after the end of a business relationship, and placed pirated software on counterclaimant's website. 2014 WL 12576789 at *2, 4.    Because "the factual allegations suggest[ed] rather clearly the subclause at issue," the court held that the pleading did not need to state the precise subsection of the statute.    *Id.* at *4.

Like the counterclaimants in *Ellis*, Move alleged sufficient facts to put Defendants on notice of Move's CFAA claim.    It is evident from the FAC that the provisions listed above are the bases of Move's claim.    *See* Section III, *supra* (listing 18 U.S.C. §§ 1030(a)(2)(C), 1030(a)(4), 1030(a)(5)(B)–(C), which concern obtaining information from, or accessing, a protected computer without authorization).    Move alleged ample facts showing Mr. Kaminsky intentionally accessed protected computers—i.e., a company-issued laptop and Move's internal documents stored on protected computer systems—after his authorization ended. FAC ¶¶ 11, 57–60, 83–85.    Move alleged that Mr. Kaminsky deleted information and obtained valuable business- and trade-secret information as a result of this unauthorized access. *Id.* ¶¶ 9, 40–49, 58–60.    Move alleged that Mr. Kaminsky acted with malice, oppression, fraud, and the intent to deceive.    *Id.* ¶ 106.    And Move alleged damages and loss exceeding $5,000.    *Id.* ¶ 86.    Defendants have notice of Move's CFAA claim.

Defendants' supposed confusion as to which subsections of the CFAA Move is invoking is implausible.    The other subsections of the statute plainly are not at issue.    They involve access to information that the government has determined requires protection, is contained in a financial record of a financial institution, or is

8

from a U.S. department or agency, 18 U.S.C. §§ 1030(a)(1), (a)(2)(A), (B); or they require proof that the defendant accessed a government computer; caused the transmission of a program, information, code, or command; trafficked in a password; or intended to extort someone, *id.* § 1030(a)(3), (5)(A), (6), (7). There are no facts alleged in the FAC concerning the conduct referenced in those provisions that could lead to genuine confusion as to whether Move is asserting those claims.

The Court should decline to follow *Song v. Drenberg*, No. 18-CV-06283-LHK, 2019 WL 1998944 (N.D. Cal. May 6, 2019), the unpublished district court decision CoStar cites that dismissed a complaint without prejudice for failing to identify the applicable subsection of the CFAA.[4]  *See* CoStar Br. at 7–8.  First, as *Song* recognized, the governing rule is that defendants must be "on sufficient notice of the particular misconduct alleged to permit [defendants] to prepare a defense to [p]laintiffs' claims." *Song*, 2019 WL 1998944 at *6.  To the extent *Song* imposed a categorical requirement that plaintiffs identify subsections of a statute in a complaint, *Song* conflicts with Supreme Court and Ninth Circuit precedent.  *See Johnson*, 574 U.S. at 12; *Sagana*, 384 F.3d at 737.  Second, the plaintiffs in *Song* acknowledged they failed to allege an essential element of one of the two CFAA subsections they identified as applicable. *See Song*, 2019 WL 1998944, at *5.  Here, however, the FAC alleges all the essential elements of the subsections identified above.  *See* Section III, *supra.*  Moreover, *Song* involved numerous other substantive and procedural defects with plaintiffs' pleadings and litigation conduct, none of which are present in this case.  *See Song*, 2019 WL 1998944, at *1–3.

Because the allegations in the FAC provide notice of the CFAA subsections at issue, Move need not specifically invoke a particular subsection of the CFAA to state a claim.  *See Johnson*, 574 U.S. at 12; *Ellis*, 2014 WL 12576789, at *4.

---

[4] CoStar's other authorities are similarly unpersuasive as they are contrary to established precedent holding that claims should not be dismissed on mere technicalities, and moreover, do not concern the CFAA.  *See* CoStar Br. at 7–8 (citing cases dealing with Cal. Penal Code § 502 and 42 U.S.C. § 1985).

**B.    Move Pleads Sufficient Facts to Show Loss Under the CFAA.**

To bring a civil CFAA claim, a plaintiff must allege the CFAA violation involved one of the factors listed in Section 1030(e)(4)(A)(i), which includes "loss to 1 or more persons during any 1–year period . . . aggregating at least $5,000 in value."[5] 18 U.S.C. § 1030(c)(4)(A)(i), 1030(g). Under Section 1030(5)(A) and (B), but not Sections 1030(a)(2)(C) or 1030(a)(4), the plaintiff must also show "damage."

