# [PROPOSED] ORDER ESTABLISHING PROTOCOL FOR ELECTRONIC DISCOVERY

**A.     Definitions.**

1. "Document" carries its broadest meaning consistent with Fed. R. Civ. P. 34 and includes both ESI and paper documents.

2. "Electronically Stored Information" or "ESI" means information that is stored electronically, regardless of the media or whether it is in the original format in which it was created, as opposed to stored in hard copy (i.e., on paper). ESI carries the broadest possible meaning consistent with Fed. R. Civ. P. 34(a) and Fed. R. Evid. 1001, and includes, but is not limited to: emails and attachments, other electronic messaging platforms (such as instant messaging, chat messaging, app-based messaging, Slack based messaging and collaboration tool messaging), voicemails, calendar items, memoranda, letters, reports, presentations, and spreadsheets.

3. "Extracted Text" means the text extracted from a Native Format file and includes all header, footer, and document body information.

4. "Load file" means an electronic file containing information identifying a set of paper-scanned images or processed ESI and indicating where individual pages or files belong together as documents, including attachments, and where each document begins and ends. A Load file may also contain data relevant to individual documents, including user or software created Metadata.

5. "Metadata" means structured information that describes, explains, locates, or otherwise makes it easier to retrieve, use, or manage an information resource.

6. "Native Format" means the format of ESI in the application in which such ESI was originally created.

7. "OCR" means the optical character recognition file, which is created by software used in conjunction with a scanner that is capable of reading text-based documents and making such documents searchable using appropriate software.

8. "Producing Party" means a party in the above captioned matter that produces documents.

9. "Receiving Party" means a party in the above captioned matter to whom documents are produced.

10. "Responsive Document" means any document that is responsive to any discovery requests served on the Producing Party in this litigation, which the Producing Party has agreed to produce, or which the Producing Party has been ordered to produce by the Court.

11. "Tagged Image File Format" or "TIFF" refers to the CCITT Group IV graphic file format for storing bit-mapped images, with multiple compression formats and resolutions.

**B. Scope.**

1. The procedures and protocols set forth in this Stipulated Order shall govern the production of Responsive Documents between the Parties in this Litigation occurring after the date this Order is signed. Any practice or procedure set forth herein may be varied by written agreement of the Parties.

2. Nothing in this Stipulated Order establishes any agreement as to either the temporal or subject matter scope of discovery in the Litigation.

3. The Parties do not waive any objections to the production, discoverability, or confidentiality of any information, including, without limitation, objections regarding the burden, over-breadth, or relevance of any discovery requests. The Parties shall make their best efforts to comply with and resolve any differences concerning compliance with this Stipulated Order. If the Parties are unable to reach agreement, the Parties shall submit any dispute to the Court for resolution.

**C. Production Format.**

1. ESI Production Format: Except as provided in Paragraph C.7 and C.8, ESI shall be produced electronically, as single page, uniquely and sequentially

numbered Group IV TIFF files at 300 dpi resolution, with a corresponding load file ("Image Load File") and document-level Extracted Text files. For ESI that does not have Extracted Text, a document-level OCR text file shall be created and included in the production. With regard to ESI documents that are redacted for privilege, the images shall be accompanied by OCR text files that do not contain the redacted portion of the document. All text files shall be named to match the endorsed number assigned to the image of the first page of the document. The images shall also be accompanied by an image cross-reference load file (such as "OPT" or "LFP") corresponding to the TIFF files, a data load file ("DAT") providing the beginning and ending endorsed number of each document and the number of pages it comprises, shall contain the metadata associated with each Production Field specified in Schedule A and suitable for loading into Concordance or Relativity, and shall provide a link to the document-level text file in the TEXTPATH field.

2. Production of Paper Discovery: The Producing Party shall produce hard-copy documents electronically in single-page TIFF image format, uniquely and sequentially numbered Group IV TIFF files at 300 dpi resolution, with a corresponding load file ("Image Load File") and document-level OCR text file. With regard to hard copy documents produced electronically that are redacted for privilege, the images shall be accompanied by document-level OCR text files that do not contain the redacted portion of the document. The images shall also be accompanied by an image cross-reference load file (such as "OPT" or "LFP") corresponding to the TIFF files, a data load file ("DAT") providing the beginning and ending endorsed number of each document and the number of pages it comprises, shall contain the relevant hard copy Production Fields specified in Schedule A and suitable for loading into Concordance or Relativity, and shall provide a link to the document-level text file in the TEXTPATH field.

