Jenner & Block LLP
Brent Caslin (SBN 198682)
bcaslin@jenner.com
David R. Singer (SBN 204699)
dsinger@jenner.com
Todd C. Toral (SBN 197706)
ttoral@jenner.com
Elizabeth Baldridge (SBN 313390)
ebaldridge@jenner.com
515 South Flower Street, Suite 3300
Los Angeles, CA  90071-2246
Telephone:  +1 213 239 5100
Facsimile:  +1 213 239 5199

*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**WESTERN DIVISION**

| | |
|---|---|
| MOVE, INC., a Delaware corporation; MOVE SALES, INC., a Delaware corporation; REALSELECT, INC., a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>COSTAR GROUP, INC., a Delaware corporation; JAMES KAMINSKY an individual; and DOES 1 through 10, inclusive<br><br>Defendants. | CASE NO. 2:24-cv-05607-GW-BFM<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION TO MODIFY SCHEDULING ORDER**<br><br>[Declaration of Elizabeth Baldridge; Proposed Order filed concurrently]<br><br>Date: April 24, 2025<br>Time: 8:30 a.m.<br>Courtroom: 9D<br>Judge: Hon. George H. Wu<br>Second Amended Complaint filed: November 19, 2024 |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT**, that on April 24, 2025, at 8:30 a.m., or as soon thereafter as counsel may be heard before the Honorable George H. Wu, in Courtroom 9D of the United States District Court for the Central District of California, located at 350 West 1st Street, Los Angeles, California 90012, Plaintiffs Move, Inc., Move Sales, Inc., and RealSelect, Inc. (collectively, "Move") will and hereby do move for an order pursuant to Federal Rule of Civil Procedure 16 to modify the Court's scheduling order issued on October 22, 2024 (ECF No. 111).

Move's Motion seeks a modest 90-day continuance of all dates and deadlines in the action, including the current May 1, 2025 fact discovery cutoff. The new schedule proposed by Move is as follows:

Fact discovery cutoff: July 30, 2025

Expert discovery cutoff: September 4, 2025

Last day to hear motions: October 6, 2025

Pre-trial conference: November 5, 2025

First day of jury trial: November 17, 2025

This Motion is made following a conference of counsel pursuant to Local Rule 7-3. On March 18, 2025, counsel for Move emailed counsel for Defendants requesting their stipulation to extend the case schedule by 90 days. Declaration of Elizabeth Baldridge ¶ 2. Defendants' counsel refused, making clear that no further meet-and-confer could avoid this Motion. *Id.*

/ /

/ /

/ /

/ /

Move's Motion is based on this Notice, the attached Memorandum of Points and Authorities, the concurrently filed Declaration of Elizabeth Baldridge, the concurrently filed Proposed Order, the pleadings and papers on file in this action, any further evidence or argument of counsel that the Court may receive at or before the hearing.

Dated: March 27, 2025

JENNER & BLOCK LLP

By: */s/ Todd C. Toral*
Todd C. Toral
Brent Caslin
David R. Singer
Carolyn Small
Elizabeth Baldridge

*Attorneys for Plaintiffs*

# TABLE OF CONTENTS

MEMORANDUM OF POINTS AND AUTHORITIES ........................................... 1

I. INTRODUCTION ................................................................................................ 1

II. LEGAL STANDARD .......................................................................................... 2

III. BACKGROUND ................................................................................................. 3

IV. MOVE HAS ESTABLISHED GOOD CAUSE TO EXTEND THE
    DISCOVERY CUTOFF ................................................................................. 11~~12~~

V. CONCLUSION .................................................................................................. 15

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Alcantara v. United Furniture Indus., Inc.*,
 2023 WL 6190817 (C.D. Cal. July 25, 2023) ...................................................... 2

*Avila v. Willits Env't Remediation Tr.*,
 633 F.3d 828 (9th Cir. 2011) ............................................................................... 2

*Ellson v. Union Pacific Railroad*,
 2024 WL 4800055 (C.D. Cal. June 28, 2024) ............................................. 12, 13

*Johnson v. Mammoth Recreations, Inc.*,
 975 F.2d 604 (9th Cir. 1992) .......................................................................... 2, 11

