1

LATHAM & WATKINS LLP
NICHOLAS J. BOYLE*

2

nicholas.boyle@lw.com
555 Eleventh Street, NW

3

Suite 1000
Washington, D.C. 20004

4

Tel: 202.637.2200
Fax: 202.637.2201

5

6

MATTHEW W. WALCH*
matthew.walch@lw.com

7

330 North Wabash Avenue
Suite 2800

8

Chicago, IL 60611
Tel: 1.312.876.7700
Fax: 312.993.9767

9

*Admitted Pro Hac Vice

10

11

JOSEPH D. AXELRAD (SBN 274580)
joseph.axelrad@lw.com

12

10250 Constellation Blvd. Suite 1100
Los Angeles, CA 90076
Tel: 213.485.1234

13

*Attorneys for Defendant*
*CoStar Group, Inc.*

14

15

16

**UNITED STATES DISTRICT COURT**

17

**CENTRAL DISTRICT OF CALIFORNIA**

18

**WESTERN DIVISION**

19

MOVE, INC., a Delaware corporation;
MOVE SALES, INC., a Delaware

20

corporation; REALSELECT, INC., a
Delaware corporation,

21

Plaintiff,

22

vs.

23

COSTAR GROUP, INC., a Delaware
corporation; JAMES KAMINSKY, an

24

individual; and DOES 1 through 10,
inclusive,

25

Defendants.

26

27

28

CASE NO. 2:24-cv-05607-GW-BFM

**COSTAR GROUP, INC.'S OPPOSITION TO PLAINTIFFS' MOTION TO MODIFY SCHEDULING ORDER**

Date:    April 24, 2025
Time:    8:30 a.m.
Place:   9D
Judge:   Hon. George H. Wu

Trial Date:  August 19, 2025

1

<u>**TABLE OF CONTENTS**</u>

2    **I.**        **INTRODUCTION**................................................................................1

3    **II.**       **FACTUAL BACKGROUND** ............................................................3

4          A.    Move Files A Complaint Without Factual Support And
5                Refuses To Take Discovery In Connection With Its
                 Preliminary Injunction Request. ............................................... 3

6          B.    Move Amends Its Allegations And Pleads A New Theory
7                Of Misappropriation.................................................................. 4

8          C.    The Court Denies Move's Motion For A Preliminary
                 Injunction, Noting Move's Refusal To Take Discovery. .................. 4

9          D.    The Parties Engage In Discovery On The Merits, And
10               Move Drags Its Feet.................................................................. 6

11         E.    Move Seeks To Amend The Case Schedule. ................................. 8

     **III.**      **ARGUMENT** .................................................................................. 8
12
13         A.    Move's Refusal To Pursue Expedited Discovery Is Fatal
                 To Its Claim Of Diligence.......................................................... 9

14         B.    Move's Accusations That CoStar "Delayed" Discovery
15               And Then "Dumped" Documents On Move Are
                 Unfounded.............................................................................. 10

16         C.    Supposed "New" Facts And Developments Calling For
17               "Further Investigation" Are Not "New" And Do Not
                 Require Follow Up.................................................................... 14

18         D.    If Any Party Has Delayed Providing Discovery, It Is
19               Move—But Move's Lack of Diligence Does Not Justify
                 Extending the Case Schedule..................................................... 18

20         E.    CoStar Asks the Court to Deny Move's Motion and Enter
21               Deadlines for Expert Disclosures and Post-Discovery
                 Briefing. ................................................................................. 19

22   **IV.**      **CONCLUSION**.............................................................................. 20

23

24

25

26

27

28

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

## CASES

*Del Rio v. Virgin Am., Inc.*,
　No. CV 18-1063-GW(SKx), 2019 WL 210957 (C.D. Cal. Jan. 3,
　2019) ................................................................................................ 16

*Ellson v. Union Pacific R.R.*,
　No. 5:22-CV-01767-MRA (SP), 2024 WL 4800055 (C.D. Cal.
　June 28, 2024) ................................................................................. 14

*Hunter v. Delaware N. Companies Travel Hosp. Servs., Inc.*,
　No. 2:20-CV-06797-JWH-RAOx, 2021 WL 4815034 (C.D. Cal.
　June 28, 2021) ................................................................................. 10

*Johnson v. Mammoth Recreations, Inc.*,
　975 F.2d 604 (9th Cir. 1992) ...................................................... 8, 16

*Lyon v. U.S. Immigr. & Customs Enf't*,
　308 F.R.D. 203 (N.D. Cal. 2015) ................................................... 16

*Pineda v. Manzano*,
　No. CV 21-8839-GW-JPRx, 2023 WL 6150795 (C.D. Cal. Aug. 4,
　2023) ............................................................................................. 8, 9

*SEIU Healthcare 1188NW v. Providence Health Services*,
　No. C19-5628 BHS-TLF, 2020 WL 8513833 (W.D. Wash. Dec.
　22, 2020) .......................................................................................... 13

*Singleton v. Bail Hotline Bail Bonds, Inc.*,
　No. 8:22-CV-01826-MRA-KES, 2024 WL 4800877 (C.D. Cal.
　June 28, 2024) ................................................................................... 9

## RULES

Fed. R. Civ. P. 16(b) ................................................................................. 8