"Loss" is defined as "any reasonable cost" to a victim, including "the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense." *Id.* § 1030(e)(11). *See Facebook, Inc. v. Holper*, No. 20-CV-06023-JCS, 2022 WL 17167958, at *8 (N.D. Cal. Sept. 27, 2022), *report and recommendation adopted as modified*, No. C 20-06023 WHA, 2022 WL 17169836 (N.D. Cal. Nov. 22, 2022) (holding that the plaintiff adequately pleaded loss when it alleged that loss of customer goodwill and cost of efforts to investigate and stop the defendant's conduct met the CFAA's $5,000 damages threshold); *see also Biden v. Ziegler*, No. 2:23-CV-07593-HDV (KSX), 2024 WL 3498786, at *9 (C.D. Cal. June 20, 2024) (holding plaintiff "specifically alleged" loss by asserting he suffered "direct costs, incurred during any one-year period, of investigating and responding to [d]efendants['] violations of the CFAA in excess of $5,000 in value"). "Damage" is defined as "any impairment to the integrity or availability of data, a program, a system, or information." 18 U.S.C. § 1030(e)(8). *See Erhart v. BofI Holding, Inc.*, 612 F. Supp. 3d 1062, 1130 (S.D. Cal. 2020) (evidence of file deletion created "a genuine issue for trial" as to whether the plaintiff suffered damage). "[M]isappropriation of trade secrets may constitute damage under the CFAA." *SolarCity Corp. v. Pure Solar Co.*, No. CV1601814BRODTBX, 2016 WL

---

[5] The other four factors listed in Section 1030(c)(4)(A)(i) are clearly inapplicable to this case as they involve medical examination or treatment, physical injury, threats to public health or safety, or U.S. government computers.

11019989, at *8 (C.D. Cal. Dec. 27, 2016). The *SolarCity* court found damage where data was impaired by virtue of the defendant's access to plaintiff's confidential customer information. *Id. See also Shurgard Storage Centers, Inc. v. Safeguard Self-Storage*, 119 F. Supp. 2d 1121, 1126 (W.D. Wash. 2000) (damage under the CFAA can include "alleged access and disclosure of trade secrets"); *Therapeutic Research Faculty v. NBTY, Inc.*, 488 F. Supp. 2d 991, 996 (E.D. Cal. 2007) (holding unauthorized access to a document was damage within the meaning of the CFAA "even though 'no data was physically changed or erased'").

Move has sufficiently alleged loss and damage. First, the FAC alleges Mr. Kaminsky's deletion of electronic files from Move's laptop, and Defendants' repeated unauthorized access to Move's electronic documents stored on a protected computer system, damaged Move in an amount far exceeding $5,000. FAC ¶ 86. The FAC also contains factual support for Move's loss as a result of Defendants' CFAA violation. The allegations describe Move's findings after expending significant resources, including retaining a forensics expert, to investigate the scope of Mr. Kaminsky's wrongdoing. *See, e.g., id.* ¶¶ 57–58, 60 (describing the discovery that Mr. Kaminsky exfiltrated documents and created ongoing access to internal electronic files and file deletion).

CoStar's argument that harms arising from assessments of damages cannot establish damage or loss is contrary to both the statute and precedent. The CFAA expressly defines "loss" to include "the cost of responding to an offense" and "conducting a damage assessment." 18 U.S.C. § 1030(e)(11). Moreover, in *Facebook v. Power Ventures*, the Ninth Circuit held that the plaintiff established loss when it was "undisputed that . . . employees spent many hours, totaling more than $5,000 in costs, analyzing, investigating, and responding to [the defendant's] actions." 844 F.3d 1058, 1066 (9th Cir. 2016). Similarly, in *Apple Inc. v. NSO Group Technologies Ltd.*, the court found loss where the plaintiff was forced "to incur costs and to devote personnel, resources, and time to identifying and

investigating [the defendant's] attacks and exploits, . . . communicating with [plaintiff's] personnel and users regarding such attacks, . . . and assessing and responding to legal exposure." No. 21-CV-9078-JD, 2024 WL 251448, at *4 (N.D. Cal. Jan. 23, 2024). And the court in *Multiven*, 725 F. Supp. 2d at 895, expressly held that "[c]osts associated with investigating intrusions into a computer network and taking subsequent remedial measures ***are losses within the meaning of the statute***."