3. Appearance and Content: Subject to any redactions, each document's TIFF image file shall contain the same information and same physical representation

as the document did in its original format, whether paper or electronic, consistent with the processing specifications set forth in Section D. Documents that present imaging or formatting problems of which the Producing Party is aware at the time of production but has not been able to resolve shall be promptly identified by the Producing Party by e-mail to the Receiving Party within fourteen (14) days after the production containing the problematic document(s), or the Producing Party may elect to produce those documents in native form consistent with Paragraph C.7.

    4.    Document Unitization: If a hard copy document is more than one page, to the extent possible, the unitization of the document and any attachments or affixed notes shall be maintained as it existed when collected by the Producing Party.

    5.    Color:  If an original document contains color necessary to understand the meaning or content of the document, the Producing Party shall honor reasonable requests for a color image and/or native file of the document. Color images should be produced in single-page JPEG format.

    6.    Document Numbers and Confidentiality Designations for TIFF Images: Each page of a document produced in TIFF file format shall have a legible, unique fixed-length numeric identifier ("Document Number") containing eight (8) digits electronically "burned" onto the image in no less than 10-point font. Unless it would obscure, conceal or interfere with any information originally appearing on the document, the Document Number shall be burned on the lower righthand corner of the document. Unless it would obscure, conceal or interfere with any information originally appearing on the document, any confidentiality designation pursuant to the Confidentiality Protective Order entered in this case will appear on the lower lefthand side of each page of a document produced, in no less than 10-point font. The Document Number for each document shall be created so as to identify the Producing Party and the Document Number (*e.g.*, "MOVE_0000001") and shall not contain spaces in the Document Number. Each party shall have a unique identifying name.

7. Production of ESI in Native Format: In the event that production of a document in TIFF image file format would be impracticable, the Producing Party shall have the option of producing such document in Native Format. In all other instances, after initial production of ESI in TIFF image file format, a party must show good cause for production of that ESI in its Native Format. However, nothing in this Paragraph, except pursuant to Paragraph C.8, is to be read as requiring any Producing Party, absent agreement or court order, to produce ESI in Native Format. No Producing Party shall convert ESI to paper (*e.g.*, by printing ESI and scanning the hard copy version).

8. Native File Exceptions: Unless upon a showing of good cause, and notwithstanding Paragraph C.7, to the extent a Producing Party produces Microsoft Excel or other spreadsheet files, video or audio files, or other information that is only readable and/or usable in its Native Format, such documents shall be produced in their Native Format. To the extent documents that fall under this exception contain privileged information, and cannot be redacted or produced in TIFF format, such documents will be logged on a privilege log. The Metadata load file for files produced natively shall contain a link to the produced Native Files via data values called "Native Link." To the extent a response to discovery requires production of discoverable electronic information contained in a structured database format, such as Microsoft Access, the Parties shall discuss the production format prior to production. Each electronic file produced in Native Format shall be assigned a unique Document Number. The Producing Party shall include a single-page TIFF image branded with this unique Document Number and the phrase "PRODUCED IN NATIVE FORMAT" branded in the center of the page. To protect the confidentiality of files produced natively, any confidentiality designations pursuant to the Confidentiality Protective Order (ECF No. 40) must appear on the TIFF placeholder on the lower lefthand corner in no less than 10-point font. Native file names shall be identical to the Document number, followed by the file extension,

*e.g.*, MOVE_0000001.xls. No party may attach to any pleading or any correspondence or any adverse or third party, or submit as an exhibit at a deposition or any other judicial proceeding, a copy of any document in Native Format produced by any party without ensuring that the corresponding Bates number and confidentiality legend, as designated by the producing party, appears in the Native File name.

9. Embedded Files: If a document has another file embedded in it, (*e.g.*, a Word document that has a spreadsheet embedded in it), the Receiving Party may request that the embedded file be produced as a standalone file. All non-graphic embedded objects (Word documents, Excel spreadsheets, .wav files, etc.) that are found within a file shall be extracted and produced. For purposes of production, the non-graphic embedded files shall be treated as attachments to the original file, with the parent/child relationship preserved. The Producing Party shall promptly respond in writing if it cannot produce the requested embedded file as a standalone file, after which the Parties shall meet and confer.