*Lyon v. U.S. Immigration & Customs Enforcement*,
 308 F.R.D. 203 (N.D. Cal. 2015) ....................................................................... 12

*SEIU Healthcare 1199 NW v. Providence Health & Services*,
 2020 WL 8513833 (W.D. Wash. Dec. 22, 2020) ............................................... 13

*Sharp v. Balboa Islands, LLC*,
 2012 WL 13176036 (S.D. Cal. June 20, 2012) .................................................... 2

*Zivkovic v. S. Cal. Edison Co.*,
 302 F.3d 1080 (9th Cir. 2002) ........................................................................ 2, 11

**Other Authorities**

Fed. R. Civ. P. 16(b) ................................................................................................. 2

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

There is no doubt that Defendant James Kaminsky accessed Move's confidential information while CoStar was recruiting him, and later while Mr. Kaminsky was employed by the company. From that baseline, Move has been diligently trying to close in on what Mr. Kaminsky did with the stolen information. CoStar has met that diligent inquiry with two inconsistent themes. On one hand, CoStar repeatedly contends there is "nothing to see" in terms of CoStar's use of Move's information. But on the other, CoStar has argued, delayed, and evaded Move's every effort to test that contention. Document requests that should have been easily responded to required endless demand letters, ceaseless meet-and-confers, and multiple Magistrate Judge conferences. Discovery that should have taken just a few weeks has dragged on for nearly six months. What is more, depositions have not even begun because CoStar refused to produce all of its documents and only agreed to do so after Move initiated calls with the Magistrate Judge. And just in the past two weeks, CoStar dumped several thousand documents on Move that it should have produced last year. Most significantly, CoStar produced 20,000 pages of documents the same day that Move filed this Motion. By holding back its largest production until *five weeks* before the close of discovery, CoStar has blocked Move from effectively preparing for depositions—and even from knowing which witnesses to depose with adequate time to notice those depositions.

For its own part, Move needs additional time to complete its production of documents, particularly where the parties have only recently agreed to a compromise position in meet-and-confer negotiations and where the parties are still meeting and conferring.

After frustrating Move's every effort to determine what Mr. Kaminsky did with Move's information, CoStar just blitzed Move with its own discovery demands

in the last few weeks of fact discovery, further underscoring the need for more time for Move to field CoStar's discovery. CoStar is demanding Move produce more information in a month than CoStar has produced in six.

This Motion seeks a 90-day extension of the schedule so that fact discovery can be completed in an orderly manner, and Move can finish its investigation into the extent of Defendants' misappropriation.[1] There is abundant good cause for this request. It is the first and will be the only time an extension is necessary. If the request is granted, Move will use the additional time to obtain necessary discovery, including most importantly the taking of depositions after CoStar finally finishes its document production and Move has a fair chance to review the documents, and preparing expert witness reports. The additional time is also needed to manage the mountain of discovery demands CoStar served at the last moment. Whereas a 90-day extension of deadlines in this case will not prejudice Defendants, Move faces serious prejudice under the current schedule and warrants relief.

## II.     LEGAL STANDARD

Rule 16(b) of the Federal Rules of Civil Procedure permits modification of a scheduling order "upon a showing of good cause and by leave of the district judge, or when authorized by local rule, by a magistrate judge." Fed. R. Civ. P. 16(b). "[D]istrict judges have broad discretion to manage discovery and to control the course of litigation under Federal Rule of Civil Procedure 16." *Alcantara v. United Furniture Indus., Inc.*, 2023 WL 6190817, at *1 (C.D. Cal. July 25, 2023) (quoting *Avila v. Willits Env't Remediation Tr.*, 633 F.3d 828, 833 (9th Cir. 2011)). "Rule 16(b)'s good cause standard generally means diligence or exceptional circumstances." *Sharp v. Balboa Islands, LLC*, 2012 WL 13176036, at *3 (S.D. Cal. June 20, 2012) (citing *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609

---

[1] Move does not seek an extension of the mediation deadline. Mediation is scheduled with Hon. Margaret Nagle (Ret.) on April 21, 2025 (before the deadline).