## I.    <u>INTRODUCTION</u>

The comprehensive discovery produced in this action underscores a key fact dooming Move's trade secrets case against CoStar: CoStar has never received, let alone used, any of Move's alleged trade secrets.  Move knows this.  Putting aside the fact that Move made (and then withdrew) its original false allegations claiming such use last summer, since December 2024 Move's experts have been in possession of forensic images of all four of the devices that CoStar issued to Jim Kaminsky, a former employee of Move's News & Insights team.  Those images show that whatever Move documents Kaminsky accessed—for short periods after he left Move, and for reasons Kaminsky has explained—none of them were ever disclosed to CoStar.  Move also possesses Kaminsky's CoStar inbox, calendar, and chat history; all the content Kaminsky generated in his job writing descriptions of high-end New York condominiums for CoStar's Homes.com; materials related to Kaminsky's hiring by CoStar; communications between Kaminsky and his colleagues; and emails from Kaminsky's personal account.  The ocean has been boiled, yet there is no evidence against CoStar.  Move waves at the fact that Homes.com added a "News" page.  But the news stories on this page come from CoStar's news team, which has existed for years, and to which CoStar made the decision to add residential reporters in late 2023, before Kaminsky's hiring.  The Homes.com "News" page has no connection to Kaminsky.  Indeed, Kaminsky does not even work for CoStar anymore,[1] and he had been on leave since July 2024.  And while the "News" page is public, Move has failed to identify ***any*** content evidencing CoStar's alleged use of Move's supposed trade secrets.  On that page.  Or anywhere else.  Because Move cannot do so.  The evidence conclusively shows that Kaminsky did not provide the alleged trade secrets to CoStar.  None of Move's allegations, which continue to shift as Move struggles to find a tenable theory of liability, survive

---

[1] Kaminsky was let go as part of a broader reduction in force earlier this year. Declaration of Anne C. Malinee ("Malinee Decl.") ¶ 45 (Apr. 3, 2025).

this fact.

Move does not have a case against CoStar, and never has. Its request to extend the case schedule, made just days after CoStar sent Move (another) Rule 11 letter asking Move to dismiss its claims given the lack of evidentiary support for them, is nothing more than an attempt to stall for time, maintain a cloud over its competitor, and run up CoStar's legal costs. Move has not diligently pursued its claims, because it knows they are baseless, and is not entitled to an extension under Rule 16(b).

*First*, Move cannot complain it has had insufficient time for discovery when Move rejected this Court's offer to take discovery in summer 2024 in connection with its request for a preliminary injunction, and has otherwise delayed for months in seeking the discovery referenced in its motion. Unlike a legitimate trade secrets plaintiff, which would have acted quickly to determine the facts regarding its supposed secrets, Move declined to request any documents or information and did not take a single deposition—not even of Kaminsky—during the preliminary injunction discovery period, fatally undermining any claim it has diligently prosecuted its case. *Second*, Move tries to divert attention from its lack of diligence—including its failure to take a single deposition in the six months since the PI hearing—by claiming that CoStar somehow delayed in providing forensic and document discovery. Not so. The record shows that any purported "delay" in Move's receipt of discovery is attributable to *Move*, not CoStar. In any event, Move's argument is moot: CoStar provided Move with extensive forensic discovery last year, and substantially completed its responsive document production on March 27, 2025. Move has received the discovery it requested, well in advance of the May 1, 2025 fact discovery cutoff and Move's belatedly noticed depositions, which have been confirmed for mid-April. *Third*, the "new" facts and developments that Move claims require further investigation are not "new" or do not require follow up. They do, however, underscore Move's lack of diligence. *Finally*, Move's request for additional time to complete its document production, when Move has not

COSTAR GROUP, INC.'S OPPOSITION TO PLAINTIFFS'
MOTION TO MODIFY SCHEDULING ORDER

exercised diligence in providing discovery, does not merit an extension.

CoStar is confident that it will prevail at trial, if not before, and is ready to proceed on the schedule set by the Court.  CoStar and Kaminsky are prejudiced each day that Move's baseless case continues.  CoStar therefore respectfully requests that the Court deny Move's motion to modify the scheduling order, and enter deadlines for the exchange of expert disclosures and post-discovery briefing consistent with the current schedule.  This case should proceed with all due speed, so that Move can be held to account without further delay for bringing knowingly false claims.

## II.    FACTUAL BACKGROUND

### A.    Move Files A Complaint Without Factual Support And Refuses To Take Discovery In Connection With Its Preliminary Injunction Request.

Move claims it discovered Kaminsky's access to documents containing alleged trade secrets on June 3, 2024.  Dkt. 10-4, Maas Decl. ¶ 9.  Move filed suit nearly a month later on July 2, 2024, without contacting CoStar or Kaminsky, alleging that CoStar hired Kaminsky, the former head of Realtor.com's "News & Insights" team, to launch a competing news product on CoStar's residential listings platform, Homes.com, using Move's alleged trade secrets. Dkt. 1, ¶¶ 6, 9.  This was demonstrably false: CoStar did not hire Kaminsky to start a rival news division.  Dkt. 21-2, Noe Decl. ¶ 4.  It hired Kaminsky in March 2024, after he was terminated by Move, to manage a small team generating descriptions of high-end New York condominiums, *id.*, as Kaminsky told several former Move colleagues, Dkt. 34-1, Kaminsky Decl. ¶¶ 35-36, and as his public LinkedIn showed, Dkt. 12-5, Ex. A.

CoStar sent a Rule 11 communication regarding Move's false allegations. Malinee Decl. Ex. 1  CoStar also sought expedited discovery to disprove Move's claims.  Dkt. 21.  Move opposed CoStar's request for reciprocal expedited discovery—presumably because it concluded that additional facts would undermine its case.  Dkt. 31 at 12-14.  At a July 29, 2024 hearing on CoStar's request for expedited discovery, Move represented that the documents Kaminsky accessed after

leaving Move contained "date driven information," including plans for articles to be published on "News & Insights" into September 2024, justifying Move's request for a preliminary injunction. Dkt. 41, Hr'g Tr. 7:25-8:10, 9:18-10:10. The Court granted CoStar's motion, allowing each party to serve up to ten interrogatories and ten document requests, and take up to three depositions. Dkt. 21-3; Dkt. 38. Incredibly, Move chose not to take *any* of the offered discovery. Dkt. 46-1, Baldridge Decl. ¶ 8 ("Move has consistently stated that no expedited discovery is necessary before the preliminary injunction hearing, and it does not intend to seek any discovery during this expedited phase.").