Contrary to CoStar's suggestion, *United States v. Van Buren*, 593 U.S. 374 (2021), did not foreclose investigative costs as a recoverable "loss" within the meaning of the CFAA. *Van Buren* did not even address that question. Rather, it discussed whether the CFAA's "exceeds authorized access" clause applies to "those who misuse access that they otherwise have." *Id.* at 381. In holding the CFAA does not apply in that circumstance, *Van Buren* reasoned that the focus on technological harms in the definitions of "damage" and "loss" showed that the statutory scheme was "aimed at preventing the typical consequences of hacking," not on "remediating misuse of sensitive information that employees may permissibly access using their computers." *Id.* at 391-92. A district court in this Circuit interpreting *Van Buren* reached the same conclusion. *See Meta Platforms, Inc. v. BrandTotal Ltd.*, 605 F. Supp. 3d 1218, 1265 (N.D. Cal. 2022) ("The [c]ourt declines to construe *Van Buren* and *hiQ* as foreclosing a loss based on [plaintiff's] investigative costs.").

CoStar's reliance on *Fraser v. Mint Mobile LLC*, No. 22-CV-00138, 2022 WL 2391000, at *2 (N.D. Cal. July 1, 2022) is also misplaced. There, the court dismissed the plaintiff's CFAA claim because investigative costs were not incurred to assess the breached system, but rather were incurred to determine how stolen assets were used. *Id.*[6] Here, unlike *Fraser*, investigative costs were incurred to assess the

---

[6] CoStar also cites to *X Corp. v. Ctr. For Countering Digital Hate*, No. 23-CV-03836-CRB, 2024 WL 1246318, at *24 (N.D. Cal. Mar. 25, 2024) for the proposition that attorney's fees are not cognizable losses under the CFAA. CoStar Br. at 9. The FAC does not allege any loss based on attorneys' fees.

1    breached system.  *See* FAC ¶¶ 9, 57–58, 60.

2         Move also adequately alleged damages.  CoStar's own authority recognizes

3    that deletion of information constitutes damage under the CFAA.  *See AtPac, Inc. v.*

4    *Aptitude Sols, Inc.*, 730 F. Supp. 2d 1174, 1185 (E.D. Cal. 2010) (CFAA restricts

5    civil actions "to the traditional computer 'hacker' scenario—where the hacker

6    *deletes information*, infects computers, or crashes networks" (emphasis added)).  *Cf.*

7    *NetApp, Inc. v. Nimble Storage, Inc.*, No. 5:13-CV-05058-LHKHRL, 2015 WL

8    400251, at *15 (N.D. Cal. Jan. 29, 2015) (no damages when there was "no allegation

9    that [defendant] deleted information, or otherwise altered or modified the

10   information he accessed").  The FAC alleges Mr. Kaminsky deleted "a massive

11   volume of files and data" from Move's laptop, totaling nearly a thousand files.  FAC

12   ¶ 58; *see also id.* ¶¶ 8, 83, 86, 91–92, 98.  Additionally, some courts recognize that

13   the fact of defendant accessing protected data alone *is* damage under the CFAA.  *See*

14   *Shurgard Storage Centers, Inc.*, 119 F. Supp. 2d at 1126; *Therapeutic Research*

15   *Faculty v. NBTY, Inc.*, 488 F. Supp. 2d at 996.  The FAC sufficiently alleges both

16   loss and damages.

17   **IV.   Move States a Claim for Violation of the CDAFA.**

18        **A.   Move's CDAFA Allegations Are Sufficiently Detailed.**

19        Move also alleges sufficient facts to put Defendants on notice of Move's

20   CDAFA claims.  "Like the CFAA, [the] CDAFA provides a private cause of action

21   against any person who '[k]knowingly accesses and without permission uses or

22   causes to be used computer services' or 'accesses or causes to be accessed any

23   computer, computer system, or computer network.'"  *Frasco v. Flo Health, Inc.*, No.