10. Hyperlinked Documents: The Producing Party agrees to collect and produce linked documents shared within a produced email, including but not limited to those contained in M365 or Google Workspace platforms, to the extent possible using commercially available tools. In doing so, the Producing Party will preserve and produce available metadata which is supported in the M365 or Google Vault environment(s), as applicable. This may include metadata linking the message with the document, as well as URLs and Google Document IDs for Google Drive documents. Where possible, this metadata will be included in the load file for any document production; for emails linking to Google Drive documents, the metadata will include URLs and Google Document IDs of all linked documents where available. Links to non-Google or non-Microsoft systems, including links to other internal repositories, will not be automatically produced, but will be provided upon request to the extent they are available without undue burden to the Producing Party.

1 Linked documents to third-party sites will not be produced.

2   Due to existing technology and configuration, the Producing Party's production of linked documents shared with emails may be limited to the version that existed at the time of the collection and not the contemporaneous version. However, where available without undue burden, the Producing Party shall produce the version of the hyperlinked document as it existed when an email or message was sent.

  11.  Production Media: The Producing Party shall produce document images, native files, load files and metadata via file transfer protocol or on hard drives or other mutually agreeable media ("Production Media"). Each piece of Production Media shall include a unique identifying label corresponding to the identity of the Producing Party, the date of the production of documents on the Production Media and the Document Number ranges of the documents in that production (*e.g.*, "Move Production October 1, 2024, MOVE_0000001-MOVE_0000268"). To the extent that the Production Media includes any information designated under the Stipulated Protective Order entered in this case, the label on such Production Media shall indicate that the Production Media includes information so designated as required under the terms of the Stipulated Protective Order. Production Media shall include text referencing the case name and number. Further, any replacement Production Media shall cross-reference the original Production Media, clearly identify that it is a replacement and cross-reference the Document Number range that is being replaced. All Production Media that is capable of write protection should be write-protected before production. All Production Media may be encrypted, with the Producing Party to provide a decryption key at the time of production.

  12.  Original Documents: Nothing in this Stipulated Order shall eliminate or alter any Party's obligation to retain Native Format copies, including associated metadata, of all ESI preserved for and produced in the Litigation and/or original

versions of all hard copy documents preserved for and produced in the Litigation.

13. Third-Party Software and Legacy Systems: To the extent that documents produced pursuant to this Stipulated Order cannot be rendered or viewed without the use of proprietary third-party software or legacy systems, the Parties shall meet and confer to minimize any expense or burden associated with the production of such documents in an acceptable format.

14. The parties may use email thread suppression to reduce duplicative production of email threads by producing the most inclusive email containing the thread of emails, as well as all attachments within the thread. If an email thread splits into two separate threads, then both threads shall be included in the production. If an email has an attachment and subsequent replies omit that attachment, then the original email with the attachment shall also be included in the production.

**D.     Processing Specifications.**

The Producing Party shall collect and process documents using forensically sound methods that avoid spoliation of data. The Producing Party will generate and preserve the MD5 hash values or SHA-1 hash values at the time of ESI processing. The Producing Party shall use the following specifications when converting ESI from its Native Format into TIFF image files prior to its production:

1. All ESI shall be processed with a single consistent time zone date and time setting.

2. All tracked changes shall be maintained, to the extent reasonably feasible upon collection, so that all changes to a document are evident.

3. Author comments shall remain or be made visible, to the extent reasonably feasible upon collection and processing.

4. Hidden columns, rows, and worksheets shall be made visible, to the extent reasonably feasible upon collection and processing.

5. Presenter notes shall be made visible, to the extent reasonably feasible upon collection and processing.

**E.      Privilege Log and Treatment of Privileged Materials**

   1. <u>Privilege Log</u>.  Consistent with the Federal Rules of Civil Procedure, the Parties agree to serve a privilege log providing information regarding all Documents withheld or redacted under a claim of privilege and/or work product. The Parties agree to negotiate a reasonable time within which to exchange privilege logs.

   a. *Format*.  For each Document withheld or redacted, the privilege log shall contain the following information:

    i. The date of the Document;

    ii. All persons who authored, signed, or otherwise prepared the Document.

    iii. The identity of all persons designated as addressees or copyees, where readily ascertainable.

    iv. A description of the contents of the Document that, without revealing information itself privileged or protected, is sufficient to understand the subject matter of the Document, the basis of the claim of privilege or immunity, and information sufficient to identify if the Document contained attachments over which privilege is also being asserted; and

    v. The type or nature of the privilege asserted (e.g., attorney-client privilege, work product doctrine, etc.).

    vi. For redacted documents only, the bates numbers corresponding to the first and last page of any document redacted.

   b. *Attorneys*.  For all individuals listed on a log whose role as an attorney is the basis for a claim of privilege, the privilege log shall contain some indication that the individual is an attorney (for example, an asterisk or ESQ next to each attorney's name).

   c. *Exceptions*.  The Parties agree that certain privileged Documents need

not be included on a privilege log, including:

　　i. Privileged Documents and Communications with counsel, and work product of counsel and Parties, that post-date the filing of this complaint.