(9th Cir. 1992). With respect to diligence, "[t]he pretrial schedule may be modified 'if it cannot reasonably be met despite the diligence of the party seeking the extension.'" *Zivkovic v. S. Cal. Edison Co.*, 302 F.3d 1080, 1087 (9th Cir. 2002) (quoting Johnson, 975 F.2d at 609). There is no doubt in this case Move has been diligent and that the existing schedule cannot be met.

## III.     BACKGROUND

Move has expressed concerns about the timing of discovery since the beginning of the case, and CoStar has consistently exploited those concerns. At the Preliminary Injunction hearing, counsel for Move predicted that "forensic work [could] take[] months . . . it usually involves a forensic protocol. It is not the kind of work that we thought could be completed in [a] short amount of time." Sept. 23, 2024 Hrg. Tr. at 5:10-15.  That prediction has borne out through the discovery period. Regular discovery opened at the Preliminary Injunction hearing at Move's request to the Court. *See* Sept. 23, 2024, Hrg. Tr. at 18:20-19:2 (permitting Move, upon its counsel's request, to serve discovery before the Rule 26(f) conference in the interest of time). Move acted quickly, serving its first sets of RFPs on Defendants just three days after the hearing. Declaration of Elizabeth Baldridge ("Baldridge Decl."), Exs. A, B.  Among other things, those first RFPs sought forensic images of the computers Mr. Kaminsky used, which Defendants' forensic expert had already created and analyzed. *See id.*

### *CoStar Delays the Production of Forensic Images for Months.*

On the same day Move served its first sets of RFPs, it sent a letter to Defendants' counsel requesting that the parties "promptly schedule a meet and confer call to discuss the necessary process and protocol" for the transfer of forensic images. Baldridge Decl. at Ex. C. CoStar immediately implemented its obfuscation strategy. It waited a week to respond and ignored Move's request, instead demanding that Move provide CoStar with "MD5 hash values" for Move's trade secret

3
PLAINTIFFS' MOTION TO MODIFY SCHEDULING ORDER

documents at issue. *Id.* at Ex. D. Despite Move's repeated disclosure that MD5 hash values had little to no utility in the *Google Drive* context, where the trade secret documents at issue were stored and accessed, CoStar held the forensic images hostage. *See id.* at Ex. E. When CoStar and Mr. Kaminsky eventually served their discovery responses in October, they refused outright to produce the forensic images their own experts had already examined and discussed in filings submitted to this Court. *Id.* at Exs. A, B. Move was forced to repeatedly demand the forensic images and engage in multiple meet-and-confer discussions with defense counsel, and even take the issue to Magistrate Judge Mircheff. *Id.* at ¶¶ 7, 8. It was not until **January 2025** that Defendants finally produced to Move's expert the forensic images of the computers their experts had discussed in declarations filed with the Court in September 2024.

      The forensic protocols stipulated that Move's expert would first access the forensic images and analyze them at a high level. *See* ECF Nos. 124, 126. Move would then be permitted to request access to specific files on the devices for its counsel's review. *Id.* This was a topic discussed at the parties' informal discovery conference with Magistrate Judge Mircheff. Baldridge Decl. ¶ 8. Move was concerned that requiring it to request individual files from the CoStar devices Mr. Kaminsky used, with CoStar entitled to a 28-day review period before it turned them over, would cause further delays. *Id.* To counter Move's expressed concern, CoStar represented to Magistrate Judge Mircheff that, if Move requested a volume less than every file on the devices, CoStar would complete its work in less than 28 days. *Id.* But once Move made its request for only 14 files, CoStar used every single minute of the 28-day-long waiting period. *Id.* CoStar's delay of the forensic work frustrated the process, but that intentional delay paled in comparison to CoStar's document production delays.

### *CoStar Impedes Move's Document Requests.*

Concurrent with its pursuit of the forensic images, Move pressed Defendants to produce Mr. Kaminsky's emails from the relevant period.[2] In one instance, Move requested Mr. Kaminsky's emails covering a period of only a few months—something no Defendant claimed was burdensome. Nonetheless, CoStar held up its entire document production on the claim that Move's requests might implicate irrelevant and/or personal material such as Mr. Kaminsky's emails with CoStar's human resources department.[3] Baldridge Decl. ¶ 9. Only once Move confirmed that CoStar need not include HR-related emails did CoStar finally produce Mr. Kaminsky's communications. That process took another three months of managing through the obfuscation tactics. *Id.* Mr. Kaminsky separately produced emails from his personal account nearly four months after Move requested them. *Id.*