## B.    Move Amends Its Allegations And Pleads A New Theory Of Misappropriation.

Move filed a First Amended Complaint ("FAC") on August 16, 2024, jettisoning its theory that CoStar was using Move's alleged trade secrets to build a rival news division, and instead alleging that there was a possibility CoStar and Kaminsky "could" use Move's alleged trade secrets to develop content and search engine optimization ("SEO") strategies to increase online traffic to Homes.com. Dkt. 54 ¶¶ 1, 6, 10.[2] CoStar again sent Move a Rule 11 letter, observing that, while the FAC dropped false allegations premised on Kaminsky's involvement in Homes.com news content, it still included several unsupported factual allegations— including that CoStar and Kaminsky had used and disclosed Move's trade secrets, and had "continuing access" to Move's documents. Malinee Decl. Ex. 2.

## C.    The Court Denies Move's Motion For A Preliminary Injunction, Noting Move's Refusal To Take Discovery.

On August 27, 2024, Move filed an amended motion for a preliminary injunction, which dropped the demand for expedited forensic discovery included in its original motion filed on July 15, 2024. *Compare* Dkt. 10-2, *with* Dkt. 60. The

---

[2] Move's Second Amended Complaint, filed on November 19, 2024, also pleads this theory. Dkt. 116 ¶¶ 1, 6, 10.

Court held a hearing on Move's amended motion on September 23, 2024. Dkt. 100. Following up on Move's statements at the July 29, 2024 hearing, the Court asked Move's counsel to identify any evidence that CoStar had published articles using Move's alleged trade secrets: "What is the evidence that [D]efendant has published anything since the alleged material was taken [today], how many items of . . . how many publications have been sent out by the [D]efendant, and is there any indicia that any of that content was based upon the trade secrets or information that was generated by the [P]laintiff?" Dkt. 106, Hr'g Tr. at 12:16-21. Move responded that it "ha[dn't] compared the content on their side to the content on our side." *Id.* at 12:22-23. The Court again pressed Move to identify any "evidence of use," stating that it "d[id not] see any." *Id.* at 14:11-13. The Court observed that if CoStar were using the alleged trade secrets to develop content for Homes.com, Move "would certainly find out that quick enough," but the Court "d[id]n't see the evidence of the use at this point." *Id.* at 14:24-15:22.

The Court denied Move's request for a preliminary injunction, finding Move did not establish it was likely to suffer imminent irreparable harm absent an injunction. Dkt. 98 at 3; Dkt. 100. Key to the Court's ruling was Move's decision not to take discovery. The Court observed that Move's theory of loss was "entirely speculative . . . a conclusion that [was] not aided by Move's refusal to engage in discovery . . . ." Dkt. 98 at 6-7. Move "did not engage in" any "forensic examination of Kaminsky's computers," "did not bother to dig into the reasons Kaminsky might have accessed the [alleged trade secrets] after leaving Move," and "did not bother to investigate whether Kaminsky in fact had transferred any of the files or, if he did so, to where/whom." *Id.* at 7. While Move pointed to "certain asserted inconsistencies" in Kaminsky's accounts, Move "did not engage in any discovery regarding Kaminsky's conduct." *Id.* The Court agreed Move presented no evidence to support its theory that CoStar and Kaminsky could use Move's trade secrets in connection with SEO efforts, and observed that Move "will be able to test its hypotheses…

through discovery (and would have been able to already, to at least a certain degree, had it elected to do so)." *Id.* at 10-11.

### D.     The Parties Engage In Discovery On The Merits, And Move Drags Its Feet.

The parties submitted a Joint Rule 26(f) Report with a proposed pretrial schedule on October 21, 2024.  Dkt. 110.  The Court entered a scheduling order the next day setting a more compressed schedule, citing the substantial amount of litigation (including expedited discovery taken by CoStar and Kaminsky) that had already occurred.  Dkt. 111.  The Court set a May 1, 2025 fact discovery cutoff and encouraged the parties to pursue early mediation.  *Id.*

At the September 23, 2024 hearing, the Court had authorized Move to serve discovery prior to the submission of the Joint Rule 26(f) Report.  Dkt. 106, Hr'g Tr. 19:1-2.  Move served its first requests for production to CoStar and Kaminsky on September 26, 2024, almost three months into the case.  Malinee Decl. ¶ 6.  Move's requests to CoStar included sweeping demands for complete forensic images of seven of Kaminsky's personal and CoStar-issued devices, as well as Kaminsky's entire CoStar email account and work calendar (without any limitation on subject matter), and all communications between Kaminsky and any current or former CoStar employee (also without limitation).  *See* Dkt. 139-1, Ex. B (Request Nos. 1-7, 9, 10-11, 15).  CoStar objected to Move's requests, *see id.*, as well as requests in its Second and Third Set of Requests for Production (served on October 14, 2024 and January 24, 2025),[3] including on the bases that they were vague, called for irrelevant information, and imposed a disproportionate burden on CoStar.  Malinee

---

[3] Move's second set of requests included, for example, requests for "all" communications between and among current or former CoStar employees mentioning or discussing Kaminsky, and "all" documents discussing strategies to increase traffic to Homes.com or "use of content to create authority for the Homes.com brand."  Malinee Decl. Ex. 3 (Request Nos. 43-45).  Move's third set of requests included requests related to Homes.com's News page—even though Move has abandoned its theory that CoStar hired Kaminsky to start a rival news division. *Id.* at Ex. 8.