24   21-CV-00757-JD, 2024 WL 4280933 (N.D. Cal. Sept. 23, 2024) (quoting Cal. Penal

25   Code §§ 502(c)(3), (7) & (e)(1)).  The CDAFA prohibits a range of conduct, similar

26   to the CFAA, including when a party:

27        • "Knowingly accesses and without permission alters, damages, deletes,

28             destroys, or otherwise uses any data, computer, computer system, or

13

computer network in order to either (A) devise or execute any scheme or artifice to defraud, deceive, or extort, or (B) wrongfully control or obtain money, property, or data," Cal. Penal Code § 502(c)(1);

- "Knowingly accesses and without permission takes, copies, or makes use of any data from a computer, computer system, or computer network, or takes or copies any supporting documentation, whether existing or residing internal or external to a computer, computer system, or computer network," *Id.* § 502(c)(2);

- "Knowingly and without permission used or caused to be used computer services," *Id.* § 502(c)(3);

- "Knowingly accesses and without permission adds, alters, damages, deletes, or destroys any data, computer software, or computer programs which reside or exist internal or external to a computer, computer system, or computer network," *Id.* § 502(c)(4); and

- "Knowingly and without permission accesses or causes to be accessed any computer, computer system, or computer network." *Id.* § 502(c)(7).

Move's FAC alleges sufficient facts about Mr. Kaminsky's unauthorized access of Move's data and computers, including that he knowingly intruded into Move's systems and obtained valuable competitive information regarding Move's business to support its CDAFA claims premised on these sections. *See* Section I.B, *supra.*

Defendants again cannot evade liability by asserting they do not know which of the CDAFA provisions are at issue. Like the clearly inapplicable CFAA provisions, the CDAFA provisions not outlined above are clearly inapplicable as they concern introducing a computer contaminant, using an internet domain name without permission, disrupting computer services, and assisting another party with accessing a computer. *See* Cal. Penal Code § 502(c). CoStar's reliance on one case

14

dismissing a CDAFA claim for failure to specifically cite to a particular subdivision is distinguishable. *See* CoStar Br. at 16. In *In re Carrier IQ, Inc.*, the plaintiffs made conclusory allegations that merely mirrored the statutory language, with no factual support. 78 F. Supp. 3d 1051, 1097–98 (N.D. Cal. 2015). The court found those barebones allegations insufficient to identify the scope of the conduct at issue (but allowed an amendment identifying the subsection at issue). *Id.* Here, Move's factual allegations are robust, alleging specific steps taken in violation of the statute. *See* FAC ¶¶ 89-91.

Nor can CoStar write a "use" requirement into the CDAFA to avoid liability. By its own terms, Section 502(c)(7) states that liability results when a person "[k]nowingly and without permission ***accesses*** or causes to be ***accessed*** any computer, computer system, or computer network." Cal. Penal Code § 502(c)(7) (emphasis added). Move need not allege direct evidence of "use" to support its claim; Mr. Kaminsky's knowing access without permission is sufficient under Section 502(c)(7).[7] *See hiQ Labs, Inc. v. LinkedIn Corp.*, No. 17-CV-03301-EMC, 2021 WL 1531172, at *5 (N.D. Cal. Apr. 19, 2021) ("Section 502(c)(7) bears similarity to the CFAA, focusing on unauthorized access.").

## B. Move's CDAFA Claim Is Not Preempted.

Move's CDAFA claim is not preempted by the California Uniform Trade Secrets Act ("CUTSA"). CUTSA "supersedes *other civil remedies* where the claim for relief is based on the misappropriation of confidential or proprietary information." *Regents of the Univ. of Cal. v. Aisen*, No. 15-CV-1766-BEN (BLM), 2016 WL 4097072, at *5 (S.D. Cal. Apr. 18, 2016) (emphasis added). However, Move's CDAFA claim derives from a statutory remedy, not a common law civil remedy. California district courts have expressly recognized that, because a CDAFA

---

[7] CoStar's reliance on *United States v. Christensen*, 828 F.3d 763, 789 (9th Cir. 2016), is misplaced. The Ninth Circuit's discussion in that case focused on Sections 502(c)(1) and 502(c)(2). *See hiQ Labs, Inc.*, 2021 WL 1531172, at *5 (stating that Sections "502(c)(1) and (2) are different from the CFAA (at least as interpreted by the Ninth Circuit), focusing instead on unauthorized use" and citing *Christensen*).

claim "is based upon a statutory violation, not common law, it is not preempted."
*JEB Group, Inc. v. San Jose III*, No. CV 19-04230-CJC(AGRX), 2020 WL 2790012,
at \*4 (C.D. Cal. Mar. 31, 2020); *Heieck v. Fed. Signal Corp.*, No.
SACV1802118AGKESX, 2019 WL 6873869, at \*4 (C.D. Cal. Nov. 4, 2019)
(CDAFA claim "isn't a 'common law tort claim'" preempted by CUTSA); *see also
Synopsys, Inc. v. Ubiquiti Networks, Inc.*, 313 F. Supp. 3d 1056, 1074 (N.D. Cal.
2018) (observing that case law did not "explicitly address whether CUTSA would
preempt a *statutory* claim" and finding claim was not preempted) (emphasis in
original).