2.　Protocols for Logging E-mail Chains. Any e-mail chain (i.e., a series of e-mails linked together by e-mail responses and forwarding) that is withheld or redacted on the grounds of privilege, immunity, or any similar claim may be logged as one Document and identified by the top-most e-mail (i.e., the last-in-time email) in the chain that is withheld or redacted. The Parties may, but shall not be required to, log identical copies of an e-mail that is included in a chain that has been logged in accordance with this Paragraph.

3.　Protocols for Logging "Families." Each member of a family (i.e., e-mail attaching memorandum) that is withheld or redacted on the grounds of privilege, immunity, or any similar claim shall be identified on the log separately (i.e., in the foregoing example, the email and attached memorandum shall be identified on the log separately rather than on a single line).

4.　502(d) Order and Clawback Procedure. This Order is entered pursuant to Rule 502(d) of the Federal Rules of Evidence. Subject to the provisions of this Order, if the Producing Party inadvertently discloses information in connection with the pending Litigation that the Producing Party thereafter claims to be privileged or protected by the attorney-client privilege or work product protection ("Protected Information"), the inadvertent disclosure of that Protected Information will not constitute or be deemed a waiver or forfeiture—in this or any other action—of any claim of privilege or work product protection that the Producing Party would otherwise be entitled to assert with respect to the Protected Information and its subject matter.

　　i.　A Producing Party must notify the Receiving Party, in writing, that it has inadvertently disclosed that Protected Information

without intending a waiver by the disclosure, and provide a privilege log that complies with Section E.1. of this Order. Upon receipt of notification, the Receiving Party shall not further review the inadvertently produced Documents, and shall immediately, and in no event more than two business days after receiving such notification, destroy or return all copies, electronic or otherwise, of such Document or other information, and shall provide a certification that it will cease further review, dissemination, and use of the Protected Information. In so doing, the Receiving Party does not waive its right to challenge the claim of privilege/work product or to seek an order compelling the production of such documents.

    ii. It is the desire, intention and mutual understanding of the Parties that all inadvertently or unintentionally disclosed or produced privileged information shall be treated as confidential and may not be disclosed by the Receiving Party to persons or entities other than the Producing Party without the written consent of the Producing Party.

    iii. If a Party who received Documents or information over which a privilege is asserted has disclosed such Documents or information to any person or in any circumstance, the Party must immediately: (a) notify, in writing, the producing Party of the disclosure; (b) use best efforts to retrieve all copies of the Documents or information over which the privilege is asserted; and (c) notify, in writing, the Producing Party regarding whether all copies have been retrieved.

    iv. No motion to compel or other argument for waiver of privilege will be raised based upon the inadvertent or unintentional

       v.  This Order shall be interpreted to provide the maximum protection allowed to the Producing Party by Federal Rule of Evidence 502(d). The provisions of Federal Rule of Evidence 502(b)(2) are inapplicable to the production of Protected Information under this Order. However, if for any reason, a Court finds that this Section is inapplicable to Protected Information, then Rule 502(b) will apply in its absence.

  5. <u>Forensic Images:</u> The Parties agree that production of any forensic image(s) in this case does not waive privilege with respect to any privileged information contained in such image(s) unless such privilege is otherwise specifically waived by the Producing Party.

  6. <u>Contesting Claim of Privilege or Work Product Protection</u>. Nothing in this Order shall limit the Receiving Party's right to challenge (on grounds unrelated to the fact or circumstances of the disclosure) the Producing Party's claim that Disclosed Information is protected from disclosure by the attorney-client privilege or work product doctrine. If, after undertaking an appropriate meet-and-confer process (which shall include a telephonic conference), the Parties are unable to resolve any dispute they have concerning the protection of Documents for which a claim of Disclosure has been asserted, the Receiving Party may file the appropriate motion or application as provided by the Court's procedures to compel production of such material. The Disclosing Party shall bear the burden of proving that the Disclosed Information is properly privileged or subject to work product protection. Any Protected Information submitted to the Court in connection with a challenge to the Producing Party's claim of attorney-client privilege or work product protection shall not be filed in the public record, but rather shall be redacted, filed under seal, or submitted for in camera review as appropriate.

**IT IS SO ORDERED.**

_____
Hon. Brianna Fuller Mircheff
United States Magistrate Judge

DATED: _____