Move pursued other discovery that CoStar refused entirely, or delayed production of the limited material where it did agree. For instance, Move long ago requested documents relating to Mr. Kaminsky's hiring at CoStar, including his resume submission, interviewing, job offer, and job acceptance. Baldridge Decl. Exs. A, B. CoStar agreed only to produce a limited set of responsive materials and even refused to search for internal email communications about Mr. Kaminsky's hiring. *Id.* Ex. A. But, despite CoStar serving its response in October 2024, it did not produce even the limited documents it agreed to produce until *March 2025*. *Id.* at ¶ 10. And Move had to take the issue to Magistrate Judge Mircheff before CoStar

---

[2] These requests were also part of Move's first set of RFPs served on September 26, 2024.

[3] In this instance and many others through the course of discovery, CoStar's concerns ignored the fact that the parties agreed to a robust confidentiality protective order early in the case (ECF No. 40), which contains "Outside Counsel Eyes Only" designations.

finally committed to searching for and producing obviously relevant and responsive documents like internal CoStar emails discussing the hiring of Mr. Kaminsky. *Id.*

The amount of meet-and-confers required to force the defense to produce documents has been overwhelming. The parties to date have exchanged more than 45 letters and emails and counting on the issues discussed in this motion. Baldridge Decl. ¶ 14. Across many of Move's RFPs, CoStar's position was that it was "willing to meet and confer with Move to clarify and narrow" Move's requests, rather than producing anything in the first instance. Baldridge Decl. Ex. A. When Move proposed search terms and custodians to CoStar, CoStar frivolously took the position that Move would have to re-write its RFPs before CoStar would even search for responsive documents. This tactic, if accepted, would have rendered the meet-and-confer process of compromises meaningless, in addition to adding even more delay. Baldridge Decl. ¶ 11. Similarly, when CoStar decided Move's list of custodians was too broad, CoStar simply refused to search even the custodians who it agreed were relevant (*e.g.*, Mr. Kaminsky's direct supervisors) until Move dropped its broader request. *Id.* ¶ 12. Once again, only after Move took the issue to Judge Mircheff did CoStar agree to run searches and produce documents. *Id.* ¶¶ 11-12.

Then, within the last two weeks, CoStar did an eleventh-hour dump of thousands of documents knowing that depositions must take place in April (at the latest). *Id.* ¶ 15. Most egregiously, CoStar just today (the date Move is filing this Motion) served 20,000 pages of documents, meaning CoStar saved its largest production of documents for the last five weeks of discovery. *Id.* CoStar has also provided no assurance that its document production is complete. *Id.* ¶ 13. For depositions to be effective—and in some cases, for Move to even know who it should depose—Move needs CoStar to complete its production of documents and needs time to review the documents and determine the most efficient deposition plan.

### *False Factual Assertions Evidence the Need for Investigative Discovery.*

Move's dogged pursuit of documents and information from Defendants is appropriate in light of the fact that Mr. Kaminsky, while being recruited by CoStar and then working for CoStar, accessed dozens of highly confidential Move documents related to one of the most successful aspects of Move's business. But the need for actual documents has been heightened by the realization that many of the stories Defendants have told to excuse Mr. Kaminsky's conduct are false. For example, Mr. Kaminsky claimed in a sworn declaration submitted to this Court at the outset of the case that he only looked at Move's trade secret documents while working for CoStar to "satisfy some basic curiosity." Kaminsky Decl. in support of Defendants' Opp'n to Preliminary Injunction Motion, ECF No. 73-1, at ¶ 51. He also stated he viewed them in the context of preparing his tax returns and looking for a new job. Kaminsky Decl. in support of Defendants' Motion for Expedited Discovery, ECF No. 34-1, at ¶¶ 16, 39. Although his stories never really made sense, Defendants have consistently argued that Mr. Kaminsky accessing dozens of Move's confidential documents was a purely personal mistake that had nothing to do with CoStar. *See* CoStar Opp. to Preliminary Injunction Motion, ECF No. 75, at 11:16 ("As Kaminsky has been saying since he was first informed of Move's claims against him, he merely accessed the documents at issue . . . to aid in his job search . . . to enable him to contact certain former Move colleagues . . . [and] in connection with a personal tax issue"). As it turns out, the argument was false. In fact, discovery has revealed that Mr. Kaminsky sent Move's documents and information directly to his CoStar email account in several instances. Kaminsky Decl. ISO Opposition to PI Motion, ECF No. 73-1 at ¶ 51; Baldridge Decl. ¶ 16. Move has also discovered that Mr. Kaminsky met with individuals at CoStar whose work could have benefitted from the information in Move's trade secret documents, a lead that Move must be given time to investigate further. *Id.* ¶ 17. CoStar has produced documents about