Decl. Exs. 3 & 8. As discussed *infra* III.B, Move's complete lack of urgency in adopting a reasonable forensic protocol (as is standard in trade secrets cases prior to the production of forensic images) and its refusal to narrow its overbroad document requests resulted in multiple disputes and caused unnecessary delays.

Nonetheless, CoStar began producing documents in October 2024. Malinee Decl. ¶ 16. CoStar began producing Kaminsky's emails and calendar to Move and provided forensic images of Kaminsky's CoStar-issued devices to Move's experts in December 2024. *Id.* at ¶¶ 14, 17. CoStar produced documents related to Move's hiring and the remainder of Kaminsky's emails and calendar in early- and mid-March. *Id.* at ¶¶ 18-19. Shortly after outstanding discovery disputes were resolved, CoStar substantially completed its responsive document productions on March 27, 2025 (7,663 documents total) and notified Move on March 28, 2025 that it had done so. *Id.* at ¶ 22 & Ex. 7. On March 28, CoStar also served updated initial disclosures and supplemental responses and objections to Move's requests for production, indicating where CoStar had agreed to search for responsive documents, but identified no such documents. *Id.* at 22 & Ex. 7. On March 21, 2025, Move noticed the depositions of Kaminsky and his supervisors Eric Noe and Tina Davis, and CoStar has agreed to make them available for deposition in mid-April, as requested by Move, and before the current discovery cutoff. *Id.* at ¶¶ 25-27.

By contrast, Move continues to delay its production of documents responsive to CoStar's requests. Move has produced only 445 documents. Malinee Decl. ¶ 29. As discussed in CoStar's most recent letter to Move, it has become clear that Move has failed even to produce core documents it committed to provide at the outset of the case—including its alleged trade secrets documents ***in the form in which they existed at the time Kaminsky accessed them***, and documents evidencing its supposed damages—despite claiming it has completed its document production in response to multiple CoStar requests. Malinee Decl. ¶ 31. Move has repeatedly promised to make productions—including of complete logs of access to Move's

COSTAR GROUP, INC.'S OPPOSITION TO PLAINTIFFS'
MOTION TO MODIFY SCHEDULING ORDER

alleged trade secrets documents stored on Google Drive, as well as metadata overlays called for by the parties' ESI protocol—but to date has failed to do so. *Id.* What is more, Move has now refused repeated requests to meet and confer on CoStar's discovery. *Id.* at ¶¶ 33-34 & Ex. 10. Move also has yet to confirm deposition dates for two of the three Move deponents noticed by CoStar. *Id.* at ¶¶ 35-36.

### E.    Move Seeks To Amend The Case Schedule.

The Court's scheduling order directed the parties to meet and confer on the exchange of expert reports. Dkt. 111 at 2. On February 21, 2025, CoStar sent Move a letter proposing a March 28, 2025 substantial completion deadline for document production, as well as deadlines for expert disclosures and post-discovery briefing. Malinee Decl. ¶ 37. Move agreed to the dates—***except*** the proposed substantial completion deadline—but then reneged and proposed extending the case schedule. *Id.* at ¶¶ 38-39. On a March 20, 2025 call, CoStar made clear that it would not agree to extend the case schedule, and emphasized, again, that Move has failed to provide any factual basis for its claims against CoStar. *Id.* at ¶ 20. CoStar sent Move another letter on March 21, 2025 stating its intent to seek fees and costs under Rule 11 and the Defend Trade Secrets Act for pursuing a bad faith misappropriation claim if Move failed to either identify factual support for its claims or drop them by March 26, 2025. *Id.* at Ex. ¶ 5. Move instead filed a motion to modify the scheduling order the next day. Dkt. 139.

## III.    <u>ARGUMENT</u>

A case schedule may be modified only for "good cause." Fed. R. Civ. P. 16(b). The "'good cause' standard primarily considers the diligence of the party seeking the amendment." *Pineda v. Manzano*, No. CV 21-8839-GW-JPRx, 2023 WL 6150795, at *1 (C.D. Cal. Aug. 4, 2023) (Wu, J.) (quoting *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992)). "Although the existence or degree of prejudice to the party opposing the modification might supply additional

reasons to deny a motion, the focus of the inquiry is upon the moving party's reasons for seeking modification. If that party was not diligent, the inquiry should end." *Id.* (same).

## A.    Move's Refusal To Pursue Expedited Discovery Is Fatal To Its Claim Of Diligence.

Move cannot credibly claim that it has diligently pursued discovery when it was given the opportunity to take expedited discovery in connection with its request for a preliminary injunction in summer 2024 and refused to take *any* discovery whatsoever. It did not bother to serve interrogatories. Dkt. 98 at 4. It did not bother to serve document requests. *Id.* It did not bother to depose Kaminsky or his supervisor Eric Noe, *id.*, whose identity was known to Move, *see* Dkt. 21-2, Noe Decl. Move dropped its demand for expedited forensic discovery. *Compare* Dkt. 12 at 21-22, *with* Dkt. 60. Instead, Move waited almost three months from the date it filed its complaint to serve discovery—about the length of time by which Move now seeks to extend the case schedule. Move's primary justification for its motion is that it supposedly did not receive documents from CoStar with sufficient time to notice and prepare for depositions (which it has now noticed and is about to take), or to perform further investigation into potential new theories of liability (given that its past theories have no evidentiary support). Mot. at 1, 6. Move also complains that it will not have time to seek follow-up discovery after depositions (which, on March 21, 2025, it noticed for mid-April). *Id.* at 11. But these purported issues could have been ameliorated, at least in part, if Move had simply served the discovery and taken the multiple depositions to which it was entitled at the preliminary injunction stage (or, at minimum, diligently pursued leads developed during the preliminary injunction stage during merits discovery, *see infra* III.B.). Move's decision to sit on its hands for three months, only to approach the Court seven months later to seek an additional three months of discovery, is fatal to its claim of diligence. *See Singleton v. Bail Hotline Bail Bonds, Inc.*, No. 8:22-CV-

01826-MRA-KES, 2024 WL 4800877, at *6 (C.D. Cal. June 28, 2024) (denying in substantial part motion to amend schedule brought to "correct for a 'course of obstacles' of [plaintiffs'] own making").