    In addition, the California Supreme Court has held that the statutory landscape
as a whole should be read in harmony when possible. *See People v. Valencia*, 3 Cal.
5th 347, 357-358 (2017) ("statutes . . . must be harmonized, both internally and with
each other, to the extent possible"). There is also a strong presumption against
interpreting one statute to repeal by implication another. *See, e.g., Tan v. Superior
Court of San Mateo Cnty.*, 76 Cal. App. 5th 130, 138 (2022) (presumption goes
against "partial repeals that occur when one statute implicitly limits another statute's
scope of operation").

    Defendants attempt to distinguish *JEB Group* by arguing that the court there
did not rely on the language in CUTSA. *See* CoStar Br. at 14 n.10. But this argument
ignores the language of CUTSA itself, which explicitly provides that it "does not
supersede any *statute* relating to misappropriation of a trade secret, or any statute
otherwise regulating trade secrets." Section 3426.7(a) (emphasis added). Indeed,
there is a good policy argument for this reading of Section 3426.7(a): "[I]t is illogical
to think that the California legislature enacted a computer crime provision and
deliberately included a civil remedy that would in turn be preempted by other
legislation authorizing civil protection for trade secrets." *Regents*, 2016 WL
4097072, at \*8 (denying motion to dismiss CDAFA claim). Moreover, since "[t]he
California district courts are divided on the issue and a binding authority has not

1   offered clarification," other courts "err[] on the side of caution and do[] not find that

2   the [CDAFA] claim is preempted." *R.R. Donnelley & Sons Company v. Pappas*,

3   No. 2:21-cv-00753, 2021 WL 3488502, at *3 (E.D. Cal. 2021).

4        **C.    The FAC Pleads Sufficient Facts Establishing CDAFA Damages.**

5        To sue under the CDAFA, a plaintiff "must have suffered 'damage or loss by

6   reason of a [CDAFA] violation.'" *Frasco*, 2024 WL 4280933 (quoting Cal. Pen.

7   Code § 502(e)(1)). Contrary to CoStar's contention, the CDAFA and CFAA are not

8   entirely coextensive.[8] *See Rebecca Bamberger Works, LLC v. Bamberger*, No. 24-

9   CV-706 JLS (DDL), 2024 WL 2805323, at *5 (S.D. Cal. May 31, 2024). Unlike the

10  CFAA, the CDAFA does not define damage or loss, require loss to establish standing

11  as under the CFAA, or "contain a specific monetary threshold for loss." *Cottle v.*

12  *Plaid Inc.*, 536 F. Supp. 3d 461, 487 (N.D. Cal. 2021). Moreover, the CDAFA

13  expressly "permits recovery of '[c]ompensatory damages [that] include any

14  expenditure reasonably and necessarily incurred by the owner or lessee to verify that

15  a computer system, computer network, computer program, or data was or was not

16  altered, damaged, or deleted by the access." *Id.*

17       Move's allegations are sufficient to plead damages or loss under the CDAFA.

18  As discussed *supra*, the FAC alleges that Defendants' repeated unauthorized access

19  to Move's electronic documents damaged Move in an amount exceeding $5,000, and

20  it describes Move's findings after expending significant resources responding to and

21  assessing Mr. Kaminsky's breach. *See* Section III.B, *supra*. The FAC further

22  alleges that Mr. Kaminsky deleted information and documents from his Move-

23  issued laptop. *See id.* Courts routinely recognize such allegations as sufficient to

24

25  [8] The Court should reject CoStar's argument on this issue. Indeed, CoStar's own
    cited authority recognizes that, when a plaintiff states a claim for damages under
26  the CDAFA, a plaintiff similarly states a claim for damages under the CFAA
    because the CFAA has a more stringent standard. *See NovelPoster v. Javitch*
27  *Canfield Grp.*, 140 F. Supp. 3d 954, 965 (N.D. Cal. 2014) (denying motion to
    dismiss for failure to state a claim as to damages stating that "[b]y adequately
28  alleging damage or loss under the CFAA, [plaintiff] has done the same under the
    CDAFA."). None of CoStar's cases support the proposition that CFAA and
    CDAFA claims always rise and fall together.