7
PLAINTIFFS' MOTION TO MODIFY SCHEDULING ORDER

Mr. Kaminsky's role, marked "Confidential" under the protective order, that also contradict CoStar's repeated assertions that Mr. Kaminsky was a "relatively junior employee." *See id.*; Baldridge Decl. in support of Move's Preliminary Injunction Motion, ECF No. 60-5, Ex. F at 3. In addition, Move has obtained information in discovery that refutes Mr. Kaminsky's defense that he took Move's documents because they might be "helpful for a job search," and instead suggests his aim from the beginning may have been to assist CoStar (or perhaps to assist himself in his new role at CoStar, if we believe CoStar's story that only Mr. Kaminsky viewed the stolen documents). *See* Kaminsky Decl. in support of Defendants' Motion for Expedited Discovery, ECF No. 34-1 at ¶ 16; Baldridge Decl. ¶ 18. In addition, early in the case, Mr. Kaminsky had to contradict his own sworn declaration that he never downloaded or printed any of Move's confidential documents. As it turns out, Defendants' own forensics experts determined that Mr. Kaminsky printed out a page from one of Move's trade secret documents containing the specific valuation figures for Move's News & Insights platform. *Compare* Kaminsky Decl. in support of Defendants' Motion for Expedited Discovery, ECF No. 34-1 at ¶ 46, *with* Kaminsky Decl. in support of Defendants' Opposition to Preliminary Injunction Motion, ECF No. 73-1 at ¶ 28(b). This is precisely the kind of trade secret information that Mr. Kaminsky could have handed off to or discussed orally with others at CoStar, which could explain why CoStar began copying Move's News & Insights strategy a few months later.

CoStar will no doubt respond with manufactured outrage about Move's case having no merit, which is a consistent theme it raises in just about every context. But Move's factual findings thus far contradict its position. CoStar's arguments ignore the fact that Mr. Kaminsky improperly acquired Move's confidential information while he was being recruited by CoStar and later while working for CoStar. They ignore the fact that discovery has invalidated the personal use, curiosity, and tax

excuses offered by Mr. Kaminsky. The state of discovery to date clearly evidences the need for more investigation so Move can determine the extent of the misappropriation.

### *Other Relevant Facts of the Case Continue to Develop.*

The underlying facts continue to play out in real time. It is vital that Move be permitted to develop a complete record on these issues. First, in January 2025, CoStar launched a front-page "News" platform to Homes.com and started distributing articles by email. This digital product closely resembles Move's "News & Insights" division. This is a significant pivot for CoStar. Move's News & Insights product has existed for many years. CoStar has, until now, not chosen to implement a similar platform. That changed after Mr. Kaminsky misappropriated Move's documents explaining and quantifying the value and strategic importance of Move's News & Insights platform. Move served document requests within days of CoStar launching its "News" platform, probing the decision-making behind the launch. Baldridge Decl. Ex. F. Predictably, CoStar refused to produce any responsive documents whatsoever. *Id.* After several meet-and-confers, CoStar finally agreed to produce some documents, but Move will need more time to review them once they are produced and to further investigate and develop the facts. Baldridge Decl. ¶ 20.

Second, CoStar's counsel just informed Move that a large number of witnesses—including Mr. Kaminsky—were recently laid off by CoStar.[4] *Id.* ¶ 21. As a result, Move must now use the subpoena process to depose almost all Defendant-affiliated witnesses. CoStar's recent layoffs introduce another area for discovery. CoStar's mass firings could indicate CoStar is moving away from the field it claimed Mr. Kaminsky was focused on—descriptions of New York

---

[4] Move does not claim that this layoff is related to the substantive facts of this case. Move does not know the reasons for the layoff. Nonetheless, it adds a layer of complication to find and depose individuals who are no longer affiliated with CoStar, making a difficult task even more difficult.

neighborhoods and condominiums—and is instead aligning more closely with Move's News & Insights. Move should be given time to explore that theory.