**B.    Move's Accusations That CoStar "Delayed" Discovery And Then "Dumped" Documents On Move Are Unfounded.**

Move accuses CoStar of failing to provide timely forensic and document discovery and suggests purported "delay" has hindered its ability to perform further investigation.  Its accusations are baseless.  Move has long had the forensic discovery it sought, and CoStar substantially completed its document production weeks before depositions and the close of fact discovery.  To the extent Move received discovery later than it would have preferred, this is because Move delayed pursuing discovery, staked out extreme positions, and refused to agree to reasonable compromises that would have allowed it to receive materials sooner.  This Court has recognized that "[p]urported issues with discovery" and "disagreements with opposing counsel . . . do not, without more, justify altering the scheduling order."  *Hunter v. Delaware N. Companies Travel Hosp. Servs., Inc.*, No. 2:20-CV-06797-JWH-RAOx, 2021 WL 4815034, at *3 (C.D. Cal. June 28, 2021) (Wu, J.) (denying motion to modify scheduling order where movant did not show "that it was unable to comply with the scheduling order for unforeseeable reasons").

***Forensic discovery:*** Move's claim that CoStar "deliberately slowed" Move's forensic analysis is counterfactual.  Mot. at 12.  On September 26, 2024, Move served requests for seven complete forensic images of Kaminsky's personal and CoStar-issued devices.  *See* Dkt. 139-1, Ex. B, Nos. 1-7.  From the outset, CoStar emphasized the need to establish a forensic protocol for handling those images ***prior*** to their production—as is standard in trade secrets litigation—given that the devices contain commercially sensitive, irrelevant, personal, and potentially privileged information.  Malinee Decl. Ex. 5.  Despite this, week after week, Move continued to pursue its unprecedented request for complete forensic images from its competitor

CoStar without a formal forensic protocol in place.[4]  Move first proposed terms for a protocol on November 18, 2024, and provided a first draft on November 26, 2024. *Id.* at Ex. 6.  CoStar promptly reviewed the draft, allowing the parties to meet and confer within a week on December 3, 2024.  *Id.*  CoStar returned a modestly revised protocol the following day, which Move rejected, requiring the parties to seek Judge Mircheff's intervention.  *Id.*

At an informal discovery conference on December 18, 2024, Judge Mircheff rejected Move's arguments and endorsed CoStar's position, resulting in the entry of CoStar's proposed protocol on December 20, 2024.  *See* Dkt. 124.  CoStar provided forensic images of Kaminsky's CoStar devices to Move's experts on December 30, 2024.[5]  Malinee Decl. Ex. 6.  The protocol permitted Move's experts to create a list of files on the devices, and allowed Move to request to view specific files, after review by CoStar.  Dkt. 124 ¶¶ 4-8.  Move received the file list from its experts on January 17, 2025, but did not request any files until February 21, 2025—and even then, it requested only ***14 files***, which CoStar provided on March 21, 2025, within the timeline set by the protocol.  Malinee Decl. ¶¶ 15.  Importantly, putting aside that Move, not CoStar caused any supposed "delay" in providing forensic discovery, Move does not (and cannot) suggest that it did not receive any forensic discovery to

---

[4]  Move's claim that CoStar "held the forensic images hostage" and "demand[ed]" "MD5 hash values"—a common type of metadata used to locate files on electronic devices—is false.  Mot. at 3-4.  Beginning in October 2024, CoStar repeatedly requested metadata from Move for its alleged trade secret documents in an effort to facilitate Move's immediate access to the most essential forensic information—data regarding the documents at issue—while the parties negotiated a forensic protocol. Malinee Decl. Ex. 5.  Initially, CoStar requested metadata in the form of MD5 hash values, but later updated its request to "MD5 ***or equivalent*** hash value" after Move indicated that MD5 hash values would not be useful for locating documents stored on Google Drive.  *Id.* at Ex. 9.  Nevertheless, Move refused to provide the requested metadata and rejected CoStar's compromise efforts—including CoStar's offers to apply search terms to the forensic images and produce the results; or to provide Move with a complete file list, followed by the production of any requested files after CoStar had the opportunity to review them for privilege, confidentiality, and relevance.  *Id.* at Ex. 6.

[5]  Move's assertion that CoStar did not provide the forensic images until January 2025, *see, e.g.,* Mot. at 4, is wrong, as Move's counsel's emails reflect.  *See* Malinee Decl. Ex. 6, Baldridge Email (Dec. 30, 2024) (acknowledging receipt).

which it is entitled or claim it needs more time to perform forensic analysis. *See* Mot. at 3-4.