state a CDAFA claim.  For example, in *Ziegler*, the court held that plaintiffs' assertion that "as the owner of the data, he has suffered damages caused by the [d]efendant in an amount to be proven at trial" was sufficient to state a claim under the CDAFA. 2024 WL 3498786, at *10.  Indeed, courts recognize broader damages available under the CDAFA than are cognizable under the CFAA.  For example, in *Frasco*, the court denied summary judgment when the plaintiff adduced evidence "from which a reasonable jury could conclude that the information obtained by [the defendant] 'carried financial value' that amounts to damage or loss suffered by plaintiffs." 2024 WL 4280933; *see also Esparza v. Kohl's, Inc.*, No. 23-CV-01988-AJB-KSC, 2024 WL 1152732, at *7 (S.D. Cal. Mar. 18, 2024) (denying dismissal because court could infer defendant "unfairly profited from" exploiting plaintiff's data).

## V.    The FAC Pleads Sufficient Facts to Establish CoStar's Vicarious Liability for Mr. Kaminsky's Actions.

Move's FAC alleges more than enough facts to establish CoStar's vicarious liability for the conduct of its employee.  It is a basic proposition that an employer is "vicariously liable for the torts of its employees committed within the scope of employment." *Duste v. Chevron Prods. Co.*, 738 F. Supp. 2d 1027, 1044 (N.D. Cal. 2010).  This includes intentional torts: "[E]ven if the employer has not authorized the employee to perform the tortious activity, so long as there is a 'causal nexus' between the activity and the employee's work." *SolarCity Corp.*, 2016 WL 11019989, at *5.  Where plaintiff and defendant "operate in the same industry, the court may reasonably infer that [the departing employees] acquired the information to benefit [defendant]." *Cisco Systems v. Chung*, 462 F. Supp. 3d 1024, 1057 (N.D. Cal. 2020).

Under *respondeat superior* principles, Mr. Kaminsky's conduct was plainly within the scope of his employment because of the nexus between his responsibilities as a content creator and editor, CoStar's recent investment into a strategy of using

online content to drive traffic to its website, and the value and benefit that Move's information has for a company pursuing CoStar's content strategy. *See*, *e.g.*, *Language Line Servs., Inc. v. Language Servs. Assocs., Inc.*, 944 F. Supp. 2d 775, 783 (N.D. Cal. 2013); *see also SolarCity Corp.*, 2016 WL 11019989, at *5. Move and CoStar operate in the same industry. *See Chung*, 462 F. Supp. 3d at 1057; FAC ¶ 23. It is therefore "reasonable to infer that [defendant] accessed [plaintiff's] laptop during the time that he was employed with [the competitor] and in the scope of such employment"). *SBM Site Servs., LLC v. Garrett*, No. 10–cv–00385, 2012 WL 628619, at *6 (D. Colo. Feb. 27, 2012) (plaintiff stated a CFAA claim against employer under *respondeat superior* principles where the defendant accessed the plaintiff's protected computer during the time of his employment). Courts deny motions to dismiss where the plaintiff alleges a basic *respondeat superior* relationship—the plaintiff need not prove its entire case in the complaint. *See Pasternak v. Cal. Nat'l Bank*, No. CV 04-09596, 2005 WL 8154964, at *4 (C.D. Cal. Mar. 16, 2005) (in *respondeat superior* context, "[a] plaintiff need not plead detailed evidentiary facts, and a complaint is sufficient if it will give a defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests"). [9]

Move's allegations easily meet this standard at the pleadings stage, and discovery will likely shed more light on the close nexus between the documents stolen by CoStar's employee and CoStar's strategy. CoStar cannot attempt to contravene those facts within the four corners of the complaint and refute what Move has pled. *Solid 21, Inc. v. Breitling USA, Inc.*, 512 Fed. Appx. 685, 686-687 (9th Cir. 2013) ("the inquiry under Rule 12(b)(6) is the adequacy of the pleadings, not the adequacy of the evidence"). CoStar's (false) factual contention that Mr. Kaminsky's role at CoStar has nothing to do with the documents he accessed while

---

[9] Additionally, CoStar ratified Mr. Kaminsky's actions by repeatedly and publicly proclaiming he did nothing wrong and stating its support for him in the face of his undisputed unauthorized access into Move's computer systems and his document destruction. FAC ¶ 61.