### *CoStar Floods the Zone with Last Minute Discovery.*

With weeks remaining for fact discovery, CoStar added a new dimension to its strategy: flood the zone. While the parties continued to exchange meet-and-confer communications on a daily or near-daily basis about outstanding discovery issues, CoStar began serving rounds after round of written discovery obviously designed to pull the parties away from Move's offensive discovery efforts and increase litigation costs and burdens for Move.

In March 2025, with just a month left in the schedule for fact discovery, while finally producing several thousand documents after months of stalling RFP responses that were due last year, CoStar served 32 new document requests, 149 Requests for Admission, an additional set of Interrogatories, and three third-party document subpoenas directed at Move contractors. Baldridge Decl. ¶ 22.

The timing of CoStar's orchestrated onslaught underscores its real purpose—not to obtain relevant information, but to hamper Move's efforts to round out the discovery process, review the large number of documents it produced at the last moment, take depositions, and pursue remaining discovery from CoStar. While the process remaining for discovery was a steep hill a few weeks ago, CoStar has now assured that meaningfully completing fact discovery is impossible. At the same time Move is fielding CoStar's latest discovery, it also needs additional time to complete production of documents for the discovery the parties have agreed upon. Move had to push back on many of CoStar's requests as overbroad and/or seeking irrelevant information, with the parties only recently reaching agreement as to what documents Move would produce. Baldridge Decl. ¶ 23. Move needs more time to complete that search and production.

*The Remaining Time for Discovery is Insufficient*

With less than 40 days left for fact discovery, Move has been forced to notice depositions and serve subpoenas without the benefit of having reasonable time to review and analyze a complete set of documents. *Id.* ¶ 24. There is insufficient time to review all the documents produced by CoStar before depositions. *Id.* Even worse, if Move learns new information in depositions, it will have no opportunity to seek follow-up discovery.

For a party that has consistently taken the position that there is no evidence of its use of Move's trade secrets, CoStar has, from the beginning, chosen a contradictory path of delay and obstruction. CoStar's stance that there is no valid case here also does not square with its decision to lob repetitive rounds of discovery against Move at the last minute. CoStar's apparent strategy of trying to withhold thousands of documents until the last minute, and then inundate Move with waves of discovery, is highly prejudicial. It is interfering with Move's ability to conduct discovery in an orderly, efficient manner, and forcing Move to incur unnecessary legal fees. A modest extension of time for the fact-discovery cutoff is necessary to relieve this prejudice and give Move a reasonable amount of time to focus its resources on uncovering what Mr. Kaminsky did with the trade secrets he stole from Move. An extension will ensure that the expert discovery and motion for summary judgment phases will be backed by a quality factual record.

**IV.   MOVE HAS ESTABLISHED GOOD CAUSE TO EXTEND THE DISCOVERY CUTOFF**

Federal Rule of Civil Procedure 16(b)(4) provides that a scheduling order may be modified "for good cause." The "good cause" standard primarily considers the diligence of the party seeking the amendment. *Johnson*, 975 F.2d at 609. In determining whether good cause exists, courts may consider the importance of the modification and potential prejudice to the opposing party. *Id.* In addition, "[t]he

pretrial schedule may be modified 'if it cannot reasonably be met despite the diligence of the party seeking the extension.'" *Zivkovic*, 302 F.3d at 1087 (quoting *Johnson*, 975 F.2d at 609).

Move has diligently pursued discovery from Defendants and sought relief from the Court to secure key evidence. Move needs additional time through no fault of its own. Move has therefore met the standard for modification of a scheduling order where it cannot "reasonably be met." *See Zivkovic*, 302 F.3d at 1087.