*Document discovery:* Move also complains that CoStar unreasonably delayed its document production, but the purported examples it cites show no such thing. *First*, Move claims CoStar "held up" production of Kaminsky's CoStar emails, Mot. at 5—but Move (unjustifiably) demanded production of Kaminsky's *entire* inbox, without exception, for the duration of his employment at CoStar. Dkt. 139-1, Ex. B (Request No. 9). Following a meet and confer during which CoStar articulated concerns about relevance and overbreadth (not burden), Move agreed on November 18, 2024 to limit the scope of this request, and CoStar began producing the requested documents less than a month later. Malinee Decl. ¶ 17. *Second*, Move claims that CoStar delayed production of documents related to Kaminsky's hiring. Mot. at 5-6. But CoStar expressly identified the documents it agreed to produce in its responses to Move's First Set of Requests for Production, served October 28, 2024, Dkt. 139-1, Ex. B (Request No. 13), and Move did not suggest CoStar's offer to produce the enumerated documents was unacceptable until *late February 2025*. Malinee Decl. ¶ 7. CoStar produced the documents it initially agreed to provide on March 3, 2025, and produced additional documents after an informal discovery conference on March 11, 2025. *Id.* at ¶¶ 18, 20. *Finally*, Move claims CoStar "frivolously took the position that Move would have to re-write" multiple of its requests before CoStar would search for responsive documents. Mot. at 6. This misstates the record. CoStar objected to more than a dozen requests in Move's First and Second Sets of Requests for Production, including on the basis that requests were vague, overbroad, lacked time and subject matter limitations, and called for the production of irrelevant documents, but nonetheless offered to meet and confer with Move. Dkt. 139-1, Ex. B & Malinee Decl. Ex. 3. Rather than narrow the scope of its requests to address CoStar's objections, Move instead proposed that CoStar simply run search terms across the files of CoStar custodians (including CoStar's CEO Andy Florance) and

produce **any** non-privileged documents that hit on those terms, regardless of whether the documents were responsive to Move's requests or had any bearing on its claims. *See id.* at Ex. 4. CoStar rejected this (unreasonable) proposal. *Id.* Following the informal discovery conference on March 11, Move finally dropped its demand for discovery from Florance, who Move failed to show has any knowledge of the conduct underlying its claims, and also modified its proposal to allow CoStar to review hit results for "responsive" documents based on responsiveness criteria identified for the first time in a March 11, 2025 letter. *Id.* In the interest of ending the dispute, CoStar agreed, with some modifications, and produced documents on March 24, 2025. *Id.* at ¶ 20.

Move now complains that CoStar "dump[ed]" documents on Move at the eleventh hour. *See, e.g.*, Mot. at 1, 6. That gripe is particularly rich given that Move has still not come close to producing all the discovery that it has promised (let alone all the discovery that CoStar is still pressing to obtain). Moreover, as set forth above, it is **Move's** intransigence that impacted the timing of CoStar's later productions. And the volume of documents CoStar has produced (around 7,660 documents, Malinee Decl. ¶ 22) is a reflection of the broad discovery **Move** has sought from CoStar. In any event: CoStar substantially completed its production on March 27, 2025, the day before the substantial completion deadline that CoStar proposed and Move rejected. *Id.* at ¶ 22. It did so almost three weeks in advance of the first deposition noticed by Move (undercutting Move's suggestion that it will be unable to adequately prepare, *see* Mot. at 11) and five weeks before the May 1, 2025 close of fact discovery.[6] Move's suggestion that it needs more time to review CoStar's documents "to even know who it should depose," Mot. at 6, rings hollow when: (1) Move could have—but did not—request any documents from CoStar or

---

[6] By contrast, in *SEIU Healthcare 1188NW v. Providence Health Services*, No. C19-5628 BHS-TLF, 2020 WL 8513833 (W.D. Wash. Dec. 22, 2020), cited by Move, the defendant produced hundreds of supplemental documents just days before the discovery cutoff and around the Thanksgiving holiday. *Id.* at *2.

Kaminsky during expedited discovery; (2) Move has known the identities of Kaminsky's supervisors and colleagues on the New York condos team, as well as CoStar's Vice President of SEO and SEM, since **at least September 2024**, when they submitted declarations in support of CoStar's opposition to Move's motion for a preliminary injunction, *see* Dkt. 75-1–75-12; and (3) Move began receiving productions of Kaminsky's CoStar email inbox and calendar in mid-December (which were completed on March 19, 2025), Malinee Decl. ¶¶ 17, 19.[7]

## C. Supposed "New" Facts And Developments Calling For "Further Investigation" Are Not "New" And Do Not Require Follow Up.

*Move alleged "new" facts:* Move claims it has discovered facts that cast doubt on statements made by CoStar and Kaminsky about Kaminsky's role at CoStar and his motivations in accessing Move's alleged trade secret information, which "heighten[]" the "need for actual documents" and require additional "time to investigate further." Mot. at 7-8. But the supposed "new" facts Move identifies are not "new." Move raised many of the same supposed (but non-existent) "inconsistencies" **months ago** at the preliminary injunction stage but, inexplicably, declined to pursue discovery at that time. Dkt. 98, at 7-8; *compare* Dkt. 60, at 8 (observing supposedly "inconsistent" statements from Defendants about Kaminsky's role at CoStar), *with* Dkt. 139 at 7-8 (same).

Moreover, Move's motion demonstrates that Move **already** has received "actual documents" that it claims are relevant to these issues. *See* Mot. at 7-8. Move makes a vague claim that "discovery has revealed that Mr. Kaminsky sent Move's documents and information directly to his CoStar email account in several

---

[7] In *Ellson v. Union Pacific R.R.*, No. 5:22-CV-01767-MRA (SP), 2024 WL 4800055, at *6 (C.D. Cal. June 28, 2024), the Court did not simply grant a motion to extend discovery "because the plaintiff needed more time to depose witnesses," as Move suggests. Mot. at 13. In that case, the Court granted plaintiff's motion to reopen discovery for the limited purpose of taking depositions that were noticed, but not successfully scheduled before the discovery cutoff, noting that both parties were at fault, but the depositions were likely to lead to relevant evidence and be important to resolving the case.