employed at CoStar is inappropriate on a motion to dismiss.  This merely points to a factual dispute over the allegations in Move's FAC.[10]  Move specifically alleged that Mr. Kaminsky was hired to "oversee[] the development and execution of a dynamic new category of luxury housing coverage" for Homes.com, and his role included "[m]anaging and editing a team of 10 full-time architecture and style writers to create unique reported content."  FAC ¶ 56.  Move further pled that Mr. Kaminsky was hired at the same time CoStar was recruiting a Director to "develop and implement a comprehensive communications strategy that will grow awareness, engagement, media impressions, and share of voice from the Homes.com brand, and to promote the brand to key media outlets as the leader in the residential industry, rental market industry and consumer insights space," *id.* ¶ 37, showing CoStar's investment in strategies that are detailed in the documents Mr. Kaminsky accessed.  And Move specifically pled that Mr. Kaminsky accessed and viewed Move's documents dozens of times after he began working for CoStar, including, but not limited to, Move's regularly updated Comms + Econ + N&I Project Call and Editorial Budget documents as well as repeatedly accessing Move's confidential "N&I Audience and Revenue for PMDLT" document.  *Id.* ¶¶ 60, 83.  These documents all concern content creation and site traffic strategy which directly relates to CoStar's strategy for driving more traffic to Homes.com.  Underpinning all of this is the fact that Move and CoStar operate in the same industry, which itself creates an inference that *respondeat superior* applies.  *Chung*, 462 F. Supp. 3d at 1057.

---

[10] Further, even if Defendants were permitted to introduce their own evidence at this stage, they would need to show that Mr. Kaminsky's actions were not even "broadly incidental" to CoStar's business.  *Rizzo v. Insurance Co. of State of Pa.*, 969 F. Supp. 2d 1180, 1195 (C.D. Cal. 2013).  Move's FAC contains ample allegations to refute that faulty position.

20

## VI.    Move Should Be Granted Leave to Amend if the Court Sees any Basis for Dismissal.

Federal Rule of Civil Procedure 15(a) instructs that leave to amend "shall be freely given when justice so requires," Fed. R. Civ. P. 15(a), given that "the underlying purpose of Rule 15 to facilitate a decision on the merits, rather than on the pleadings or technicalities.'" *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (*en banc*). "When dismissing a complaint for failure to state a claim, 'a district court should grant leave to amend . . . unless it determines that the pleading could not possibly be cured by the allegation of other facts.'" *SunPower Corp. v. SolarCity Corp.*, No. 12-CV-00694-LHK, 2012 WL 6160472, at *16 (N.D. Cal. Dec. 11, 2012) (quoting *Lopez*, 203 F.3d at 1127). Leave to amend "shall be denied only if amendment would unduly prejudice the opposing party, cause undue delay, or be futile, or if the moving party has acted in bad faith." *Id.* Rather, "[r]equests for leave should be granted with 'extreme liberality.'" *Rojo v. Kia Motors Corp.*, No. EDCV 19-2171-GW-SHKX, 2020 WL 2568301, at *1 (C.D. Cal. Mar. 27, 2020) (quoting *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 972 (9th Cir. 2009)).

Any purported deficiencies could easily be cured, if necessary. CoStar filed a narrow motion, and any amendment would be similarly narrow. Defendants would not suffer prejudice from Move amending for a *second* time (not a third time, as CoStar incorrectly states). *See Ahn v. Geo Grp., Inc.*, No. 1:22-CV-00586-CDB, 2023 WL 2993303, at *4 (E.D. Cal. Apr. 18, 2023) (fact that plaintiff sought to amend complaint a second time "does not weigh against granting leave to amend").

/ /

/ /

/ /

/ /

1

## <u>CONCLUSION</u>

2      The Court should deny Defendants' motion to dismiss the FAC's causes of

3 action for violations of the CFAA and CDAFA.

4 Dated: October 7, 2024                  JENNER & BLOCK LLP

5

6

7                              By:

8                                   Brent Caslin

9                                   David R. Singer

10                                  Elizabeth Baldridge
                                    Carolyn Small

11

12                                  *Attorneys for Plaintiffs*

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# CERTIFICATE OF COMPLIANCE

This certifies that Move's brief complies with the requirements of Local Rule

11-6. The brief contains 6,999 words as calculated by the word processing program.

October 7, 2024                              */s/ Brent Caslin*
                                            Brent Caslin