As set forth in greater detail in Section II, *supra*, the need for additional time for discovery is due to circumstances beyond Move's control:

- CoStar deliberately slowed the process of Move analyzing the forensics in this case, from Move's initial request in September 2024 to Move finally receiving the forensic images in January 2025.
- CoStar produced thousands of documents in the last weeks of discovery, many of which Move requested six months ago, and sent dozens of letters and emails seeking, as well as multiple trips to the Magistrate Judge.
- Under the current schedule, and because of CoStar's delays, Move will not have a meaningful opportunity review and analyze all of the recently-produced documents (and those not yet produced) before commencing depositions.
- Discovery thus far has revealed that many of Defendants' early assertions about and excuses for Mr. Kaminsky's conduct were false, requiring further investigative work through discovery.
- New factual developments deserve thorough investigation, including CoStar's launch of its Homes.com/News page, and its mass layoffs of personnel in certain content divisions, will require additional work that was not and could not have been reasonably anticipated.

- Most recently, in the last month, CoStar flooded the zone by serving a mountain of discovery on Move, all while Move is working diligently to complete its production of documents as to CoStar's earlier requests. This new discovery will eat up Move's valuable time and resources and make it even harder for Move to complete its review of CoStar documents and depose CoStar witnesses in a very short time that remains.

- CoStar has given no assurance that it has produced all responsive documents it agreed to search for and produce, and indeed Move has not received to date categories of documents it is waiting on.

Courts frequently recognize the need for an extension of time in similar (or even less egregious) circumstances. In *Lyon v. U.S. Immigration & Customs Enforcement*, 308 F.R.D. 203, 216 (N.D. Cal. 2015), for example, the court recognized that there is "often find good cause when the motion to amend the scheduling order is based upon new and pertinent information." In *Lyon*, which related to immigrations facilities, the plaintiffs learned that the defendants would open a new facility, warranting additional time for investigation. *Id.* Here, too, CoStar's launch of a new digital product and other recent developments in the case demand additional time for discovery.

Similarly, in *Ellson v. Union Pacific Railroad*, the court granted a motion to extend discovery because the plaintiff needed more time to depose witnesses. 2024 WL 4800055, at *6 (C.D. Cal. June 28, 2024). Even without finding that the need for more time was entirely the fault of the opposing party, the court recognized that "the depositions are important to resolving the case on the merits and are likely to lead to relevant evidence." *Id.* In this case, Move has been eminently diligent in discovery and warrants additional time to prepare for and take depositions, as well as to address CoStar's onslaught of new discovery demands.

In addition, in *SEIU Healthcare 1199 NW v. Providence Health & Services*, 2020 WL 8513833, at *2 (W.D. Wash. Dec. 22, 2020), the court granted a motion to extend the discovery deadlines where the defendant produced "hundreds of supplemental documents" at the end of discovery. Here, CoStar has produced *thousands* of documents in the last few weeks, a tactic clearly designed to hamstring Move's deposition preparation work.

A modest extension of 90 days will not prejudice Defendants. They insist there is no evidence that CoStar used Move's trade secret information but, candidly, there is no doubt Mr. Kaminsky used the information he took from Move. None of his excuses make sense. Moreover, if it were true that none of the stolen documents got past Mr. Kaminsky, Defendants should not resist Move's reasonable request for more time. Extending the schedule will allow Move to confirm CoStar's claims for itself, which thus far CoStar has relentlessly opposed. All parties and the Court will benefit from a higher-quality and more complete record at trial. And if Defendants' insistence has any merit, allowing Move to obtain full assurance that it caught Mr. Kaminsky before he could share and use Move's information would undoubtedly increase the likelihood of resolution before trial.

/ /
/ /
/ /
/ /
/ /
/ /
/ /
/ /

## V. CONCLUSION

For these reasons, Move seeks relief from the Court in the form of a 90-day extension of the scheduling order. CoStar's delay tactics and the still-evolving nature of the factual record support the request—and necessitate an order granting it. The request is not due to any lack of diligence on Move's part. It is the opposite. Move has established ample good cause for a modest extension of time. The Court has the authority and discretion to grant the Motion. Respectfully, it should do so.

Dated: March 27, 2025

JENNER & BLOCK LLP

By: */s/ Todd C. Toral*
Todd C. Toral
Brent Caslin
David R. Singer
Carolyn Small
Elizabeth Baldridge

*Attorneys for Plaintiffs*