instances," Mot. at 7, but does not cite the documentary evidence.  It is no surprise that Move omits the details: there are only two such instances—both of which Move has been aware of since CoStar produced the relevant documents in ***December 2024***—and neither justifies extended discovery.[8]  Malinee Decl. ¶ 41. Move also claims Kaminsky met with "high-level" individuals at CoStar who it baselessly speculates "***could have*** benefitted" from Move's alleged trade secrets.  Mot. at 7; Dkt. 139-1, Baldridge Decl. ¶ 17 (emphasis added).  Move does not identify these individuals, but it knows who they are: CoStar produced all Kaminsky's calendar appointments from his time working at CoStar.  Malinee Decl. ¶¶ 17, 19.  If Move wanted discovery from these individuals, it could have pursued it diligently.[9]  It did not.  Move also claims it has obtained "information" in discovery that "suggests" Kaminsky's motivation in accessing Move's alleged trade secret documents "***may have been*** to assist CoStar (or ***perhaps*** to assist himself in his new role at CoStar . . .),"  although it does not identify this information.  Mot. at 8 (emphasis added).  Finally, Move points to forensic evidence identified by CoStar's experts in fall 2024 that Kaminsky printed a page from one of Move's alleged trade secret documents and speculates "[t]his is precisely the kind of trade secret information that Kaminsky ***could have*** handed off to or discussed orally with others at CoStar."  Mot. at 8 (emphasis added).  That is not new.  And in any event Move can depose Kaminsky on all of these topics at his April 18 deposition.

Move does not specify what further "investigation" it needs on these issues, and more importantly, it does not even attempt to explain why it did not diligently

---

[8]  First, Kaminsky forwarded himself a slide deck containing information about a separate company, REA Group, which Move does not allege contains any Move trade secrets.  Malinee Decl. ¶ 42.  Second, Kaminsky forwarded himself a Google Drive link to a slide deck that, again, contains information about REA Group.  *Id.*

[9]  Move also claims, bizarrely, that CoStar's designation of certain unspecified documents as "Confidential" under the stipulated protective order undermines any suggestion that Kaminsky was a "relatively junior employee." Mot. at 7-8.  Move makes no attempt to explain how confidentiality branding in this litigation is relevant to or probative of any fact concerning Kaminsky's role at CoStar.

perform any such further "investigation" on the timeline set by the Court.

**Purported new developments:** Move also claims it requires more time "to develop a complete record" on new issues that have arisen during the pendency of the case. Mot. at 9.

**First**, Move asserts that CoStar "launched a front-page 'News' platform" on Homes.com resembling Move's "News & Insights" page in January 2025 and claims that it served document requests on CoStar "within days" of the launch. Mot. at 9. Not so. Homes.com launched its News page and added a link to the Homes.com home page on **October 30, 2024**. Malinee Decl. Ex. 11 (Beyers Decl. ¶ 7). Move told the Court at the July 29, 2024 hearing that one of its central concerns in seeking a preliminary injunction was that Kaminsky had accessed, and could use for CoStar's benefit, plans for news articles to be published on "News & Insights" through September 2024. Dkt. 41, Hr'g Tr. 7:25-8:10, 9:18-10:10. But Move apparently did not even bother to monitor Homes.com to see if it was publishing news content, much less content derived from Move's supposed trade secrets.[10] The fact that Move did not notice that CoStar launched a News page on Homes.com until **months** after the fact speaks volumes about the merit of its trade secrets claims and further underscores Move's lack of diligence. *Johnson*, 975 F.2d at 609 ("[C]arelessness is not compatible with a finding of diligence and offers no reason for a grant of relief."); *see also, e.g.*, *Del Rio v. Virgin Am., Inc.*, No. CV 18-1063-GW(SKx), 2019 WL 210957, at *3 (C.D. Cal. Jan. 3, 2019) (Wu, J.) (denying motion to amend to add new claims where "many of the documents and pieces of information that Plaintiff says she needed to assert her new claims could have been located with reasonable diligence at the inception of the lawsuit"). And although

---

[10] This case is thus distinguishable from *Lyon v. U.S. Immigr. & Customs Enf't*, 308 F.R.D. 203, 216 (N.D. Cal. 2015), cited by Move, in which a new detention facility was opened during the pendency of the class action brought on behalf of immigration detainees, but class counsel acted promptly to gather information and supplement the complaint, *id.* at 216-217.

1  Move has been aware of Homes.com's News page for months, Move **still** has not

2  identified any content it claims was derived from Move's alleged trade secrets, as

3  the Court pressed it to do in September 2024.

4      Move's January 2025 request for discovery related to CoStar's News page

5  (and its request to extend the case schedule to obtain further discovery) is particularly

6  odd, given that Move abandoned its theory, set forth in its original complaint, that

7  CoStar hired Kaminsky to start a competing news division.  *See supra* II.B.  In any

8  event, CoStar has largely provided the discovery Move sought, and it confirms that

9  Kaminsky had no involvement with the Homes.com News team.  CoStar produced

10 a declaration from Dan Beyers, the head of CoStar's News team since April 2018,

11 stating that he had no involvement in hiring or managing Kaminsky, and he did not

12 meet with, email with, or otherwise interact with Kaminsky when he was employed

13 at CoStar.  Malinee Decl. Ex. 11 (Beyers Decl.  ¶¶ 8-9).  At Move's request, CoStar

14 also agreed to search for communications, if any, among Kaminsky and his

15 colleagues on the New York condo team and the residential news team regarding the

16 decisions to launch the News page (and/or add a link to the Homes.com home page)

17 that mention or discuss Move, Realtor.com, or the "News & Insights" page.  *Id.* at

18 Ex. 8.  There were **none**.  *Id.*  Move does not "need more time to review" documents

19 that do not exist, and it does not identify what "further investigat[ion]" it purportedly

20 requires on a theory of the case that it previously abandoned.  *See* Mot. at 9.

21     **Second**, Move claims that CoStar's recent layoffs of Kaminsky and his New

22 York condo team members, as part of a broader reduction in force, justify an

23 extension of the case schedule.[11]  The concerns Move cites are unfounded.  Move

24 suggests it will now be "even more difficult" to secure former employee witnesses'

25

26 ───────────────

27 [11]  CoStar's addition—and elimination—of certain jobs, as part of its strategic
   realignment, was announced by CoStar in late February, Malinee Decl. Ex. 12, and
   was publicly reported. CoStar informed Move's counsel on March 20, 2025 that
28 Kaminsky's team was let go as part of the broader reduction in force.  *Id.* at ¶¶ 45-
   46.

depositions. Mot. at 9 n.4. But Move has asked to depose only Kaminsky's former supervisors, Eric Noe and Tina Davis, who CoStar's counsel represents and has made available for depositions on the dates Move requested. Malinee Decl. ¶¶ 25-27. Move speculates that "CoStar's mass firings *could indicate* CoStar is moving away from the field it claimed Kaminsky was focused on—descriptions of New York condominiums—and is instead aligning more closely with Move's News & Insights." Mot. at 9-10 (emphasis added). Move cites no factual basis whatsoever for this theory.[12] Move's latest naked (and baseless) assertion is nothing but a final "Hail Mary" attempt to extend discovery, which has yielded no evidence whatsoever that CoStar has used its alleged trade secrets.

**D.    If Any Party Has Delayed Providing Discovery, It Is Move—But Move's Lack of Diligence Does Not Justify Extending the Case Schedule.**

Move candidly admits that one reason for its Motion is that "Move needs additional time to complete its production of documents," Mot. at 1. Indeed, as CoStar has raised in multiple letters to Move, it appears that Move has failed to produce documents that it committed to provide months ago, even though it has long claimed its production of documents responsive to multiple CoStar requests is complete. Malinee Decl. ¶ 31. This includes materials as basic as the alleged trade secret documents, *in the form or version they existed at the time Kaminsky accessed them*, metadata for the alleged trade secrets documents, and documents supporting Move's alleged damages. *Id.* Only this week, Move produced new documents that are material to CoStar's defense and were responsive to multiple of CoStar's requests served during expedited discovery. *Id.* at ¶ 30. Move has repeatedly promised to make productions—including of complete logs of access to Move's alleged trade secrets documents stored on Google Drive, as well as metadata

---

[12] If anything, Kaminsky's termination, more than seven months after he was placed on administrative leave in July 2024, *see* Dkt. 75-1, Noe Decl. ¶ 26, only underscores the lack of any possible harm to Move.

overlays called for by the parties' ESI protocol—but failed to do. *Id.* at 3-4.

Move further complains that CoStar has "flood[ed] the zone" with last-minute discovery, such that it will be difficult for Move to respond to CoStar's requests. Mot. at 10.  But CoStar has noticed only three Move depositions, which should be completed in April.  Malinee Decl. ¶¶ 35-36.  And all of CoStar's party discovery requests (as well as its third-party document subpoenas) were timely served and call for a responses before the May 1 fact discovery cutoff.

Move's lack of diligence in providing discovery, while frustrating to CoStar, does not justify extending the case schedule.  Ultimately, it is ***Move's*** burden to present evidence on its claims, and if it fails to do so before the Court-imposed deadline, this is a problem for Move, not CoStar.

**E.**    **CoStar Asks the Court to Deny Move's Motion and Enter Deadlines for Expert Disclosures and Post-Discovery Briefing.**

CoStar has maintained—and discovery has  established—that Move's claims against CoStar are meritless: CoStar never received, much less used, Move's alleged trade secrets.  Move provides no convincing reason for the Court to reconsider the scheduling order it issued last fall.  And CoStar and Kaminsky would be prejudiced by an extension of the case schedule, which will delay their day in court and ensure that they will continue to bear monetary (and for Kaminsky, personal) costs associated with this unnecessary litigation.  CoStar therefore asks the Court to deny Move's motion to modify the scheduling order and to order the parties to provide expert disclosures and complete post-discovery motions on the below timeline, which was agreed by the parties before Move reneged and sought to extend the case schedule, Malinee Decl. ¶ 38:

***Expert Discovery***

- Opening Expert Reports - May 2, 2025
- Rebuttal Reports - May 23, 2025
- Expert Depositions to conclude no later than June 3, 2025

COSTAR GROUP, INC.'S OPPOSITION TO PLAINTIFFS'
MOTION TO MODIFY SCHEDULING ORDER

1   ***Post-Discovery Briefing***

2   • Opening Summary Judgment and *Daubert* Motions - June 6, 2025

3   • Oppositions - June 16, 2025

4   • Replies - June 23, 2025

5   **IV.   <u>CONCLUSION</u>**

6   For the foregoing reasons, CoStar asks the Court to deny Move's motion.

7

8   Dated:  April 3, 2025                Respectfully submitted,

9                                        **LATHAM & WATKINS LLP**

10                                       By */s/ Nicholas J. Boyle*
11                                       Nicholas J. Boyle
                                         Matthew Walch
12                                       Anne C. Malinee
                                         Joseph D. Axelrad
13
                                         *Attorneys for Defendant*
14                                       *CoStar Group, Inc.*

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COSTAR GROUP, INC.'S OPPOSITION TO PLAINTIFFS'
MOTION TO MODIFY SCHEDULING ORDER

1

## **CERTIFICATE OF COMPLIANCE**

2      The undersigned, counsel of record for Defendant CoStar Group, Inc.,

3   certifies that this brief contains 6,822 words, which complies with the word limit of

4   L.R. 11-6.1.

5

6    Dated: April 3, 2025                    By:   */s/ Nicholas J. Boyle*
                                                   Nicholas J. Boyle
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COSTAR GROUP, INC.'S OPPOSITION TO PLAINTIFFS'
MOTION TO MODIFY SCHEDULING ORDER